UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SAUNDUALLEE BULLOCK,

                                        Plaintiff,

                                                                    5:17-cv-1302
v.                                                                  (BKS/TWD)

DSS, CPS, COMMISSIONER; DSS; CPS;
ONONDAGA DSS/CPS; JOANIE MAHONEY;
JONIE MAHONEY; and DSS/CPS ONONDAGA
COUNTY,
                                        Defendants.
_____

APPEARANCES:

SAUNDUALLEE BULLOCK
Plaintiff, *pro se*
123 Delong Ave.
Syracuse, NY 13208

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

The Clerk has sent to the Court for review two complaints filed in one action at the

request of *pro se* Plaintiff Saunduallee Bullock.  (Dkt. Nos. 1 and 1-1.)  Plaintiff names

Onondaga DSS/CPS,[1] Joanie Mahoney,[2] Jonie Mahoney, DSS, DSS/CPS Onondaga County,

---

[1]  For purposes of initial review, the Court presumes "DSS" refers to the "Department of Social
Services" of Onondaga County and "CPS" refers to "Child Protective Services."

[2]  In the proposed summons (Dkt. No. 2-1), Plaintiff names "Onondaga County Executive Joanie
Mahoney" as Defendant (Dkt. No. 2-1).  Joanne M. Mahoney is County Executive for Onondaga
County.  *See generally* Onondaga County, New York, http:www.ongov.net (last visited Jan. 16,
2018).  Thus, for purposes of initial review, the Court presumes Plaintiff intended to sue
Onondaga County Executive Joanne M. Mahoney and will refer to Defendants "Joanie
Mahoney" and "Jonie Mahoney" collectively as "Mahoney" throughout the Report-
Recommendation.

DSS/CPS Commissioner, and CPS as Defendants.  Also before the Court is Plaintiff's

application to proceed *in forma pauperis* ("IFP Application").  (Dkt. No. 2.)

## I.    PLAINTIFF'S IFP APPLICATION

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee

for commencing an action.  28 U.S.C. § 1915(a)(1) (2006).  After reviewing Plaintiff's IFP

Application (Dkt. No. 2), the Court finds Plaintiff meets this standard.  Therefore, Plaintiff's IFP

Application (Dkt. No. 2) is granted.

## II.   PLAINTIFF'S COMPLAINTS

Plaintiff's first complaint is brought under 42 U.S.C. § 1983 against Onondaga DSS/CPS,

Mahoney, and DSS.  (Dkt. No. 1.)  Section 1983 "establishes a cause of action for 'the

deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the

United States."  *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y.

1995) (quoting *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) & 42 U.S.C. § 1983);

*see also Myers v. Wollowitz*, No. 95-CV-0272 (TJM)(RWS), 1995 WL 236245, at *2 (N.D.N.Y.

Apr. 10, 1995)[3] (stating that "§ 1983 is the vehicle by which individuals may seek redress for

alleged violations of their constitutional rights").  Plaintiff's statement of claim is as follows:

> 2012 I was hit and run with
> a car me and stepson [J.S.]
> never receive benefits from
> county for [J.S.] for six years
> never took care [J.S.] medical
> or food and home for him and me
> 2017 I was put on disabilitie and
> they stop paying rent left me
> with a inviction.  And put in fraud
> case to with day care.

---

[3]  Plaintiff will be provided with copies of unpublished decisions cited herein in accordance with
*Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

*Id*. at ¶ 4 (unaltered text).  Plaintiff lists three causes of action:

> (1) Discrimination on me and stepson CPS;
>
> (2) DSS never gave [J.S.] no benefits for him or me from the age 13-19; and
>
> (3) Made me homeless 2017 after I turn in job plus disabilities status from doctor.

*Id*. at ¶ 5 (unaltered text).  Plaintiff does not request any relief.  *See id*. at ¶ 6.

Plaintiff's second complaint is brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) against DSS/CPS Onondaga County, DSS/CPS Commissioner, DSS, and CPS.  (Dkt. No. 1-1.)  In *Bivens*, the Supreme Court recognized an implied private cause of action for damages against federal officers who violate a citizen's constitutional rights.  *Bivens*, 403 U.S. at 390; *see also Feldman v. Lyons*, 852 F. Supp. 2d 274, 278 (2012) (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66-67 (2001) (discussing the origin of *Bivens* claims)); *see also Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006) ("Though more limited in some respects . . . a *Bivens* action is the federal analog so suits brought against state officials under . . . 42 U.S.C. § 1983.").  Utilizing a form *Bivens* complaint, Plaintiff alleges "discrimination on me and [J.S.]."  *Id*. at ¶ 4.  Plaintiff lists three causes of action:

> (1)  No midical for [J.S.] or housing for him and me;
>
> (2)  [J.S.] and me no benefits from the age of 13-19; and
>
> (3)  Homeless didn't accept my disabilities job plus paper work.

*Id*. at ¶ 5 (unaltered text).  Plaintiff again does not request any relief.  *See id*. at ¶ 6.

## III.    LEGAL STANDARD FOR INITIAL REVIEW

Section 1915(e) directs that when a plaintiff is allowed to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is

3

frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks

monetary relief against a defendant who is immune from such relief."  28 U.S.C. §

1915(e)(2)(B)(i)-(iii).  Thus, it is a court's responsibility to determine that a plaintiff may

properly maintain his complaint before permitting him to proceed with his action.

In determining whether an action is frivolous, the court must look to see whether the

complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325

(1989).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such

as when the claims are the product of delusion or fantasy; or (2) the claim is based on an

indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437

(2d Cir. 1998) (citations and internal quotation marks omitted).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to

state a claim that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

In determining whether a complaint states a claim upon which relief may be granted, "the

court must accept the material facts alleged in the complaint as true and construe all reasonable

inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert.

denied,* 513 U.S. 836 (1994) (citation omitted).  "[T]he tenet that a court must accept as true all

of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S.

at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."  *Id*.  While Rule 8(a) of the Federal Rules of Civil Procedure

("FRCP"), which sets forth the general rules of pleading, "does not require detailed factual

allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. (internal quotation marks and citation omitted).

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## IV.     ANALYSIS

Upon review and for the reasons below, the Court finds Plaintiff's complaints (Dkt. Nos. 1 and 1-1) fail to comply with the basic pleading requirements of Rules 8 and 10 of the FRCP and fail to state a claim upon which relief may be granted pursuant to 42 U.S.C. § 1915(e).

### A.     General Pleading Standards

Rule 8 of the FRCP provides, in relevant part, that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a) also requires the pleading to include "a demand for the relief sought." *Id*. at 8(a)(3). Additionally, Rule 8(e)(1) instructs that "[e]ach averment of a pleading shall be simple, concise, and direct." *Id*. at 8(e)(1). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, No. 95 CIV. 4768(JSR), 1998 WL 832708, at *1

(S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16

(N.D.N.Y. 1995) (McAvoy, J.) (other citations omitted)).

Rule 10 of the FRCP requires, *inter alia*, that the allegations in a plaintiff's complaint be

made in numbered paragraphs, each of which should recite, as far as practicable, only a single set

of circumstances.  Fed. R. Civ. P. 10(b); *see also Hudson*, 1998 WL 832708, at *2.

"When a complaint fails to comply with these requirements, the district court has the

power, on motion or *sua sponte*, to dismiss the complaint or to strike such parts as are redundant

or immaterial." *Simmons v. Abruzzo*, 49 F.3d 83, 86-87 (2d Cir. 1995) (citing *Salahuddin v.

Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).  "Dismissal, however, is usually reserved for those

cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that

its true substance, if any, is well disguised." *Id*.  Further, if the court dismisses the complaint for

failure to comply with Rule 8 of the FRCP, it should generally give the plaintiff leave to amend.

*Id*.

Here, the Court finds Plaintiff's *pro se* complaints fail to satisfy the requirements of

Rules 8 and 10 of the FRCP.  (*See generally* Dkt. Nos. 1 and 1-1.)  In the § 1983 complaint,

Plaintiff's statement of the claim consists of a single paragraph, which references incidents from

2012 through 2017.  (Dkt. No. 1 at ¶ 4.)  Plaintiff also fails to state or specify the nature of his

constitutional rights upon which the Defendants allegedly infringed.  *See id*.  Further, Plaintiff

does not include a request for relief.  *See id*. at ¶ 6.  Similarly, in the *Bivens* complaint, Plaintiff's

statement of the claim, while certainly short, fails to give a plain statement of the claim showing

that the pleader is entitled to relief.  (*See* Dkt. No. 1-1 at ¶ 4.)  Nor does Plaintiff specify how

each Defendant violated his constitutional rights or request any relief.  *Id*.

Furthermore, while Plaintiff's constitutional claims are not entirely clear to the Court, as explained below, Plaintiff has named Defendants that are not amenable to suit under § 1983 and *Bivens*. Additionally, although J.S. is not named as a plaintiff in this action, it appears Plaintiff seeks to bring § 1983 claims on behalf of his stepson. Lastly, Plaintiff's 1983 claims, if any, may also be barred by the statute of limitations.

### B. Plaintiff's § 1983 Claims

To state a claim under § 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States. *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir. 1993). "Allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987); *see also Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) ("[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.") (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *see also Johnson v. Gagnon*, No. 9:14-CV-916 (MAD/DEP), 2015 WL 1268199, at *12 (N.D.N.Y. Mar. 19, 2015) (same). In New York, actions brought under § 1983 are subject to a three-year statute of limitations. *Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995). Under New York law, a § 1983 claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002).

1.     **Claims on Behalf of J.S.**

A litigant in federal court has the right to act as his own counsel.  *See* 28 U.S.C. § 1654 (1982) ("in all courts of the United States, the parties may plead and conduct their own cases personally or by counsel. . . .").  Moreover, Rule 17(c) of the FRCP authorizes a general guardian to bring suit on behalf of a minor.  Fed. R. Civ. P. 17(c)(1)(A).  However, it is well established that "[a] person who has not been admitted to the practice of law may not represent anybody other than himself."  *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) (citing *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) and 28 U.S.C. § 1654).  The prohibition extends to non-lawyer parents seeking to represent their children.  *See Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990) ("It goes without saying that it is not in the interest of minors or incompetents that they be represented by non-attorneys.  Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected."); *see also KLA v. Windham Southeast Supervisory Union*, 348 F. App'x 604, 605-05 (2d Cir. 2009) (the prohibition on unlicensed laymen representing anyone other than themselves extends to non-lawyer parents seeking to represent their children); *Panzardi v. Jensen*, No. 13-CV-441 (MKB), 2014 WL 905546, at *2 (E.D.N.Y. Mar. 7, 2014) (non-lawyer parents are prohibited from representing their children).

Therefore, to the extent Plaintiff attempts to bring a § 1983 claim on behalf of his stepson, such claims are subject to dismissal.

2.     **Claims against Onondaga DSS/CPS and DSS**

Plaintiff names Onondaga DSS/CPS and DSS as Defendants in this action.  (Dkt. No. 1.) Although a municipality is subject to suit pursuant to § 1983, *see Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978), departments that are merely administrative arms of a

municipality do not have the capacity to be sued as an entity separate from the municipality in which it is located. *Rose v. Cty. of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012) (citing *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002)); *see, e.g.*, *Schweitzer v. Crofton*, 935 F. Supp. 2d 527, 551 (E.D.N.Y. 2013) ("Plaintiff's claim against the Suffolk County Department of Social Services must be dismissed because it is not a suable entity."); *Pierce v. Chautauqua Cty.*, No. 06-CV-644, 2007 WL 2902954, at *3 (W.D.N.Y. Sept. 28, 2007) ("[S]ince the Chautauqua County Sheriff's Department and DSS are merely administrative arms of Chautauqua County, the claims against them must be dismissed.").  Therefore, Onondaga County is the proper defendant in this case and the Court recommends dismissing Plaintiff's claims against Onondaga DSS/CPS and DSS pursuant to 28 U.S.C. § 1915(e).  However, in deference to Plaintiff's *pro se* status, the Court construes Plaintiff's § 1983 claims as against Onondaga County, thus allowing consideration of Plaintiff's allegations against Onondaga DSS/CPS and DSS.

### 3.    Claims against Onondaga County

Pursuant to the standard for establishing municipal liability laid out in *Monell*, 436 U.S. at 658, in order to set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality."  *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. 658).  For a *Monell* claim to survive a motion to dismiss, a plaintiff must allege "sufficient factual detail" and not mere "boilerplate allegations" that the violation of the plaintiff's constitutional rights resulted from the municipality's custom or official policy.  *Plair v. City of New York*, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) (collecting cases).  A plaintiff must show the existence of an officially adopted

policy or custom that caused injury *and* a direct causal connection between that policy or custom and the deprivation of a constitutional right.  *Monell*, 436 U.S. at 690-94.

Here, Plaintiff has failed to identify or allege any facts showing that his constitutional rights were violated by customs or official policies of Onondaga County.  *See Plair*, 789 F. Supp. 2d at 469 ("Following *Iqbal* and *Twombly*, *Monell* claims must satisfy the plausibility standard . . . ."); *see also Meehan v. Kenville*, 555 F. App'x 116, 117 (2d Cir. 2014) (summary order) (holding claim against municipal entity was properly dismissed under 28 U.S.C. § 1915 for "failure to plausibly allege that any constitutional violation resulted from a custom, policy or practice of the municipality").  Therefore, the Court recommends dismissing Plaintiff's *Monell* claims, if any, against Onondaga County pursuant to 28 U.S.C. § 1915(e).  In deference to Plaintiff's *pro se* status, the Court recommends granting Plaintiff leave to amend his *Monell* claims against Onondaga County.

### 4.     Official Capacity Claims

"A suit against a municipal officer in h[er] official capacity is functionally equivalent to a suit against the entity of which the officer is an agent."  *Orange v. Cty. of Suffolk*, 830 F. Supp. 701, 706-07 (E.D.N.Y. 1993).  Therefore, to the extent Plaintiff purports to sue Mahoney in her official capacity as Onondaga County Executive, such claim would be duplicative of Plaintiff's *Monell* claim against Onondaga County.  *See, e.g., Rose v. Cty. of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012) (dismissing claims against county executives in their official capacities as duplicative of the *Monell* claim against the county); *Escobar v. City of New York*, No. 05 Civ. 3030, 2007 WL 1827414, at *19 (E.D.N.Y. June 27, 2007) (dismissing claims against the individual defendants in their official capacities as duplicative of the *Monell* claim against the

county).  Therefore, the Court recommends dismissing Plaintiff's § 1983 claims, if any, against

Mahoney in her official capacity pursuant to 42 U.S.C. § 1915(e).

### 5.  Claims against Mahoney

"Personal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.

1994) (internal quotation marks and citations omitted).  Additionally, "[b]ecause vicarious

liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each government-official

defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*,

556 U.S. at 676.  ("Government officials may not be held liable for the unconstitutional conduct

of their subordinates under a theory of *respondeat superior*.").  "Holding a position in a

hierarchical chain of command, without more, is insufficient to support a showing of personal

involvement."  *Groves v. Davis*, No. 9:11-CV-1317 (GTS/RFT), 2012 WL 651919, at *6

(N.D.N.Y. Feb. 28, 2012) (citing *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977)).

Therefore, "a plaintiff must . . . allege a tangible connection between the acts of a defendant and

the injuries suffered."  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

The Second Circuit has held that personal involvement by a supervisor necessary to state

a claim under § 1983 may be found where: "(1) the defendant participated directly in the alleged

constitutional violation, (2) the defendant, after being informed of the violation through a report

or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which

unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4)

the defendant was grossly negligent in supervising subordinates who committed the wrongful

acts, or (5) the defendant exhibited deliberate indifference to the rights of [the plaintiff] by

failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[4]

Here, Plaintiff's complaint is devoid of allegations plausibly showing the existence of any of the *Colon* criteria in this case. (*See generally* Dkt. No. 1.) In fact, Mahoney's name only appears in the caption of the complaint and there is no explanation whatsoever of what claims are brought against her or how she violated Plaintiff's constitutional rights. "Where a defendant is listed in the caption but the body of the complaint fails to indicate what the defendant did to the plaintiff, dismissal is appropriate." *Scott v. Djeck*, No. 5:09-CV-1122 (GTS/GHL), 2010 WL 145297, at *3 (N.D.N.Y. Jan. 11, 2010); *see also Clark v. United States*, No. 1:16-CV-740 (BKS/CFH), 2016 WL 10570930, at *9, 11 (N.D.N.Y. Aug. 29, 2016). Therefore, the Court recommends dismissing Plaintiff's § 1983 claims, if any, against Mahoney in her individual capacity pursuant to 42 U.S.C. § 1915(e) with leave to amend.

### 6.    Claims against Private Actors

Private conduct is beyond the reach of § 1983 "no matter how discriminatory or wrongful" that conduct may be. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) (citations omitted). Therefore, to the extent Plaintiff purports to sue Mahoney as a private actor, the Court recommends dismissing the claim with prejudice pursuant to 42 U.S.C. § 1915(e).

### 7.    Claims for Discrimination

Plaintiff alleges "discrimination on me and stepson" of an unspecified nature. (Dkt. No. 1 at ¶ 5; *see also* Dkt. No. 1-1 at ¶ 4.) As discussed above, the purpose of Rule 8 of the FRCP

---

[4] The Second Circuit has expressly declined to determine whether *Iqbal* eliminated any of the *Colon* bases for liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

"is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson*, *supra*, 1998 WL 832708, at *1. Here, notwithstanding the above deficiencies, the Court further finds that Plaintiff's general allegation of "discrimination" fails to state a claim.

To state an equal protection claim, a claimant must show that a government actor intentionally discriminated against him on the basis of race, nation origin, or gender. *Maher v. Roe*, 432 U.S. 464, 470 (1977); *see also Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) ("To prove an equal protection violation, claimants must prove purposeful discrimination directed at an identifiable or suspect class."). Such a showing has not been made here. Plaintiff's complaint is void of any allegations that he is a member of an identifiable or suspect class, nor has he alleged purposeful discrimination.

### C.    Plaintiff's *Bivens* Claims

In the second complaint, Plaintiff sues DSS/CPS Onondaga County, DSS/CPS Commissioner, DSS, and CPS pursuant to *Bivens* claiming "discrimination on me and [J.S.]." (Dkt. No. 1-1.) However, "[a] *Bivens* action is intended to be one in which federal agents, as individuals, are liable for damages resulting from their actions when acting under color of federal law." *Shannon v. General Elec. Co.*, 612 F. Supp. 308, 323 (N.D.N.Y. 1993); *see also Moore v. Samuel S. Stratten Veterans Admin. Hosp.*, No. 1:16-cv-0475 (LEK/CFH), 2016 WL 3647180, at *3 (N.D.N.Y. June 3, 2016) (holding parties can only be sued under *Bivens* if they are officers of the United States), *report-recommendation adopted by* 2016 WL 3659909 (June 30, 2016).

Inasmuch as these Defendants are not individual federal officials, the Court recommends dismissing Plaintiff's *Bivens* claims pursuant to 42 U.S.C. § 1915(e) with prejudice and without leave to amend. *See, e.g.*, *Clark*, 2016 WL 10570930, at *7-8 (recommending *sua sponte*

dismissal of *Bivens* claims with prejudice and without opportunity to amend for failure to state a claim upon which relief may be granted), *report-recommendation adopted by* 2016 WL 6610734; *Moore*, 2016 WL 3647180 at *3 (recommending *sua sponte* dismissal of *Bivens* claims with prejudice against the defendant hospital), *report-recommendation adopted by* 2016 WL 3659909.

**IV.    CONCLUSION**

Based on the foregoing, the Court recommends dismissing Plaintiff's complaints (Dkt. Nos. 1 and 1-1) for failure to comply with the FRCP and pursuant to 42 U.S.C. § 1915(e). In deference to Plaintiff's *pro se* status, the Court recommends granting Plaintiff leave to amend his § 1983 claims as set forth herein.[5]  However, because the problem with Plaintiff's *Bivens* claims is substantive, the Court recommends dismissing Plaintiff's *Bivens* claims with prejudice and without leave to amend.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**[6]; and it is further

**RECOMMENDED** that Plaintiff's complaints (Dkt. Nos. 1 and 1-1) be *sua sponte* **DISMISSED** for failure to comply with Rules 8 and 10 of the FRCP and for failure to state a claim on which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii); and it is further

---

[5]  If the District Court adopts this Report-Recommendation, any amended complaint brought under 42 U.S.C. § 1983 must comply with Rules 8 and 10 of the FRCP. Specifically, the amended complaint must contain a short and plain statement of the claim showing that Plaintiff is entitled to relief set forth in numbered paragraphs. Plaintiff must also set forth the type of relief sought.

[6]  Plaintiff should note that although his IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**RECOMMENDED** that Plaintiff be granted thirty (30) days from the date of any Order adopting this Report-Recommendation to file an amended complaint pursuant to 42 U.S.C. § 1983 against Onondaga County and Onondaga County Executive Joanne M. Mahoney in her individual capacity; and it is further

**RECOMMENDED** that Plaintiff's *Bivens* claims against Defendants DSS/CPS Onondaga County, DSS/CPS Commissioner, DSS, and CPS be **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff, along with a copy of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[7]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: January 18, 2018
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[7]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

15

1995 WL 236245

1995 WL 236245
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James N. MYERS, Jr., Plaintiff,

v.

Heather WOLLOWITZ, Attorney, Defendant.

No. 95–CV–0272 (TJM) (RWS).
|
April 10, 1995.

**Attorneys and Law Firms**

James N. Myers, Jr., Troy, NY, pro se.

*DECISION AND ORDER*

McAVOY, Chief Judge.

*I. Background*
**\*1** Presently before this Court is the above-captioned plaintiff's application to proceed in forma pauperis and civil rights complaint. Plaintiff has not paid the partial filing fee required to maintain this action.

For the reasons stated below, plaintiff's complaint is dismissed pursuant to 28 U.S.C. § 1915(d) and Local Rule 5.4(a) of the General Rules of this Court as without arguable basis in law.

In his *pro se* complaint, plaintiff seems to claim that plaintiff was represented by defendant Wollowitz, a public defender for the County of Rensselaer, in a County Court proceeding. Plaintiff alleges that after a criminal proceeding in that Court, plaintiff was "sentenced to a illegal sentence." *Id.* at 2. Plaintiff contends that due to the ineffective assistance of his counsel, defendant Wollowitz, his constitutional rights were violated. For a more complete statement of plaintiff's claims, reference is made to the entire complaint filed herein.

*II. Discussion*
Consideration of whether a *pro se* plaintiff should be permitted to proceed in forma pauperis is a two-step process. First, the court must determine whether the plaintiff's economic status warrants waiver of fees and costs under 28 U.S.C. § 1915(a). If the plaintiff qualifies by economic status, the court must then consider whether the cause of action stated in the complaint is frivolous or malicious. *Moreman v. Douglas,* 848 F.Supp. 332, 333 (N.D.N.Y.1994) (Scullin, J.); *Potnick v. Eastern State Hosp.,* 701 F.2d 243, 244 (2d Cir.1983) (per curiam).

In the present case, upon review of the plaintiff's inmate account statements, the Court has determined that plaintiff's financial status qualifies him to file or "commence" this action in forma pauperis. 28 U.S.C. § 1915(a). Turning to the second inquiry, a court may "dismiss the proceeding under 28 U.S.C. § 1915(d) if the court thereafter determines that ... the action is frivolous or malicious." *Moreman,* 848 F.Supp. at 333 (citation omitted).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Although the court has the duty to show liberality towards *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and extreme caution should be exercised in ordering sua sponte dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), there is a responsibility on the court to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action in forma pauperis. Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(d) is appropriate to prevent abuses of the process of the court, *Harkins v. Eldredge,* 505 F.2d 802, 804 (8th Cir.1974), as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327. *See generally Moreman,* 848 F.Supp. at 334.

**\*2** 42 U.S.C. § 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights. *See, e.g., Von Ritter v. Heald,* 91–CV–612, 1994 WL 688306, *3, 1994 U.S.Dist. LEXIS 17698, *8–9 (N.D.N.Y. Nov. 14, 1994) (McAvoy, C.J.). A party may not be held liable under this section unless it can be established that the defendant has acted under the color of state law. *See, e.g., Rounseville v. Zahl,* 13 F.3d 625, 628 (2d Cir.1994) (noting state action requirement under § 1983); *Wise v. Battistoni,* 92–Civ–4288, 1992 WL 380914, *1, 1992 U.S.Dist. LEXIS 18864, *2–3 (S.D.N.Y. Dec. 10, 1992) (same) (citations omitted).

1995 WL 236245

In the present case, the sole defendant named by plaintiff is the Rensselaer County public defender who apparently represented plaintiff in the criminal proceeding discussed in his complaint. *See* Complaint at 2. However, "[i]t is well settled that an attorney's representation of a party to a court proceeding does not satisfy the Section 1983 requirement that the defendant is alleged to have acted under color of state law...." *Wise,* 1992 WL 380914 at *1, 1992 U.S.Dist. LEXIS 18864 at *2–3; *see also D'Ottavio v. Depetris,* 91–Civ–6133, 1991 WL 206278, *1, 1991 U.S.Dist. LEXIS 13526, *1–2 (S.D.N.Y. Sept. 26, 1991).

Since the plaintiff has not alleged any state action with respect to the Section 1983 claim presently before the Court, plaintiff's complaint, as presented to this Court, cannot be supported by any arguable basis in law and must therefore be dismissed pursuant to 28 U.S.C. § 1915(d). *Neitzke,* 490 U.S. at 328.

Accordingly, it is hereby

ORDERED, that leave to proceed or prosecute this action in forma pauperis is denied, and it is further

ORDERED, that this action is dismissed pursuant to 28 U.S.C. § 1915(d) and Local Rule 5.4(a) of the General Rules of this Court as lacking any arguable basis in law, and it is further

ORDERED, that the Clerk serve a copy of this Order on the plaintiff by regular mail.

I further certify that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. § 1915(a).

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1995 WL 236245

---

    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

1998 WL 832708
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Theodore HUDSON, Plaintiff,

v.

Christopher ARTUZ, Warden Philip
Coombe, Commissioner Sergeant
Ambrosino Doctor Manion Defendants.

No. 95 CIV. 4768(JSR).
|
Nov. 30, 1998.

**Attorneys and Law Firms**

Mr. Theodore Hudson, Great Meadow Correctional
Facility, Comstock.

Alfred A. Delicata, Esq., Assistant Attorney General,
New York.

### MEMORANDUM AND ORDER

BUCHWALD, Magistrate J.

**\*1** Plaintiff Theodore Hudson filed this *pro se* action
pursuant to 42 U.S.C. § 1983 on April 26, 1995.
Plaintiff's complaint alleges defendants violated his
constitutional rights while he was an inmate at Green
Haven Correctional Facility. [1] Plaintiff's complaint was
dismissed *sua sponte* by Judge Thomas P. Griesa on June
26, 1995 pursuant to 28 U.S.C. § 1915(d). On September
26, 1995, the Second Circuit Court of Appeals vacated the
judgment and remanded the case to the district court for
further proceedings.

[1]   Plaintiff is presently incarcerated at Sullivan
Correctional Facility.

The case was reassigned to Judge Barbara S. Jones
on January 31, 1996. Defendants moved to dismiss the
complaint pursuant to Fed.R.Civ.P. 12(c) on November
25, 1996. Thereafter, the case was reassigned to Judge Jed
S. Rakoff on February 26, 1997. On February 26, 1998,
Judge Rakoff granted defendants' motion to dismiss, but
vacated the judgment on April 10, 1998 in response to
plaintiff's motion for reconsideration in which plaintiff

claimed that he never received defendants' motion to
dismiss.

By Judge Rakoff's Order dated April 14, 1998, this case
was referred to me for general pretrial purposes and
for a Report and Recommendation on any dispositive
motion. Presently pending is defendants' renewed motion
to dismiss. Plaintiff filed a reply on July 6, 1998. For the
reasons discussed below, plaintiff's complaint is dismissed
without prejudice, and plaintiff is granted leave to replead
within thirty (30) days of the date of the entry of this order.

### FACTS

Plaintiff alleges that he was assaulted by four inmates
in the Green Haven Correctional Facility mess hall on
March 14, 1995. (Complaint at 4.) He alleges that he
was struck with a pipe and a fork while in the "pop
room" between 6:00 p.m. and 6:30 p.m. (Complaint at
4–5.) Plaintiff contends that the attack left him with
11 stitches in his head, chronic headaches, nightmares,
and pain in his arm, shoulder, and back. (*Id.*) Plaintiff
also states that Sergeant Ambrosino "failed to secure
[the] area and separate" him from his attackers. (Reply
at 5.) Plaintiff's claim against Warden Artuz is that
he "fail [sic] to qualify as warden." (Complaint at 4.)
Plaintiff names Commissioner Coombes as a defendant,
alleging Coombes "fail [sic] to appoint a qualified warden
over security." (Amended Complaint at 5.) Plaintiff
further alleges that Dr. Manion refused to give him pain
medication. (Complaint at 5.) Plaintiff seeks to "prevent
violent crimes" and demands $6,000,000 in damages.
(Amended Complaint at 5.)

Defendants moved to dismiss the complaint, arguing
that: (1) the Eleventh Amendment bars suit against
state defendants for money damages; (2) the plaintiff's
allegations fail to state a claim for a constitutional
violation; (3) the defendants are qualifiedly immune from
damages; and (4) plaintiff must exhaust his administrative
remedies before bringing this suit.

### DISCUSSION

I find that plaintiff's complaint runs afoul of Rules 8 and
10 of the Federal Rules of Civil Procedure and dismiss
the complaint without prejudice and with leave to amend.

Federal Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The purpose of this Rule "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y.1995) (quoting *Brown v. Califano,* 75 F.R.D. 497, 498 (D.D.C.1977)); *see Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) (stating that the "principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial").

**\*2** Rule 10 of the Federal Rules of Civil Procedure requires, *inter alia,* that the allegations in a plaintiff's complaint be made in numbered paragraphs, each of which should recite, as far as practicable, only a single set of circumstances. *Moore's Federal Practice,* Vol. 2A, ¶ 10.03 (1996). Rule 10 also requires that each claim upon which plaintiff seeks relief be founded upon a separate transaction or occurrence. *Id.* [2] The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading." *Sandler v. Capanna,* 92 Civ. 4838, 1992 WL 392597, \*3 (E.D.Pa. Dec.17, 1992) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1323 at 735 (1990)).

[2]   Rule 10 states:
> (b) Paragraphs; Separate Statements. All averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances; and a paragraph may be referred to by number in all succeeding pleadings. Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth.

A complaint that fails to comply with these pleading rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of" a plaintiff's claims. *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996). It may therefore be dismissed by the court. *Id.; see also Salahuddin v. Cuomo,* 861 F.2d at 42 ("When a complaint does not comply with the

requirement that it be short and plain, the court has the power to, on its own initiative, ... dismiss the complaint"). Dismissal, however, is "usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.* In those cases in which the court dismisses a *pro se* complaint for failure to comply with Rule 8, it should give the plaintiff leave to amend when the complaint states a claim that is on its face nonfrivolous. *Simmons v. Abruzzo,* 49 F.3d 83, 87 (2d Cir.1995).

In determining whether a nonfrivolous claim is stated, the complaint's allegations are taken as true, and the "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v.. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The complaint of a *pro se* litigant is to be liberally construed in his favor when determining whether he has stated a meritorious claim. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Even if it is difficult to determine the actual substance of the plaintiff's complaint, outright dismissal without leave to amend the complaint is generally disfavored as an abuse of discretion. *See Salahuddin,* 861 F.2d at 42–42; *see also Doe v. City of New York,* No. 97 Civ. 420, 1997 WL 124214, at \*2 (E.D.N.Y. Mar.12, 1997).

Here, plaintiff's *pro se* complaint fails to satisfy the requirements of Federal Rules 8 and 10. The complaint is often illegible and largely incomprehensible, scattering what appear to be allegations specific to plaintiff within a forest of headnotes copied from prior opinions. Defendants have answered with a boilerplate brief, which is perhaps all a defendant can do when faced with such a complaint. The Court is left with an insurmountable burden in attempting to make a reasoned ruling on such muddled pleadings.

**\*3** Although plaintiff's complaint is substantially incomprehensible, it appears to plead at least some claims that cannot be termed frivolous on their face. For example, plaintiff clearly alleges that inmates assaulted him and that Dr. Manion refused to provide him medical attention. He also appears to assert that Sergeant Ambrosino failed to protect him from the attack or take steps to prevent future attacks. (Plaintiff's Reply at 5). It is well established that an inmate's constitutional rights

are violated when prison officials act with deliberate indifference to his safety or with intent to cause him harm. *Hendricks v. Coughlin,* 942 F.2d 109 (2d Cir.1991). It is similarly well established that an inmate's constitutional rights are violated when a prison doctor denies his request for medical care with deliberate indifference to the inmate's serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Hathaway v. Coughlin,* 37 F.3d 63 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). Although plaintiff provides few facts to support his allegations, I disagree with defendants' assertion that outright dismissal is appropriate because it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Defendant's Memorandum at 5 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Because plaintiff's complaint does not comply with Rules 8 and 10, it is hereby dismissed without prejudice, and plaintiff is granted leave to replead within thirty (30) days of the date of the entry of this Order. In drafting his second amended complaint, plaintiff is directed to number each paragraph and order the paragraphs chronologically, so that each incident in which he alleges a constitutional violation is described in the order that it occurred. Plaintiff is also directed to specifically describe the actions of each defendant that caused plaintiff harm, and to do so in separate paragraphs for each defendant. Plaintiff's complaint shall contain the facts specific to the incidents plaintiff alleges occurred, and not any facts relating to any case that has been decided previously by a court of law. Plaintiff's complaint shall also contain a clear statement of the relief he seeks in addition to monetary damages.

### CONCLUSION

For the reasons set forth above, plaintiff's complaint is dismissed without prejudice, and plaintiff is granted leave to replead within thirty (30) days of the date of the entry of this Order.

IT IS SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 1998 WL 832708

---

 © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 905546
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Alex PANZARDI, Plaintiff,

v.

Poul JENSEN, Rolando Perez, Deborah
Brewer, Alban Boucher, Shannon Greene,
and Dr. Carmen Veloz, Defendants.

No. 13–CV–4441 (MKB).
|
Signed March 7, 2014.

**Attorneys and Law Firms**

Alex Panzardi, Romulus, NY, pro se.

***MEMORANDUM & ORDER***

MARGO K. BRODIE, District Judge.

 *1 On July 19, 2013, the Court received several documents from Alex Panzardi, a prisoner incarcerated at Five Points Correctional Facility, including a hand-written letter addressed to "District Court Staff," a completed application to proceed *in forma pauperis* and a Prisoner Authorization form. (*See* Docket Entry No. 1.) No complaint was included among the documents. On August 7, 2013, the clerk's office mailed a packet with the necessary forms for filing a civil rights complaint and directed Plaintiff to return them within 14 days. (*Id.*) Plaintiff requested and received several extensions of time to file a complaint, and eventually filed an Amended Complaint on November 1, 2013. (*See* Docket Entry No. 8 ("Am.Compl.").) The Court grants Plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. For the reasons discussed below, the Amended Complaint is dismissed for lack of jurisdiction and for failure to state a claim. Plaintiff is granted leave to replead his 42 U.S.C. § 1983 claim for damages within 30 days.

**I. Background**
The Amended Complaint is on a form for filing civil rights complaints pursuant to 42 U.S.C. § 1983, and names six individuals as defendants, each apparently employed by Graham Windham, a private child welfare agency ("Graham Windham" or "the Agency"). (Am. Compl. at 3–4.[1]) Plaintiff alleges that the staff of the Agency intervened in his visits with his son by making recommendations to family court "with out having any kind of hard 'evidence' on how visits would [have] been 'detrimental' or 'harmful' to my son," and medicated his son without Plaintiff's consent. (*Id.* at 5.) Plaintiff further alleges that the Agency's staff "violated numerous ... court orders [and] motions." (*Id.*) He alleges that Defendants' actions have done " 'severe' 'unrepairable' 'damage' to my son emotionally [*sic*] [and] physically [and] with his school education as well." (*Id.*)

[1]     Citations to pages of the Amended Complaint and attached exhibits refer to the ECF pagination, as the pages are not otherwise consecutively numbered.

Plaintiff attaches several exhibits to the Amended Complaint, including his initial letter dated July 15, 2013 and filed with the Court on July 19, 2013, addressed to the District Court Staff ("July 19, 2013 letter"). Plaintiff appears to have challenged the Agency's determination that visits between Plaintiff and his son should not continue while Plaintiff is incarcerated. Plaintiff made several allegations in the July 19, 2013 letter. Plaintiff stated that on "Sept. 15, 2009, the Agency issue[d] a summons against me stating that the therapist from the Agency felt it would [have] been detrimental or harmful for my son to see [me] in prison[,] in which the local court granted the recommendation." (Ex. A at 8.) Plaintiff also alleged that this finding was made without " 'hard' 'evidence,' " in violation of New York State laws and regulations. (*Id.* at 8–9.) Plaintiff argued that, "If visitation is not permitted, then the fact that you have not visited with your child 'cannot' be [a] basis for a permanent neglect or abandonment proceeding." (*Id.* at 9.) Plaintiff also alleged that his son was prescribed various medications that had a "severe side effect" and that the Agency prescribed these medications "to distract his focus from me in not allowing him to have any interest to look forward to have a relationship with his father." (*Id.*) Plaintiff accused the Agency of using "their tactics tryin[g] to 'coerce' me to surrender my parental rights to my son" and "coerce my children's mom to surrender her parental rights not only just to my son but also to my daughter as well." (*Id.*) Plaintiff described orders issued by Judge Marilyn Lazarello requiring the Agency to give his letters to his son and directing the Agency to provide Plaintiff with assistance

in strengthening his relationship with his son. (*Id.* at 10.) Plaintiff claims that the Agency failed to obey these orders and "the Agency was ... in cahoots with the foster parent trying to poison my son." (*Id.*) Plaintiff suggested that the Agency "should be 'investigated' " for destroying relationships between other incarcerated individuals and their children by failing to follow court orders. (*Id.* at 11.) Neither the Amended Complaint nor the attached letter indicates Plaintiff's current custody rights as to his son.

**\*2** Plaintiff also attaches a March 18, 2013 letter from Graham Windham to Plaintiff as an exhibit to the Amended Complaint ("March 18, 2013 letter"). In the March 18, 2013 letter the Agency sought Plaintiff's consent to give Focalin, a psychotropic medicine, to his son. [2] (*Id.* at 12.) The Agency asked Plaintiff to sign a consent form "for the purposes of ... continuing medical treatment" and "consent for psychotropic medication." (*Id.* at 13–14.) A hand-written notation on the letter from the Agency states that, "The Agency never got my consent to put my son on (medication)." (*Id.* at 12.) Plaintiff has also attached to the Amended Complaint a copy of a report documenting a "psychiatric evaluation" of his son conducted in June 2011, which indicates that his son was at that time on Focalin and other medications. [3] (*Id.* at 16.)

[2]   Because several of the documents submitted by Plaintiff contain the name and birth date of his minor son, the Court sealed the Amended Complaint and exhibits. Plaintiff is advised that pursuant to Rule 5.2(a) of the Federal Rules of Civil Procedure, only a minor's initials should be used in all publicly filed documents, and references to birth dates should only include the year of birth.

[3]   It is unclear whether the psychiatric report was attached to the March 2013 letter from the Agency to Plaintiff as support for the Agency's request that Plaintiff consent to medicating his son with Focalin, or whether Plaintiff is now providing this report to demonstrate that in 2011, prior to the 2013 request from the Agency, his son was prescribed Focalin without Plaintiff's consent. (*See* Ex. A at 12–16.)

Plaintiff responded to the Agency's March 18, 2013 letter by letters dated March 21 and March 25, 2013, opposing medication for his son and requesting that his son's therapist write him a letter explaining how the medication would be in his son's best interests. (*Id.* at 17–20.) Plaintiff also requested a copy of the "2013 'Service

Plan.' " [4] (*Id.* at 17.) According to a subsequent Agency "Treatment Plan" for Plaintiff's son dated April 22, 2013, the Agency planned to "[g]et consent from father for medication changes," and to "[s]eek ACS [Administration for Children Services] override if needed." [5] (*Id.* at 21–22.) The Treatment Plan indicates that the "current level of care" for the child was in a "kinship foster home." (*Id.*)

[4]   According to a May 9, 2012 letter from the New York State Office of Children and Family Services ("Children and Family Services") addressed to the Agency ("May 9, 2012 letter"), which Plaintiff attached to the Amended Complaint, Plaintiff has raised concerns regarding the Agency's oversight of his son's care in the past. In the May 9, 2012 letter, Children and Family Services notified the Agency that Plaintiff had written them three letters "identif[ying] several issues that concern his son." (*Id.* at 25.) Children and Family Services requested that the Agency provide them with detailed information addressing Plaintiff's concerns." (*Id.*)

[5]   The treatment plan listed Defendants Rolando Perez, Deborah Brewer, Alban Boucher, Shannon Greene and Dr. Carmen Veloz as members of Plaintiff's son's "team." (*Id.* at 22.)

The Amended Complaint and exhibits appear to suggest that Plaintiff is attempting to allege claims for the following actions: (1) an unidentified therapist associated with Graham Windham recommended to an unidentified court that Plaintiff's son not be allowed to visit Plaintiff in prison, without providing detailed explanation for that determination, and such recommendation was adopted by the court; (2) Plaintiff's son was given medication without Plaintiff's consent; (3) unidentified "Agency staff" failed to comply with court orders involving Plaintiff's relationship with his son; (4) "cruel and unusual punishment of parent and child;" and (5) "the Agency" used unspecified tactics to try to coerce Plaintiff to surrender his parental rights.

Plaintiff seeks $1 million in compensatory damages and $1 million in punitive damages, along with injunctive relief to end the alleged forced medication without parental consent and the restoration of his visitation rights. (*Id.* at 6.) By Letter dated November 17, 2013 and addressed to the Clerk of Court, Plaintiff also requested the Court's assistance in securing additional library time to work on his pending action. (Docket Entry No. 9.)

## II. Discussion

### a. Standard of Review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* In reviewing a *pro se* complaint, the court must be mindful that the Plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (internal quotation marks omitted); *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) (noting that even after *Twombly,* the court "remain[s] obligated to construe a *pro se* complaint liberally"). Nevertheless, the court must screen "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and, thereafter, "dismiss the complaint, or any portion of the complaint," if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A; *see Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir.2007). Similarly, the court is required to dismiss *sua sponte* an *in forma pauperis* action, if the court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Abbas,* 480 F.3d at 639.

**\*3** A plaintiff seeking to bring a lawsuit in federal court must establish that the Court has subject matter jurisdiction over the action. *See, e.g., Monreal v. New York,* 518 F. App'x 11 (2d Cir.2013) (affirming dismissal of *pro se* complaint for failure to establish subject matter jurisdiction); *Zito v. New York City Office of Payroll Admin.,* 514 F. App'x 26, 27 (2d Cir.2013) (same); *Chestnut v. Wells Fargo Bank, N.A.,* No. 11–CV–5369, 2012 WL 1657362, at * 3 (E.D.N.Y. May 7, 2012) ("Notwithstanding the liberal pleading standard afforded *pro se* litigants, federal courts are courts of limited jurisdiction and may not preside over cases if subject matter jurisdiction is lacking."). "[F]ailure of subject

matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte.* If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Trust Co. v. Lussier,* 211 F.3d 697, 700–01 (2d Cir.2000) (citations omitted). Federal subject matter jurisdiction is available only when a "federal question" is presented, or when plaintiffs and defendants have complete diversity of citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1331 and § 1332. In order to invoke federal question jurisdiction, a plaintiff's claims must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

### b. The Court Lacks Subject Matter Jurisdiction

The Court does not have jurisdiction over Plaintiff's application for injunctive relief to restore visitation rights and enforce state court orders. It is well-settled that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *In re Burrus,* 136 U.S. 586, 593–94, 10 S.Ct. 850, 34 L.Ed. 500 (1890); *see also United States v. Windsor,* 570 ––– U.S. –––, –––, 133 S.Ct. 2675, 2691, 186 L.Ed.2d 808 (2013) ("[S]ubject to [constitutional] guarantees, regulation of domestic relations is an area that has long been regarded as a virtually exclusive province of the States." (citation and internal quotation marks omitted)). "So strong is [the Supreme Court's] deference to state law in this area that [the Supreme Court has] recognized a 'domestic relations exception' that 'divests the federal courts of power to issue divorce, alimony, and child custody decrees.' ' *Elk Grove Unified Sch. Dist. v. Newdow,* 542 U.S. 1, 12–13, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004) (quoting *Ankenbrandt v. Richards,* 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992)); *see also Keane v. Keane,* ––– F. App'x –––, –––, 2014 WL 104095, at *1 (2d Cir. Jan.13, 2014) (stating that the "domestic relations exception to subject matter jurisdiction generally encompasses ... cases involving the issuance of a divorce, alimony, or child custody decree" (citation and internal quotation marks omitted)); *Hernstadt v. Hernstadt,* 373 F.2d 316, 317 (2d Cir.1967) ("Since the very early dicta [of] *In re Burrus,* 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 500 (1890), it has been uniformly held that federal courts do not adjudicate cases involving the custody of minors and, *a fortiori,* rights of visitation."); *Ashmore v. New York,* No. 12–CV–3032, 2012 WL 2377403, at * 1–2 (E.D.N.Y. June 25, 2012) ("Federal courts 'lack [ ] jurisdiction to interfere with ...

ongoing state court proceedings concerning the custody and care of ... children.' " (alteration in original) (quoting *Abidekun v. N.Y.C. Bd. of Educ.,* No. 94–CV–4308, 1995 WL 228395, at *1 (E.D.N.Y. Apr.6, 1995))). Therefore, Plaintiff's claim for custodial or visitation rights and any claim seeking the enforcement of family court orders cannot be adjudicated by this Court and must be brought in state court.

**\*4** In addition, to the extent that Plaintiff seeks review of state court decisions and orders, federal court review of those decisions and orders would be barred by the *Rooker–Feldman* doctrine. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005); *see also Phifer v. City of New York,* 289 F.3d 49, 57 (2d Cir.2002) (*Rooker–Feldman* precludes federal court review of family court proceedings regarding issues of child custody, including issues "inextricably intertwined" with the state court's determinations.). The *Rooker–Feldman* doctrine prohibits federal district courts from reviewing cases brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Exxon Mobil Corp.,* 544 U.S. at 284. This Court may not consider Plaintiff's challenges to past Family Court proceedings related to his custodial rights or visitation. [6] Accordingly, all of Plaintiff's claims for injunctive relief are dismissed for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(h)(3).

[6]  To the extent Plaintiff has any ongoing Family Court proceedings, this Court abstains from considering any claims related to those proceedings pursuant to *Younger v. Harris,* 401 U.S. 37 (1971). The Second Circuit has held that "*Younger* abstention is appropriate when: 1) there is an ongoing state proceeding; 2) an important state interest is implicated; and 3) the plaintiff has an avenue open for review of constitutional claims in the state court." *Hansel v. Springfield,* 56 F.3d 391, 393 (2d Cir.1995). New York has an important state interest in caring for children in its temporary custody and in enforcing its courts' orders, and Plaintiff has an opportunity to raise his claims related to his custodial and visitation rights in any ongoing Family Court proceedings.

**c. Plaintiff Has Failed to State a Claim**
Plaintiff also seeks damages for violation of his constitutional rights pursuant to 42 U.S.C. § 1983 but

Plaintiff has failed to state a claim upon which relief can be granted. In order to state a § 1983 claim, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir.2010) (quoting *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994)). Section 1983 does not create any independent substantive right, but rather is a vehicle to "redress ... the deprivation of [federal] rights established elsewhere." *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999). As the Supreme Court has held, "the under-color-ofstate-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (quotations omitted). A § 1983 plaintiff seeking to recover money damages must also establish that the named defendant was personally involved in the wrongdoing or misconduct complained of. *Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006) (quoting *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994)). "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 676.

Plaintiff has not alleged that any of the named Defendants were acting under color of state law. [7] Moreover, even if the named Defendants were found to be state actors for purposes of § 1983 liability, Plaintiff has failed to state a claim against any of them. The only Defendant named in the body of the Amended Complaint is Jensen, who is described as "the president of Graham Windham Families & Childrens." (Am. Compl. at 5.) Jensen is named in his supervisory capacity. Although it is unclear whether Plaintiff intended to name Jensen in his personal capacity, (*see id.*), Plaintiff has not alleged that Jensen participated in any of the alleged unlawful conduct. No other Defendant is specifically alleged to have participated in any alleged violation of Plaintiff's constitutional rights.

[7]  Plaintiff's failure to allege that Defendants acted under color of law also bars his claim that Defendants' actions violated the Eighth Amendment prohibition against cruel and unusual punishment. *See DiPilato v. 7–Eleven, Inc.,* 662 F.Supp.2d 333, 349 (S.D.N.Y.2009) ("In order for liability to attach

to defendants for violation[ ] of the ... Eighth Amendment[ ], the defendants must be state actors or their actions must be attributable to the state."); *see also Walker v. Schult,* 717 F.3d 119, 125 (2d Cir.2013) ("[P]rison officials violate the Constitution when they deprive an inmate of his 'basic human needs' such as food, clothing, medical care, and safe and sanitary living conditions." (citation omitted)); *Samirah v. Sabhnani,* 772 F.Supp.2d 437, 449 (E.D.N.Y.2011) ( "[T]he Eighth Amendment prohibition on cruel and unusual punishment [ ] exclusively proscribe[s] government actions....").

**\*5** Plaintiff also has not clearly identified the nature of the constitutional rights he asserts have been violated. Plaintiff states that his son was forcibly medicated without his consent. However, a personal liberty claim involving forced medication could only be advanced by Plaintiff's son or by someone acting on his son's behalf. As a *pro se* litigant, Plaintiff cannot represent his son in this action. *See Guest v. Hansen,* 603 F.3d 15, 20 (2d Cir.2010) ("A person who has not been admitted to the practice of law may not represent anybody other than himself."); *KLA v. Windham Se. Supervisory Union,* 348 F. App'x 604, 605–06 (2d Cir.2009) ("Although litigants in federal court have a statutory right to act as their own counsel, 28 U.S.C. § 1654, the statute does not permit 'unlicensed laymen to represent anyone other than themselves.' That prohibition extends to non-lawyer parents seeking to represent their children, and the representation of incompetent adults." (citations omitted)); *Iannaccone v. Law,* 142 F.3d 553, 558 (2d Cir.1998) ( "[B]ecause *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause.... For example, a lay person may not represent a corporation or a partnership or appear on behalf of his or her own minor child."); *see also Barrett v. United States,* 622 F.Supp. 574 (S.D.N.Y.1985) ("[S]ection 1983 civil rights action is a personal suit and may not be brought by a relative, even the parents ... or spouse or children of the individual whose civil rights were violated." (internal quotation marks and citations omitted)). In addition, Plaintiff has not stated whether he currently has legal custody over his son in order to raise a substantive due process claim regarding his right to make medical decisions for his son. Plaintiff has also not stated whether the Administration for Children's Services, Graham Windham, or another entity has temporary or some other form of custody of his son. Finally, Plaintiff's allegation that Graham Windham tried to "coerce" him to surrender his parental rights to his son is too vague to state a claim under the Fourteenth

Amendment. Plaintiff has not identified any specific acts or omissions by any of the Defendants, nor has he alleged that he has in fact lost his parental rights or suffered any other constitutional deprivation as a result of these acts or omissions.

Plaintiff's § 1983 claims for damages are therefore dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B) (ii). However, in light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to further amend the Amended Complaint to state factual allegations in support of his claim that his civil rights have been violated and to identify the individuals whom he believes to have been responsible for the alleged deprivation of his constitutional rights. Plaintiff must provide specific descriptions of what happened and give a brief description of what each Defendant did or failed to do in violation of his civil rights, along with the dates of all relevant events. Plaintiff must identify his custodial rights and identify who has temporary legal custody over his son. Plaintiff must also state the current status of any Family Court proceedings related to his custodial claims.

### III. Conclusion

**\*6** Plaintiff's claims for injunctive relief are dismissed for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(h) (3). Plaintiff's § 1983 claims for damages are dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff is granted leave to amend his § 1983 claims for damages. Any amended complaint must be filed within 30 days of the date of this order. The amended complaint must be captioned "Second Amended Complaint" and bear the same docket number as this order. Plaintiff must use his son's initials in any correspondence, rather than his son's full name. All documents containing information regarding his son's care that Plaintiff seeks to file with the Court must be filed under seal. If Plaintiff fails to file a second amended complaint, the Amended Complaint will be dismissed. No summonses shall issue at this time, and all further proceedings shall be stayed for 30 days. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

2014 WL 905546

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 905546

---

                            © 2018 Thomson Reuters. No claim to original U.S. Government Works.

---

   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 2902954
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Jefferson L. PIERCE, Individually and as Legal
Parent and Guardian of J.P. and M.P., Minors, and
Diane J. Pierce, Individually and as Legal Parent
and Guardian of J.P. and M.P., Minors, Plaintiffs,
v.
CHAUTAUQUA COUNTY, New York; Chautauqua
County Sheriff's Department; Joseph A. Gerace,
Individually and as Chautauqua County Sheriff;
Chautauqua County Sheriff's Deputies, Chris
Ottoway and Jason Beichner; Intended to be the
Individual Officers involved in the harassment,
assault, and/or detention of Plaintiff, Jefferson L.
Pierce, herein "CCSD John Doe" and/or "CCSD
Jane Doe," the names "CCSD John/Jane Doe,"
being fictitious, and intended to be any additional
individual officers involved in the harassment
assault and/or detention of Plaintiffs herein; Kirk
Maurer, Individually and as Commissioner of
Chautauqua County Department of Social Services;
Chautauqua County Department Of Social Services;
and "DSS John Doe," and/or "DSS Jane Doe,"
the names "DSS John/Jane Doe" being fictitious,
intended to be the Chautauqua County Department
of Social Services Employees or Agents involved in
the harassment of the Plaintiffs herein, Defendants.

No. 06-CV-644C(F).
|
Sept. 28, 2007.

**Attorneys and Law Firms**

Charles Edward Fagan, Jamestown, NY, for Plaintiffs.

Diane F. Bosse, Thomas W. Bender, Volgenau & Bosse,
LLP, Buffalo, NY, for Defendants.

**Opinion**

JOHN T. CURTIN, United States District Judge.

**\*1** In this action, plaintiffs seek damages against
the County of Chautauqua; the Chautauqua County

Sheriff's Department ("Sheriff's Department"); Sheriff
Joseph A. Gerace ("Sheriff Gerace"), individually and
in his official capacity; Sheriff's Deputies Chris Ottoway
("Ottoway"), Jason Beichner ("Beichner"), and any
other deputies involved; Commissioner of Chautauqua
County Department of Social Services Kirk Maurer
("Commissioner Maurer") individually and in his official
capacity; Chautauqua County Department of Social
Services ("DSS"); and any of its agents who may have
been involved. Plaintiffs' causes of action are based on
theories of liability for several common law torts, as well as
violations of plaintiffs' civil rights under 42 U.S.C. § 1983.
The defendants have filed a motion to dismiss plaintiffs'
claims pursuant to Fed.R.Civ.P. 12(b)(6) (Item 23). For
the reasons that follow, defendants' motion is granted in
part and denied in part.

### BACKGROUND and FACTS

According to the amended complaint, on November 25,
2005 at approximately 7:50 p.m., Chautauqua County
Sheriff's Deputies Ottaway and Beichner arrived at the
plaintiffs' house and accused plaintiff Jefferson L. Pierce
of discharging a firearm after dark (Item 22, ¶ 19). The
deputies also stated that plaintiff Jefferson Pierce had a
felony record and was therefore unlawfully in possession
of a firearm *(id.)*. Plaintiffs denied that a firearm had
been discharged, and Mr. Pierce told the deputies that
he was not a convicted felon (*id.,* ¶ 20). Nonetheless,
the deputies entered the residence without a warrant and
without consent, knocked over the plaintiff's two-year-
old daughter, and confiscated several firearms, including
a World War I-era rifle which plaintiff Diane J. Pierce
was holding (*id.,* ¶¶ 21-22). Plaintiffs also allege that
the deputies threatened the plaintiffs that Chautauqua
County Child Protection Services agents, who were
parked in plaintiffs' driveway, would remove plaintiffs'
children if plaintiffs did not comply with the search of their
residence (*id.,* ¶¶ 19, 24).

Plaintiffs' complaint further alleges that the deputies used
excessive force when arresting Mr. Pierce (Item 22, ¶¶
36-40). The complaint alleges that the deputies " 'grabbed'
Mr. Pierce by the arms, 'wrenched' him around, and
forcibly removed him from his home ...," causing pain and
exacerbating his preexisting injuries (*id.,* ¶¶ 25, 37, 38). Mr.
Pierce was taken to the Chautauqua County jail, where
he was detained for approximately one hour until it was

discovered that a mistake had been made, and that he was not a convicted felon (*id.,* ¶ 26). Mr. Pierce was then released *(id.).*

Plaintiffs initiated this action by filing a complaint on September 26, 2006 (Item 1). After the defendants filed a motion to dismiss, plaintiffs filed an amended complaint on December 4, 2006 (Item 18). Plaintiffs claim, among other things, that the actions of the Sheriff's Deputies violated their civil rights according to 42 U.S.C. § 1983. Specifically, plaintiffs claim that Chautauqua County and/or Sheriff Joseph A. Gerace are liable for plaintiffs' injuries because Chautauqua County "lacked adequate policy in recruiting, managing and training officers in police actions ...." (Item 22, ¶ 32). Plaintiffs also claim that Chautauqua County and Sheriff Gerace have a municipal policy which allows officers to act on complaints without sufficient investigation (*id .,* ¶ 33).

 **\*2** On January 5, 2007, the defendants filed a motion to dismiss plaintiffs' amended complaint (Item 23). Defendants argue that plaintiffs have failed to allege any actions by the Chautauqua County DSS or Commissioner Maurer that constitute a violation of section 1983, failed to allege any personal involvement by Sheriff Gerace, failed to adequately allege any municipal custom or policy necessary to support a claim against the municipalities or individual defendants sued in their official capacities, failed to state a claim against the Sheriff's Department and DSS as administrative arms of Chautauqua County, and have failed to allege a claim against the individual deputies (Item 24, ¶¶ 14-19).

### *DISCUSSION*

#### I. Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly,* 550 U.S. ----, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Under Rule 12(b)(6), a plaintiff's complaint will be dismissed if it fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). When ruling on a defendant's motion to dismiss, a judge must accept as true

all of the factual allegations contained in the complaint. *Bell Atlantic Corp.,* 127 S.Ct. at 1965 (citing *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *See Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

In ruling on a motion to dismiss, the court is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985) (citing *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774, 779 (2d Cir.1984)). Therefore, after interpreting the complaint in favor of the plaintiff, if it is determined that the plaintiff has failed to allege a set of facts which, if proven to be true, would entitle him to relief, the complaint will be dismissed. *See Ferran v. Town of Nassau,* 11 F.3d 21, 22 (2d. Cir.1993), *cert. denied,* 513 U.S. 1121, 115 S.Ct. 925, 130 L.Ed.2d 804 (1994); *Sworn v. Western New York Children's Psychiatric Ctr.,* 269 F.Supp.2d 152, 155 (W.D.N.Y.2003) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

#### II. Claims Against the Sheriff's Department and DSS

 **\*3** The defendants seek dismissal of the complaint against the Chautauqua County Sheriff's Department and the Chautauqua County DSS on the ground that both governmental departments are administrative units of the County of Chautauqua and are not separate legal entities subject to suit.

It is well settled that, under New York law, "departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued." *Caidor v. M & T Bank,* 2006 WL 839547, at \*2 (N.D.N.Y. March 27, 2006) (quoting *Hall v. City of White Plains,* 185 F.Supp.2d 293, 303 (S.D.N.Y.2002)). Accordingly, since the Chautauqua County Sheriff's Department and DSS are merely administrative arms of Chautauqua County, the claims against them must be dismissed. *See Willard v. Town of Hamburg,* 1996 WL 607100, at \*1 (W.D.N.Y.

Sept.30, 1996) (dismissing the claims against the Police Department and the Town Board because neither "exist separate and apart from the Town and [they] do not have their own legal identities").

### III. Claims Against Commissioner Maurer and Sheriff Gerace

The plaintiffs have sued both Commissioner Maurer and Sheriff Gerace in their official capacities as well as their individual capacities. The defendants, however, argue that the complaint alleges no facts which indicate personal involvement by Commissioner Maurer or Sheriff Gerace in the alleged incident, and that plaintiffs have failed to allege any actions by these defendants which deprived plaintiffs of their constitutional rights.

In order for a plaintiff to sustain a section 1983 claim against a supervisory official in his individual capacity, the plaintiff must allege and demonstrate that the official was personally involved in the alleged constitutional violation. *See Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (citing *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003), *cert. denied,* 543 U.S. 1093, 125 S.Ct. 971, 160 L.Ed.2d 905 (2005)).

> The personal involvement of a supervisory defendant may be shown by the evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citing *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986)).

In this case, the plaintiffs' amended complaint does not allege any personal involvement by Commissioner Maurer in the alleged violation of plaintiffs' constitutional rights. Moreover, Commissioner Maurer is never specifically mentioned in the body of the amended complaint. Rather, plaintiffs allege that DSS employees (Child Protection Services agents) were parked in an unfamiliar van in their driveway (Item 22, ¶ 24). Furthermore, plaintiffs never allege any conduct by Commissioner Maurer's employees that would constitute a violation of plaintiffs' constitutional rights. It is merely alleged that DSS employees sat inside of a van parked in plaintiffs' driveway during the course of an official investigation. This conduct does not constitute the violation of a constitutional right. Plaintiffs also fail to allege that Commissioner Maurer has created a custom or policy which violates constitutionally protected rights, that Commissioner Maurer was grossly negligent in supervising his subordinates, or that he exhibited deliberate indifference to the constitutional rights of others. Since plaintiffs have not alleged any conduct by Commissioner Maurer which would establish personal involvement of a supervisory official under section 1983, the claims against Commissioner Maurer must be dismissed. *See Dove v. Fordham Univ.,* 56 F.Supp.2d 330, 335 (S.D.N.Y.1999) ("Where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted"), *aff'd,* 210 F.3d 354 (2d Cir.2000) (quoting *Morabito v. Blum,* 528 F.Supp. 252, 262 (S.D.N.Y.1981), *superseded on other grounds as recognized in Hines v. Sullivan,* 806 F.Supp. 413 (W.D.N.Y.1992)).

**\*4** Similarly, in their amended complaint, plaintiffs do not allege any personal involvement by Sheriff Gerace which would create liability under section 1983. There are no allegations that Sheriff Gerace directly participated in the arrest and detention of Mr. Pierce, nor are there allegations that Sheriff Gerace, after being informed of the wrongful arrest and detention, failed to provide a remedy. Moreover, plaintiffs' allegations of Sheriff Gerace's involvement are conclusory and do not state a claim upon which relief can be granted. Plaintiffs, in their claim of false imprisonment, state that Sheriff Gerace and/or Chautauqua County "lacked adequate policy in recruiting, managing and training officers in police actions and allowed the officers to act with grave indifference

to human safety and life." (Item 22, ¶ 32). The plaintiffs rely solely on the alleged constitutional violations surrounding Mr. Pierce's arrest in order to support their claim of inadequate policy and training. Plaintiffs claim that Mr. Pierce's arrest was "unreasonable" and "exhibited depravity," and that "these actions are standard operating procedure for the Chautauqua County Sheriff's Department." *Id.* In addition, plaintiffs also allege that Sheriff Gerace has created a policy which allows officers "to act on complaints with no background check, inquiry into the source of the complaint, or without proper investigation ...." *Id.,* ¶ 33. Again, plaintiffs rely solely on the events surrounding the arrest of Mr. Pierce to allege that this is the "standard operating procedure" of the Sheriff's Department. Plaintiffs assert that "[u]pon information and belief, this policy is in existence because of the action and/or lack of action in controlling and/or lack of training of deputy Sheriffs by Sheriff Joseph A. Gerace." *Id.*

These allegations are insufficient to survive a motion to dismiss. The plaintiffs have not alleged sufficient facts to support their claims that Sheriff Gerace created unconstitutional policies, and they have not alleged any facts which indicate that Sheriff Gerace had the requisite personal involvement in the alleged constitutional violation. Specifically, plaintiffs have not alleged factual evidence, outside of this isolated incident, which would create an inference of a custom or policy created by Sheriff Gerace. Furthermore, plaintiffs' allegations are conclusory, and they do not allege a tangible connection between any actions of Sheriff Gerace and the injuries suffered by Mr. Pierce. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986) (dismissing claims against the County Commissioner of Corrections and the Warden because the claims were conclusory and they did not "allege a tangible connection between the acts of [the defendants] and the injuries suffered"). Rather, plaintiffs' allegations are simply an attempt to hold Sheriff Gerace vicariously liable for the alleged constitutional violations of deputies Ottoway and Beichner which, under section 1983, is improper. *See Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (" '[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior' ") (quoting *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003), *cert. denied,* 543 U.S. 1093, 125 S.Ct. 971, 160 L.Ed.2d 905 (2005)). Since plaintiffs' allegations are

conclusory and do not contain sufficient factual support, the claims against Sheriff Gerace must be dismissed.

## IV. Sheriff's Deputies Ottoway and Beichner

**\*5** Plaintiffs have also alleged claims against Chautauqua County Sheriff's Deputies Chris Ottoway and Jason Beichner. Defendants argue that plaintiffs have sued the deputies solely in their official capacities, and that such claims must be dismissed as they are equivalent to claims against the County. In the amended complaint, plaintiffs state that Ottoway and Beichner are "individual[s], who harassed and assaulted Plaintiffs and / or unlawfully detained Plaintiff Jefferson L. Pierce ...." Item 22, ¶¶ 9, 10. In contrast, plaintiffs named Sheriff Gerace and Commissioner Maurer, individually and as County Sheriff and Commissioner of DSS, respectively. *Id.,* ¶¶ 8, 13. While plaintiffs have stated that defendants Ottoway and Beichner are Chautauqua County Sheriff's Deputies, a plain reading of the complaint indicates that plaintiffs intended that Ottoway and Beichner be sued in their individual capacities. The court concludes that Deputies Ottoway and Beichner are named in their individual capacities in the amended complaint, and the section 1983 claims against them for (i) false arrest, (ii) false imprisonment and, (iii) excessive use of force will thus be examined for legal sufficiency.

### A. False Arrest/Imprisonment

"The elements of false arrest/imprisonment under § 1983 are substantially the same as those under New York law." *See Caidor v. M & T Bank,* 2006 WL 839547, at \*4 (N.D.N.Y. March 27, 2006) (citing *Danielak v. City of New York,* 2005 WL 2347095, at \*6 (E.D.N.Y.2005), *aff'd,* 209 Fed. Appx. (2d Cir.2006). In order for a plaintiff to state a claim for false arrest/imprisonment under New York law, a plaintiff must show that: (1) the defendant intended to confine him, (2) plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged or justified. *Id.* (quoting *Brewster v. Nassau County,* 349 F.Supp.2d 540, 551 (E.D.N.Y.2004)).

A confinement is privileged or justified if the arrest is made with probable cause. *Brewster v. Nassau County,* 349 F.Supp.2d at 551. Probable cause exists when, at the moment of the arrest, " 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to

warrant a prudent man in believing that the [individual] had committed or was committing an offense.' " *Id.,* quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). The determination of whether probable cause exists can be made by the court as a matter of law, so long as there is "no dispute as to the pertinent events and the knowledge of the arresting officers." *Id.* (citing *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996)). Therefore, pursuant to Rule 12(b)(6), if the court determines that a plaintiff's complaint sufficiently demonstrates that the arresting officers had probable cause, the claim for false arrest must be dismissed. *Id.* (citing *Daniels v. City of New York,* 2003 WL 22510379, at *2-4 (S.D.N.Y. Nov.5, 2003)).

**\*6** In this case, the complaint clearly shows that plaintiff: (1) was confined by Deputies Ottoway and Beichner, (2) was conscious of the confinement, and (3) did not consent to the confinement by the deputies (Item 22, ¶¶ 18-35). Therefore, plaintiff satisfies the first three elements, as set forth above, of the false arrest/imprisonment claim. Defendants' motion turns on the element of probable cause, which is usually a question of fact following discovery. *See Weyant v. Okst,* 101 F.3d at 852 ("The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers"); *Bullard v. City of New York,* 240 F.Supp.2d 292, 298 (S.D.N.Y.2003) ("In contrast, '[w]here the question of whether an arresting officer had probable cause is predominantly factual in nature ... the existence ... of probable cause is to be decided by the jury' ") (quoting *Murphy v. Lynn,* 118 F.3d 938, 947 (2d Cir.1997), *cert. denied,* 522 U.S. 1115, 118 S.Ct. 1051, 140 L.Ed.2d 114 (1998)).

With regard to the fourth element, plaintiffs allege that the deputies lacked probable cause to arrest Mr. Pierce. Specifically, plaintiffs allege that the deputies "had no reasonable basis to detain Plaintiff, and his false arrest was without just cause or provocation." (Item 22, at ¶ 27.) The complaint alleges that Deputies Ottoway and Beichner acted without a search warrant and upon false information regarding gunshots on Mr. Pierce's property (*id.,* at ¶¶ 26, 42). It is difficult, however, to determine from the complaint exactly what information was available to the deputies at the time they responded to the complaint, and whether they had any reason to question the veracity of the report of a discharged firearm. This deficiency

makes it impossible for the court to determine as a matter of law that the deputies acted with probable cause. Moreover, plaintiffs allege that " 'someone' had 'misread' " information regarding Mr. Pierce's criminal history and, as a result, Mr. Pierce was thought to be a convicted felon (*id.,* at ¶ 26). It is alleged that the deputies relied on this false information in responding to the complaint and in their arrest of Mr. Pierce (*id.*). The fact that Mr. Pierce's criminal history was "misread," and that he was released immediately upon the deputies' learning of the error, raises questions with regard to the existence of probable cause. For these reasons, this court denies defendants' motion to dismiss plaintiffs' false arrest/imprisonment claim.

**B. Excessive Force**
The plaintiffs also assert a cause of action against Deputies Ottoway and Beichner for the use of excessive force during the course of the arrest of Mr. Pierce. A person's Fourth Amendment rights are violated, and a section 1983 claim arises, if excessive force is used during an arrest, an investigatory stop, or any other seizure of a free citizen. *See Cox v. County of Suffolk,* 780 F.Supp. 103, 109 (E.D.N.Y.1991) (citing *Graham v. Connor,* 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). To analyze a claim of excessive force under the Fourth Amendment, the court must apply an objective standard. *Caidor v. M & T Bank,* 2006 WL 839547, at *6 (N.D.N.Y. March 27, 2006). The court's inquiry is whether " 'the officers' actions [were] "objectively reasonable" in light of the facts and circumstances confronting them.' " *Id.* (quoting *Cox,* 780 F.Supp. at 109). Furthermore, the injuries suffered by a plaintiff need not be permanent or severe in order to recover damages under section 1983 for the use of excessive force. *See Cox,* 780 F.Supp. at 109 (quoting *Robison v. Via,* 821 F.2d 913, 924 (2d Cir.1987)).

**\*7** Here, it is alleged that during the arrest the deputies " 'grabbed' [Mr.] Pierce by the arms, handcuffed him, pulled and 'wrenched him around' with great physical force, then dragged him over the lawn of [his] home and forced him into a sheriff patrol car ." (Item 22, ¶ 37.) It is further alleged that Mr. Pierce showed no resistance during the arrest, yet the deputies still used such excessive force *(id.).* Plaintiffs also allege that the deputies showed a disregard for Mr. Pierce's preexisting injuries, which have rendered him totally disabled *(id.).* It is alleged that the excessive force used by the officers has left Mr. Pierce physically damaged (*i.e.,* bruised, weak, sore, lame), and has exacerbated his preexisting injuries, causing him

great pain, discomfort, and restrictions in his range of motion (*id.,* ¶¶ 38-39). Plaintiffs also allege that Mr. Pierce has suffered emotional pain which makes him "extremely nervous, humiliated and fearful because of [the deputies'] actions, and Plaintiff's feelings that he was unable to protect his wife and children from [the deputies]." (*Id.,* ¶ 39.).

The court finds that these allegations are sufficient, if proven, to show that the actions of the deputies may not have been "objectively reasonable." *See, e.g., Robison v. Via,* 821 F.2d at 924 (denying a summary dismissal when the plaintiff alleged that she had been " 'pushed' ... against the inside of the door of her car, 'yanked' ... out, thr[own] up against the fender, and [had her arm] 'twisted her back' "). Since the allegations by Mr. Pierce are similar in nature to the allegations in *Robison,* and allowing the plaintiffs the benefit of all favorable inferences, the defendants' motion to dismiss plaintiffs' excessive force claim against Deputies Ottoway and Beichner is denied.

**V. Municipal Custom or Policy**

The plaintiffs have also named Chautauqua County as a defendant, arguing that the County has a municipal custom or policy which allows officers to respond to complaints in a manner which violates constitutionally protected rights. Furthermore, the plaintiffs argue that Chautauqua County has not properly trained its officers, and that this lack of training allows them to act in a manner which violates constitutionally protected rights. The defendants argue that plaintiffs' section 1983 claims against Chautauqua County insufficiently allege a custom or policy and that plaintiffs' allegations are conclusory.

According to section 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects or causes to be subjected, any ... person within the jurisdiction thereof to the deprivation of any rights ... secured by the Constitution and laws, shall be liable to the party injured ...." 42 U.S.C. § 1983. Municipalities are considered "persons" for purposes of section 1983 claims; however, the municipality may not be sued under section 1983 unless the challenged action of a municipal employee was performed pursuant to a municipal custom or policy. *Monell v. Dep't of Social Services,* 436 U.S. 658, 691, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Moreover, a municipality cannot be held liable under section 1983 for the tortious conduct of its employees based on a theory of *respondeat superior. Id.* at 691.

**\*8** Although a plaintiff must show the existence of a municipal custom or policy, the custom or policy need not be an explicitly stated rule or regulation. *Ricciuti v. N.Y.C. Transit Authority,* 941 F.2d 119, 123 (2d Cir.1991). Rather, an inference that a municipal custom or policy exists may be drawn from:

> circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction, or evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges that police officers had used excessive force in violation of the complainants' civil rights ....

*Id.* (internal citation omitted). An inference of a municipal custom or policy may not, however, be drawn from "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level ...." *Id.*

In order for a plaintiff to demonstrate a municipality's "deliberate indifference" to the constitutional rights of those within its jurisdiction, a plaintiff must show that the "need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris,* 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995) (citing *Ricciuti,* 941 F.2d at 123; *Fiacco v. City of Rensselaer,* 783 F.2d 319, 328 (2d Cir.1986), *cert. denied,* 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987)).

In this case, the plaintiffs allege that Sheriff Gerace and/or Chautauqua County "have a municipal policy or

custom allowing its officers to act on complaints with no background check, inquiry into the source of the complaint, or without proper investigation whatsoever to justify the degree of force displayed [by deputies Ottoway and Beichner] on November 25, 2005." (Item 22, ¶ 33). The plaintiffs further allege that this policy is due to the action, or inaction, of Sheriff Gerace *(id.)*. The plaintiffs, however, have not made sufficient factual allegations to support this claim. The plaintiffs allege that "upon information and belief" the county has such a policy. *Id.* However, plaintiffs' amended complaint contains no factual allegations which support an inference of such a policy other than the events which took place at plaintiffs' residence on November 25, 2005. The plaintiffs allege that because certain actions were taken during the course of the arrest of Mr. Pierce, these actions represent Chautuaqua County custom or policy. As stated above, an inference of a custom or policy cannot be drawn from "a single incident alleged in a complaint." *Ricciuti,* 941 F.2d at 123. Had plaintiffs alleged other occurrences of similar conduct by Chautauqua County deputies, this court may have been able to draw an inference of such a custom or policy. In the absence of such factual support, however, this court must dismiss plaintiffs' claim against Chautauqua County.

**\*9** Similarly, the plaintiffs have failed to allege enough facts to support an inference that Chautauqua County has failed to properly train its municipal employees. Plaintiffs allege that Sheriff Gerace and/or Chautauqua County "lacked adequate policy in recruiting, managing and training officers in police actions and allowed the officers to act with grave indifference to human safety and life." (Item 22, ¶ 32). Again, these conclusory allegations are not supported by sufficient facts. The plaintiffs rely solely on the events surrounding Mr. Pierce's arrest, and allege no other incidents of officers using similar conduct which would create an inference of Chautauqua County's failure to train its officers regarding "human safety and life." *(Id.)* Furthermore, plaintiffs do not allege that Chautauqua County had any knowledge of officers who have acted with "grave indifference to human safety and life." Therefore, the court cannot conclude that Chautauqua County's need to train its officers regarding "human safety and life" was "so obvious" that its failure to do so was a reflection of its "deliberate indifference" to the constitutional rights of its citizens. *See Canton,* 489 U.S. at 390; *cf. Aguilera v. County of Nassau,* 453 F.Supp.2d 601, 608 (E.D.N.Y.2006) (holding that the plaintiffs' allegations for failure to train its employees were sufficient

because the plaintiffs alleged that the county received "numerous complaints regarding its officers['] failure to provide immediate emergency medical attention ...."). Without factual support, the court is unable to draw the inference that Chautauqua County failed to adequately train its officers. Accordingly, plaintiffs' section 1983 claims against Chautauqua County are dismissed.

**VI. State Common Law Claims**

The defendants contend that plaintiffs' state common law causes of action should be dismissed arguing that: (1) some of the causes of action are repetitive, (2) the seventh and eleventh causes of action, for "damage to personal property," are not cognizable claims, and (3) since plaintiffs' federal causes of action should be dismissed, the court should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3).[1] (*See* Item 24, at 14-16). Plaintiffs have not responded to defendants' arguments regarding the state common law claims.

[1]    Defendants also argue that "a number of plaintiffs' causes of action fail to meet the pleading requirements of the Federal Rules of Civil Procedure ...." (Item 24, Exh. 4, at 13.) The defendants do not, however, specify which causes of action fail to meet the pleading requirements. *See id.,* pp. 14, 16, 771 N.Y.S.2d 804. As the defendants have not specified which causes of action fail to meet the pleading requirements, the court does not address this argument.

At the outset, the court has determined that the amended complaint sufficiently alleges federal law claims against Sheriff's Deputies Ottoway and Beichner for false arrest/ imprisonment and for the use of excessive force. In addition, the court concludes that the federal law claims and the state law claims alleged in this case "derive from a common nucleus of operative fact ... such that [plaintiffs] would ordinarily be expected to try them all in one judicial proceeding ...." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Accordingly, this court will exercise supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367(a).

**\*10** With regard to the state law claims, defendants argue that the amended complaint contains repetitive causes of action. For example, the plaintiffs' amended complaint states a fifth cause of action "by plaintiffs" for intentional infliction of emotional distress (Item 22,

¶¶ 43-50). Plaintiffs also allege a ninth cause of action on behalf of Diane Pierce and a twelfth cause of action on behalf of plaintiffs' minor children for intentional infliction of emotional distress (*id.,* ¶¶ 61-66, 73-82). The defendants argue that as the fifth cause of action appears to state a claim on behalf of all the plaintiffs for intentional infliction of emotional distress, the ninth and twelfth causes of action are repetitive and should be dismissed (*See* Item 24, p. 15).

Having read the amended complaint in its entirety, and interpreting the complaint in the light most favorable to the plaintiffs, this court finds that the ninth and twelfth causes of action are not repetitive and should not be dismissed. Although the fifth, ninth, and twelfth causes of action are ambiguously labeled and allege similar facts, each cause of action contains factual allegations specific to one of the parties, and each cause of action appears to be on behalf of a particular party. For example, the fifth cause of action is labeled "by plaintiffs." However, it contains three paragraphs (Item 22, ¶¶ 44-46) which specifically allege facts pertinent to Mr. Pierce's claim. Additionally, these factual allegations are not made in either the ninth or the twelfth causes of action. Furthermore, paragraph E in the prayer for relief states that the fifth cause of action is "in favor of" Mr. Pierce. Similarly, paragraph I states that the ninth cause of action is "in favor of" Mrs. Pierce, and paragraph L states that the twelfth cause of action is "in favor of" of plaintiffs on behalf of their minor children. Therefore, despite its lack of clarity and organization, this court finds that the amended complaint states a fifth cause of action on behalf of Mr. Pierce, a ninth cause of action on behalf of Mrs. Pierce, and a twelfth cause of action on behalf of the minor children for intentional infliction of emotional distress.

The defendants also state that plaintiffs' seventh and eleventh causes of action, for "damages to personal property," are not cognizable claims (Item 24, p. 15). Defendants argue that damages alone are not a "cause of action;" rather, damages to personal property can only be claimed as relief sought in another cause of action (*id.*). The court, however, finds that plaintiffs' "damage to personal property" claims are essentially claims for trespass to chattels. *See, e.g., Davidoff v. Davidoff,* 2006 WL 1479558, at *10 (N.Y.Sup.Ct. May 10, 2006) (concluding that plaintiff's cause of action for destruction of personal property was essentially a claim for trespass to chattels). Moreover, in order to establish a claim for trespass to chattels, a plaintiff must allege that the defendants "intentionally, and without justification or consent, physically interfered with [the] use and enjoyment of [plaintiffs'] personal property in plaintiffs' possession, and that [plaintiffs were] harmed thereby." *School of Visual Arts v. Kuprewicz,* 3 Misc.3d 278, 771 N.Y.S.2d 804 (N.Y.Sup.Ct.2003). Here, the plaintiffs have alleged, in both the seventh and the eleventh causes of action, that the Sheriff's Deputies removed the heirloom rifle from Diane Pierce's hands, tossed it in the trunk of their car, and returned it in a damaged state upon the release of Mr. Pierce (Item 22, ¶¶ 56-58, 70-72). Therefore, the court finds that plaintiffs' seventh and eleventh causes of action for "damage to personal property" state sufficient claims against defendants for trespass to chattels.

## CONCLUSION

**\*11** Accordingly, the defendants' motion to dismiss is granted in part and denied in part. The causes of action brought pursuant to 42 U.S .C. § 1983 against the municipal defendants and defendants Gerace and Maurer are dismissed, and the motion is denied as to the claims brought against deputies Ottoway and Beichner in their individual capacities. The court will retain supplemental jurisdiction over plaintiffs' state law claims. The parties shall meet with the court on Monday, November 26, 2007, at 10 a.m. to set a further schedule.

So ordered.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 2902954

---

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 1827414
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Victor ESCOBAR, Plaintiff,
v.
CITY OF NEW YORK, New York City Police
Department, Raymond W. Kelly, as Commissioner
of the New York City Police Department, Det.
Edward Jacobowski, Det. al Arce, Sgt. Ernest Barelli,
Honorable Richard Brown, as District Attorney of
Queens County, and Gregory Pavlides, Assistant
District Attorney, Queens County, Defendants.

No. 1:05-cv-3030-ENV-CLP.
|
June 25, 2007.

**Attorneys and Law Firms**

John Nicholas Ianuzzi, Ianuzzi & Ianuzzi, New York,
NY, for Plaintiff.

David M. Hazan, New York City Law Department, New
York, NY for Defendants.

## MEMORANDUM AND ORDER

VITALIANO, D.J.

*1 Plaintiff Victor Escobar ("Plaintiff") brought this
action on June 23, 2005, pursuant to 42 U.S.C. §§ 1981 and
1983, claiming that defendants violated his rights under
the First, Fourth, Fifth, and Fourteenth Amendments
of the United States Constitution, by unlawfully searching
him, falsely arresting him, and maliciously prosecuting
him. Defendants City of New York, New York City Police
Department, Raymond W. Kelly, and Richard Brown
now move, pursuant to Rule 12(c) of the Federal Rules
of Civil Procedure, for judgment on the pleadings. For
the reasons set forth, the motion is granted with regard to
defendants New York City Police Department, Raymond
W. Kelly, and Richard Brown, and denied with regard to
the City of New York.

## Background

Plaintiff alleges that he was illegally seized on August
20, 2003, while he was lawfully parked in a car in
Queens County, New York, engaged in no illegal conduct
whatsoever. Compl. ¶ 16. He claims the defendant New
York City police officers, who were wholly unable
to communicate with him due to a language barrier,
conducted a warrantless search of the car and discovered a
sum of United States currency, which they seized without
reason. Id. ¶¶ 17-18. Plaintiff was arrested and later
charged with money laundering in the second degree.
N.Y. Penal Law § 470.15. Prosecutors offered to drop
criminal charges if plaintiff would waive his claim to the
seized funds, but plaintiff refused, and his incarceration
continued because he could not afford to post bail in the
amount of $500,000. Id. ¶¶ 20-22. Plaintiff was indicted
by a grand jury sitting in Queens County, and thereafter,
Justice Sheri S. Roman of the New York Supreme Court,
Queens County, determined, after holding a suppression
hearing, that police officers had no probable cause to
arrest plaintiff or to seize funds contained within the car.
Id. ¶¶ 25, 30. The indictment was dismissed on April 21,
2004. Id. ¶ 31.

Plaintiff claims that his prosecution "was an unfounded
ruse, maliciously tailored for the distinct purpose of
creating leverage by which the Defendants intended to
impel Plaintiff to waive any claims to the seized currency,
so that the same would be forfeited to the Government."
Id. ¶ 43. He claims that the police officers' conduct resulted
from a de facto policy of the City of New York and New
York City Police Department which permitted officers to
make false arrests, file false charges in court, and commit
perjury regarding the false charges. Id. ¶ 50. Specifically,
he claims that the Police Department has a policy of "seize
first, ask questions later" when it comes to large sums of
cash. Id. ¶¶ 14-15. Plaintiff further alleges that the City and
its Police Department are deliberately indifferent to such
behavior and fail to train and supervise police officers with
regard to warrantless arrests and seizures of currency. Id.
¶ 52.

As a result of his encounter with the police and its
prosecutorial aftermath, plaintiff claims that he was the
victim of an unlawful search and seizure, malicious
prosecution, and abuse of process, in violation of
the Fourth and Fourteenth Amendments. Plaintiff also

invokes the First Amendment, Fifth Amendment, and Equal Protection Clause of the Fourteenth Amendment.

### Discussion

**\*2** When deciding a motion for judgment on the pleadings, Fed.R.Civ.P. 12(c), a court applies the same standard used in deciding a motion to dismiss for failure to state a claim brought pursuant to Federal Rule of Civil Procedure 12(b)(6). *Greco v. Trauner, Cohen & Thomas, L.L.P.,* 412 F.3d 360, 363 (2d Cir.2005). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims ...." *Todd v. Exxon Corp.,* 275 F.3d 191, 198 (2d Cir.2001). Accordingly, the complaint is construed in a light most favorable to the plaintiff, and all of its allegations are assumed to be true. *Tindall v. Poultney High Sch. Dist.,* 414 F.3d 281, 283 (2d Cir.2005); *Desiano v. Warner-Lambert Co.,* 326 F.3d 339, 347 (2d Cir.2003); *Rivera v. Heyman,* 157 F.3d 101, 103 (2d Cir.1998). Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2). Still, the complaint must present "enough facts to state a claim to relief that is plausible on its face"; it must be "above the speculative level." *Bell Atlantic Corp. v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 1965, 1974, --- L.Ed.2d ---- (May 21, 2007).

### I. *The Complaint States a Claim Against The City of New York*

A municipality may not be held liable for its employees' constitutional violations under a general *respondeat superior* theory. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983). In *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the Supreme Court rejected application of a heightened pleading standard to municipal liability claims brought pursuant to 42 U.S.C. § 1983. *Id.* at 168; *see also Hall v. Marshall,* 479 F.Supp.2d 304, 316 (E.D.N.Y.2007);

*Nesbitt v. County of Nassau,* No. 05-cv-5513, 2006 WL 3511377, at \*3-4 (E.D.N.Y. Dec.6, 2006).

The complaint alleges that the City of New York fails to properly train, supervise, and discipline its police officers, thus leading to unlawful seizures and the imposition of false charges against private citizens-as in plaintiff's case. Plaintiff further claims that the City has a policy of "seize first, ask questions later" when it comes to large sums of money. Given the relaxed pleading standard of Federal Rule of Civil Procedure 8(a)(2), plaintiff alleges enough to survive the City's motion for judgment on the pleadings.

Defense counsel has presented materials outside of the pleadings in attempting to show that the individually-named police officers did not violate plaintiff's constitutional rights-a finding that would preclude imposition of municipal liability. However, since discovery is not yet complete-plaintiff has not, for example, deposed the police officers-this Court will not accept the City's invitation to convert the motion for judgment on the pleadings into a motion for summary judgment. Plaintiff's reference to qualified immunity is completely misplaced, as: (i) the individually named defendants are not before the Court, therefore obviating the need to resolve qualified immunity altogether, let alone at an early point in the litigation, *see Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); and (ii) if a constitutional violation occurred, then the individual officers' qualified immunity is irrelevant to the City's municipal liability, *i.e.,* the City may still be liable "even if the arresting officers are not held responsible because of some good faith belief." *Kuha v. City of Minnetonka,* 365 F.3d 590, 603 (8th Cir.2003) (citation omitted), *abrogated on other grounds by Szabla v. City of Brooklyn Park,* 486 F.3d 385, 2007 WL 1452595 (8th Cir. May 18, 2007).

### II. *The Complaint Fails to State a Claim Against District Attorney Brown*

**\*3** Plaintiff has named Richard Brown, District Attorney of Queens County, as a defendant. The complaint fails to state a claim against Brown.

When a New York State county district attorney is sued in his official capacity for quasi-judicial acts-*e.g.* charging decisions-he is "properly deemed to be an official of New York State and [is] entitled to invoke Eleventh Amendment immunity." *Ying Jing Gan v. City of New*

*York,* 996 F.2d 522, 536 (2d Cir.1993); *Peterson v. Tomaselli,* 469 F.Supp.2d 146, 157 (S.D.N.Y.2007). Thus, to the extent that the complaint seeks damages from Brown, in his official capacity, for damages stemming from his office's prosecutorial decisions, the Eleventh Amendment is a complete bar to recovery.

Further, though a district attorney may be sued in his individual capacity, he may not be held liable under a general *respondeat superior* theory for the acts of assistant district attorneys. *Ying Jing Gan,* 996 F.2d at 536. A plaintiff must instead show that the district attorney was personally involved in the alleged constitutional violation. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991). Personal involvement of a supervisory official may be established by showing that: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citing *Wright,* 21 F.3d at 501). Plaintiff pleads no facts that would support a claim against District Attorney Brown on any of these theories. Plaintiff makes no allegation that the District Attorney personally prosecuted his case; in fact, the complaint never even references District Attorney Brown-not even in the "parties" section. To the extent, then, that plaintiff seeks to hold the District Attorney personally liable, his claim fails because he alleges no facts tending to show the District Attorney's personal involvement in his case. Plaintiff's claims against Brown are, accordingly, dismissed.

III. *The Complaint Fails to State a Claim Against Commissioner Raymond Kelly in His Individual Capacity*
Plaintiff's complaint names Raymond W. Kelly, "as Commissioner of the New York City Police Department," suggesting that plaintiff brings this claim against the Police Commissioner in his official capacity. A suit for damages against a municipal officer *in their official capacity* is the equivalent of a damage suit against the

municipality itself. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). "To the extent the Police Commissioner is being sued in his official capacity, any claim against him is merely duplicative of the action against the City." *Nogue v. City of New York,* No. 98-cv-3058, 1999 WL 669231, at *7 n. 13 (E.D.N.Y. Aug.27, 1999); *Walton v. Safir,* 122 F.Supp.2d 466, 477 n. 12 (S.D.N.Y.2000) ("[S]uing the Police Commissioner adds nothing."). To succeed on the claim against the Police Commissioner in his official capacity, plaintiff must still show that a City of New York custom, policy, or practice was the moving force behind the alleged constitutional violations. *See Barry v. New York City Police Dep't,* No. 01-cv-10627, 2004 WL 758299, at *9 (S.D.N.Y. Apr.7, 2004). "Based upon the understanding that it is duplicative to name both a government entity and the entity's employees in their official capacity, courts have routinely dismissed corresponding claims against individuals named in their official capacity as 'redundant and an inefficient use of judicial resources.' " *Robinson v. Dist. of Columbia,* 403 F.Supp.2d 39, 49 (D.D.C.2005) (quoting *Cooke-Seals v. Dist. of Columbia,* 973 F.Supp. 184, 187 (D.D.C.1997)); *Petruso v. Schlaefer,* 474 F.Supp.2d 430, 441 (E.D.N.Y.2007) (citing *Orange v. County of Suffolk,* 830 F.Supp. 701, 706-07 (E.D.N.Y.1993)); *Longo v. Suffolk County Police Dep't,* 429 F.Supp.2d 553, 558 n. 1 (2006). Since the City is named in the complaint, any claims against the Police Commissioner in his official capacity are dismissed as redundant and duplicative.

**\*4** Further, it does not appear that plaintiff seeks to bring a claim against the Police Commissioner in his individual capacity. Regardless, like District Attorney Brown, Police Commissioner Kelly cannot be held vicariously liable under a *respondeat superior* theory. "An individual cannot be held liable for damages under § 1983 'merely because he held a high position of authority,' but can be held liable if he was personally involved in the alleged deprivation." *Back v. Hastings on Hudson Union Free Sch. Dist.,* 365 F.3d 107, 127 (2d Cir.2004) (quoting *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996)). Plaintiff pleads no facts that would suggest Commissioner Kelly's personal involvement in his arrest or prosecution. This being the case, and with the complaint in no way suggesting that plaintiff has a good faith basis for raising a claim against the Police Commissioner in his individual capacity, all claims against Raymond W. Kelly are dismissed.

IV. *Plaintiff Cannot Sue the New York City Police Department*

Plaintiff has named the New York City Police Department as a defendant. The capacity of a city agency "to sue or be sued shall be determined by the law of the state in which the district court" sits. *See* Fed.R.Civ.P. 17(b). The New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter, Ch. 17, § 396. Accordingly, it is well established that a plaintiff's legal claims against the New York City Police Department must be addressed in a lawsuit against the City of New York. *Nance v. N.Y.C. Police Dep't,* No. 06-cv-306, 2006 WL 1027128, at *2 (E.D.N.Y. Jan.30, 2006); *Piferrer v. New York City Police Dep't,* No. 98-cv-191, 1999 WL 169505, at *1 (E.D.N.Y. Mar.3, 1999); *Bailey v. New York City Police Dep't,* 910 F.Supp. 116, 117 (E.D.N.Y.1996). Accordingly, plaintiff's claims, to the extent they are brought against the New York City Police Department, are dismissed.

### Conclusion

For the foregoing reasons, all federal claims against defendants Raymond W. Kelly, Richard Brown, and the New York City Police Department are dismissed. The Court will not exercise supplemental jurisdiction over any state law claims brought against these defendants. Due to the age of this matter, Magistrate Judge Cheryl L. Pollak is respectfully requested to place and keep the parties on an expedited discovery track.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 1827414

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 651919
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kenneth Carl GROVES, Sr., Plaintiff,

v.

Brett DAVIS, Secure Care Treatment Aid; David
W. Sill, Secure Care Treatment Aid; Thomas
Nicolette, RN, Ward Nurse; Charmaine Bill,
Treatment Team Leader; Jill E. Carver, Social
Worker, Primary Therapist; Edwin Debroize,
Psychologist Assist; Jeff Nowicki, Chief of Mental
Health Treatment Serv.; Terri Maxymillian,
Ph.D., Dir. of Mental Health Serv.; Sgt. Sweet,
Security Services, CNYPC; Michael Hogan,
Comm'r, Dep't of Mental Health, Defendants.

No. 9:11–CV–1317 (GTS/RFT).
|
Feb. 28, 2012.

**Attorneys and Law Firms**

Kenneth Carl Groves, Sr., Marcy, NY, pro se.

***MEMORANDUM DECISION and ORDER***

Hon. GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Kenneth Carl Groves, Sr. ("Plaintiff"),
against numerous employees of the New York State or the
Central New York Psychiatric Center ("Defendants"),
are Plaintiff's motion to proceed *in forma pauperis,* his
motion for a temporary restraining order and preliminary
injunction, and his motion for appointment of counsel.
(Dkt.Nos.2, 3, 4.) [1] For the reasons set forth below,
Plaintiff's motion to proceed *in forma pauperis* is granted;
his motion for a preliminary injunction is denied; his
motion for appointment of counsel is denied; Plaintiff's
claims of deliberate indifference to his mental health
needs against Defendants Bill, Carver and DeBroize are
*sua sponte* dismissed with prejudice; Plaintiff's claims
against Defendants Bill, Carver, DeBroize, Nowicki,
Maxymillian, and Hogan arising from their alleged
personal involvement in the August 8, 2011 assault are

*sua sponte* dismissed without prejudice and with leave to
amend in this action in accordance with Fed.R.Civ.P.
15; Sgt. Sweet is *sua sponte* dismissed without prejudice
as a Defendant in this action; the Clerk is directed to
issue summonses, and the U.S. Marshal is directed to
effect service of process on Defendants Davis, Sill, and
Nicolette.

1    This is the fourth civil rights action filed by Plaintiff
in this District. Generally, two of these actions arose
out of Plaintiff's refusal to consent to a strip search
and the subsequent actions taken against Plaintiff
as a result of his refusal. *See Groves v. New York,*
09–CV–0406, Decision and Order (N.D.N.Y. filed
May 11, 2009) (Hurd, J.) (*sua sponte* dismissing
complaint pursuant to 28 U.S.C. § 1915[e][2][B] );
*Groves v. The State of New York,* 9:09–CV–0412,
Decision and Order (N.D.N.Y. filed Mar. 26, 2010)
(Sharpe, J.) (granting defendants' motion to dismiss
the complaint pursuant to Fed.R.Civ.P. 12[b][6] ).
The third action alleged numerous violations of
Plaintiff's constitutional rights during the period July
23, 2009, and August 26, 2009, and was dismissed
without prejudice upon Plaintiff's request in October,
2010. *See Groves v. Maxymillian,* 9:09–CV–1002,
Decision and Order (N.D.N.Y. filed Oct. 8, 2010)
(Suddaby, J.). As a result, it does not appear that
the current action is barred because of res judicata,
collateral estoppel, and/or the rule against duplicative
litigation.

**I. RELEVANT BACKGROUND**
On November 7, 2011, Plaintiff commenced this action
*pro se* by filing a civil rights Complaint, together with
a motion to proceed *in forma pauperis.* (Dkt. Nos.1,
2.) [2] Liberally construed, Plaintiff's Complaint alleges
that the following constitutional violations against him
occurred during his confinement at Central New York
Psychiatric Center ("CNYPC"): (1) Defendants Davis and
Sill used excessive force against him under the Eighth
and/or Fourteenth Amendments; (2) Defendant Nicolette
knew of and failed to take action to protect Plaintiff
from the assault under the Eighth and/or Fourteenth
Amendments; (3) Defendants Bill, Carver, and DeBroize
were deliberately indifferent to his mental health needs
under the Eighth and/or Fourteenth Amendments;
and (4) Defendants Bill, Carver, DeBroize, Nowicki,
Maxymillian, Bosco, and Hogan failed to "adequately
train the staff under their supervision" and to take
appropriate action in response to the incident. (*See*

*generally* Dkt. No. 1.) For a more detailed description of Plaintiff's claims, and the factual allegations giving rise to those claims, the reader is referred to Part III.B of this Decision and Order.

2        At that time, Plaintiff also filed motions for injunctive relief and for appointment of counsel. (Dkt.Nos.3, 4.)

## II. MOTION TO PROCEED *IN FORMA PAUPERIS*

Because Plaintiff sets forth sufficient economic need, the Court finds that Plaintiff may properly commence this action *in forma pauperis.* (Dkt. No. 2.)

## III. *SUA SPONTE* REVIEW OF PLAINTIFF'S COMPLAINT

In light of the foregoing, the Court must now review the sufficiency of the allegations that Plaintiff has set forth in his Complaint in light of 28 U.S.C. § 1915(e)(2)(B). This is because Section 1915(e)(2)(B) directs that, when a plaintiff seeks to proceed *in forma pauperis,* "(2) ... the court shall dismiss the case at any time if the court determines that —... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [3]

3        The Court notes that, similarly, Section 1915A(b) directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

### A. Governing Legal Standard

**\*2**  It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n .17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12– 61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by

the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

**\*3** As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* it "does not impose a probability requirement." *Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12.[4] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[5] Stated more simply, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28 [citations omitted].[6]

[4]   *See Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

[5]   *See Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

[6]   It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, *"Specific facts are not necessary"* to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law—first offered in *Conley* and repeated in *Twombly*—that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

**B. Analysis of Plaintiff's Complaint**

The Court prefaces its analysis of Plaintiff's Complaint by noting that, although Plaintiff is a civilly committed sex offender and no longer a prisoner, the Court will look to cases addressing prisoner's rights in analyzing Plaintiff's claims, because "confinement of civilly committed patients is similar to that of prisoners." *Holly v. Anderson,* 04–CV–1489, 2008 WL 1773093, at *7 (D.Minn. Apr.15, 2008); *see also Morgan v. Rabun,* 128 F.3d 694, 697 (8th Cir.1997) ("The governmental interests in running a state mental hospital are similar in material aspects to that of running a prison."). Thus, whereas claims of excessive force by convicted criminals are analyzed under the Eighth Amendment to the United States Constitution, because Plaintiff is a civilly committed sex offender and no longer a prisoner, his substantive rights to be free from unsafe conditions of confinement arise under the Due Process Clause of the Fourteenth Amendment. In *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Court stated "[i]f it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional [under the Due Process Clause] to confine the involuntarily committed-who may not be punished at all-in unsafe conditions." *Youngberg,* 457 U.S. at 315–16. As have numerous other courts which have considered the issue, this Court has found that "the standard for analyzing a civil detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard." *Groves v. Patterson,* 09–CV–1002, Memorandum–Decision and Order at *15–16 (N.D.N.Y. filed Nov. 18, 2009).[7]

---

[7]    *See Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) ("[W]hile the Supreme Court has not precisely limned the duties of a custodial official under the Due Process Clause to provide needed medical treatment to a pretrial detainee, it is plain that an unconvicted detainee's rights are at least as great as those of a convicted prisoner."); *Walton v. Breeyear,* 05–CV–0194, 2007 WL 446010, at *8, n. 16 (N.D.N.Y. Feb.8, 2007) (Peebles, M.J.) (noting that pretrial detainees enjoy protections under the due process clause of the Fourteenth Amendment parallel to those afforded to sentenced prisoners by the Eighth Amendment); *Vallen v. Carrol,* 02–CV–5666, 2005 WL 2296620, at ——8–9 (S.D.N.Y. Sep.20, 2005) (finding that the Eighth Amendment standard of "deliberate indifference" is the correct one for Section 1983 claims brought by involuntarily committed mental patients based on alleged failures to protect them

that violated their substantive due process rights); *Bourdon v. Roney,* 99–CV–0769, 2003 WL 21058177, at *10 (N.D.N.Y. Mar.6, 2003) (Sharpe, M.J.) ("The standard for analyzing a pretrial detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard.").

### 1. Excessive Force Claims Against Defendants Davis, Still and Nicolette

**\*4**  Plaintiff alleges that on August 8, 2011, Defendant Davis entered Plaintiff's dorm room at CNYPC and "viciously attacked and brutally assaulted and battered" him. (Dkt. No. 1 at 4.) During the course of this assault, Defendant Sill is alleged to have entered Plaintiff's room and "jump[ed] on the plaintiff's legs holding and pinning them as Defendant Davis [continued to beat Plaintiff]." (*Id.*) As alleged in the Complaint, although Defendant Nicolette knew in advance that this assault was planned, he "remained in the Nurses Station" and "did nothing to intercede [sic] or stop the brutal attack on the plaintiff." (*Id.* at 5.)

To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must allege the following: (1) subjectively, that the defendants acted wantonly and in bad faith; and (2) objectively, that the defendants' actions violated "contemporary standards of decency." *Blyden v. Mancusi,* 186 F.3d 252, 262–63 (2d Cir.1999) (internal quotation marks omitted) (citing *Hudson v. McMillian,* 503 U.S. 1, 8 [1992] ).

Here, construing the factual allegations of Plaintiff's Complaint with special leniency, the Court finds that Plaintiff appears to have alleged facts plausibly suggesting that he was subjected to excessive force by Defendants Davis and Sill. In addition, by alleging that Defendants Davis, Sill and Nicolette discussed the assault in advance of it occurring, and that Nicolette was in the vicinity of Plaintiff's room and had an opportunity to intervene to prevent it, the Complaint sufficiently alleges that Defendant Nicolette was personally involved and/or failed to protect Plaintiff from the assault. *See Bhuiyan v. Wright,* 06–CV–0409, 2009 WL 3123484, at *7 (N.D.N.Y. Sept.29, 2009) (Scullin, J.) ("The fact that defendant Davis was not in the room, but was acting as a 'lookout' so that no one came into the room while plaintiff was being beaten, would not absolve him from liability for the assault. An officer's failure to intervene during another officer's use of excessive force can itself constitute an

Eighth Amendment violation unless the assault is "sudden and brief," and the defendant had no real opportunity to prevent it."); *Jeffreys v. Rossi,* 275 F.Supp.2d 463, 474 (S.D.N.Y.2003) (holding that an officer may be personally involved in the use of excessive force if he either directly participates in the assault or if he was present during the assault, yet failed to intervene on behalf of the victim, even though the officer had a reasonable opportunity to do so).

As a result, a response to these claims is required from Defendants David, Sill, and Nicolette. In so ruling, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2. Deliberate Indifference Claims Against Defendants Bill, Carver and DeBroize

Plaintiff alleges that on August 9, 2011, the day after the alleged assault, he attempted to "discuss the incident and what transpired" with Defendants Bill and Carver. (Dkt. No. 1 at 5.) Plaintiff alleges that Defendant Bill told him, "I don't want to discuss this Mr. Groves, we're too busy for your foolishness and the matter is being investigated." (*Id.*) Plaintiff's effort to explain that he was frightened by the incident was rebuffed by Defendant Bill, who told Plaintiff to "grow up." (*Id.* at 5–6.) The following day, Plaintiff attempted to discuss the incident with Defendant Carver, his primary therapist, again without success. A further attempt at discussion later that day was met with Defendant Carver "stating to the plaintiff in a snotty tone 'grow the hell up!' " (*Id.* at 6.) On August 10, 2011, Plaintiff attempted to discuss the incident "and his current fears and feelings," during his Monday afternoon "Process Group," which is facilitated by Defendant DeBroize. As alleged, Defendant DeBroize told Plaintiff and the other group members that the matter was under investigation "so no one could discuss the incident with anyone." (*Id.* at 6.)

**\*5**  To state a claim of deliberate indifference to a serious medical and/or mental health need under the Eighth Amendment, a plaintiff must first allege facts plausibly suggesting that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.' " *Ross v. Kelly,* 784 F.Supp.

35, 44 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (2d Cir.1992) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105–06). The "deliberate indifference standard embodies both an objective and a subjective prong," both of which the plaintiff must establish. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.' " *Id.* (citations omitted). Second, the defendant "must act with a sufficiently culpable state of mind." *Id.*

With regard to the first element, generally, to be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting) [citations omitted], *accord, Hathaway,* 37 F.3d at 66; *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998).).[8] Under the subjective component, a plaintiff must also allege facts plausibly suggesting that the defendant acted with "a sufficiently culpable state of mind." *Hathaway,* 37 F.3d at 66. The requisite culpable mental state is similar to that of criminal recklessness. *Wilson v. Seiter,* 501 U.S. 294, 301–03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). A physician's negligence in treating or failing to treat a prisoner's medical condition does not implicate the Eighth Amendment and is not properly the subject of a Section 1983 action. *Estelle,* 429 U.S. at 105–06; *Chance,* 143 F.3d at 703.[9]

[8]  Relevant factors informing this determination include whether the plaintiff suffers from an injury that a "reasonable doctor or patient would find important and worthy of comment or treatment," a condition that "significantly affects" a prisoner's daily activities, or "the existence of chronic and substantial pain." *Chance,* 143 F.3d at 702.

[9]  Thus, a physician who "delay[s] ... treatment based on a bad diagnosis or erroneous calculus of risks and costs" does not exhibit the mental state necessary for deliberate indifference. *Harrison,* 219 F.3d at 139. Likewise, an inmate who disagrees with the physician over the appropriate course of treatment has no claim under Section 1983 if the treatment provided is "adequate." *Chance,* 143 F.3d at 703. The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment

when the care provided is 'reasonable.' " *Jones v. Westchester Cnty. Dept. of Corr.,* 557 F.Supp.2d 408, 413 (S.D.N.Y.2008). In addition, "disagreements over medications, diagnostic techniques (e .g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention are not adequate grounds for a section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F.Supp.2d 303, 312 (S.D.N.Y.2001). However, if prison officials consciously delay or otherwise fail to treat an inmate's serious medical condition "as punishment or for other invalid reasons," such conduct constitutes deliberate indifference. *Harrison,* 219 F.3d at 138.

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting that Defendants Bill, Carver, and DeBroize acted with deliberate indifference to Plaintiff's serious mental health condition when they declined to discuss the incident of August 8, 2011. There is nothing in the Complaint that even remotely suggests that the requested conversations were integral to Plaintiff's treatment as a convicted sex offender involuntarily committed to CNYPC, or that Defendants' refusal to discuss the incident with Plaintiff when he requested to do so caused Plaintiff to suffer any harm or worsening of his condition. In addition, Plaintiff does not allege that any of these Defendants acted with the requisite culpable state of mind.

Moreover, the statements made by Defendants Bill and Carver that he should "grow up," even if construed as verbal harassment, do not give rise to a cognizable claim that may be pursued under Section 1983. Allegations of verbal harassment are insufficient to support a Section 1983 claim. *Johnson v. Eggersdorf,* 8 F. App'x 140, 143 (2d Cir.2001); *see also Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) ("[A]llegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged .").

**\*6** For these reasons, Plaintiff's deliberate indifference claims against Defendants Bill, Carver, and DeBroize are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). Moreover, because the Court cannot imagine how Plaintiff might correct this claim through better pleading, he is not granted leave to attempt to do so in an amended pleading. [10] Rather, this claim is hereby dismissed with prejudice.

[10]  The Court notes that, generally, leave to amend pleadings shall be freely granted when justice so requires. Fed.R.Civ.P. 15(a). However, an opportunity to amend is not required where amendment would be futile. *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.,* 22 F.3d 458, 462 (2d Cir.1994). *John Hancock Mut. Life Ins. Co.,* 22 F.3d at 462. The Second Circuit has explained that "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993); *see Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with [Plaintiff's] cause of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). This rule is applicable even to *pro se* plaintiffs. *See, e.g., Cuoco,* 222 F.3d at 103.

### 3. Failure to Supervise Claims Against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan

To prevail on a claim under 42 U.S.C. § 1983, a defendant must be personally involved in the plaintiff's constitutional deprivation. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). Generally, for purposes of 42 U.S.C. § 1983, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. [11]

[11]  *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (adding fifth prong); *Wright,* 21 F.3d at 501 (adding fifth prong); *Williams v. Smith,* 781 F.2d 319, 323–324 (2d Cir.1986) (setting forth four prongs).

Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement. *McKinnon,* 568 F.2d at 934. Rather, a plaintiff must demonstrate " 'a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas,* 04–CV–7263, 2008 WL 857528, at \*2 (S.D.N.Y. Mar.31, 2008) (quoting *Bass v. Jackson,* 790 F.2d 260, 263 [2d Cir.1986] ) (other citation omitted). An official's failure to respond to grievance letters from inmates, however, "does not

establish supervisory liability." *Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997).[12] Moreover, "the law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Pine v. Seally,* 9–CV–1198, 2011 WL 856426, at *9 (N.D.N.Y. Feb.4, 2011).[13]

[12]  See also *Gillard v. Rosati,* 08–CV–1104, 2011 WL 4402131, at *7 (N.D.N.Y. Aug.22, 2011) (Peebles, J.) ("It is well-established that without more, 'mere receipt of letters from an inmate by a supervisory official regarding a medical claim is insufficient to constitute personal liability." [internal quotation marks and brackets omitted] ); *Greenwaldt v. Coughlin,* 93–CV–6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995) ("it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations."); *Clark v. Coughlin,* 92–CV 0920, 1993 WL 205111, at *5 n. 2 (S.D.N.Y. Jun.10, 1993) ("Courts in this jurisdiction have consistently held that an inmate's single letter does not constitute the requisite personal involvement in an alleged constitutional deprivation to trigger the Commissioner's liability.")

[13]  See also *Bernstein v. N.Y.,* 591 F.Supp.2d 448, 460 (S.D.N.Y.2008) ("Courts within the Second Circuit have determined that there is no constitutional right to an investigation by government officials." [internal quotation marks, brackets and ellipsis omitted] ).

In his Complaint, Plaintiff alleges in wholly conclusory terms that Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan failed to "adequately train the staff under their supervision and fail[ed] to act within the scope and training of the position and job title they hold." (Dkt. No. 1 at 8.) Plaintiff alleges that he submitted a letter of complaint to Defendant Hogan and wrote to Defendant Nowicki on several occasions expressing concern his complaint had not been responded to, only to be advised that in September, 2011 that an investigation was ongoing. (*Id.* at 6–7.) Plaintiff does not allege that any of these Defendants personally participated in the alleged assault on August 8, 2011.

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting any personal involvement by these Defendants in the alleged used of excessive force

on August 8, 2011. As a result, Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from this incident are *sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). This dismissal is without prejudice to Plaintiff's right to file an Amended Complaint that corrects the above-described pleading defects, and states a viable claim against these Defendants. The Court notes that, at this early stage of the case, Plaintiff has the right—without leave of the Court—to file an Amended Complaint within the time limits established by Fed.R.Civ.P. 15(a)(1)(B). However, if he seeks to file an Amended Complaint after those time limits, he must file a motion for leave to file an Amended Complaint in accordance with Fed.R.Civ.P. 15(a)(2). In either event, Plaintiff is advised that *any Amended Complaint must be a complete pleading that will replace and supersede the original Complaint in its entirety, and that may not incorporate by reference any portion of the original Complaint. See* N.D.N.Y. L.R. 7.1(a) (4).

**\*7**  Finally, although Plaintiff names Sgt. Sweet as a Defendant in the caption of the complaint and in the listing of the parties, he has not set forth in the Complaint any allegations of fact regarding the conduct of this Defendant complained of. (*See generally* Dkt. No. 1.) As a result, the Complaint fails to state a claim upon which relief may be granted and Sgt. Sweet is dismissed from this action without prejudice to Plaintiff's right to file an Amended Complaint as set forth above.

## IV. MOTION FOR INJUNCTIVE RELIEF

A preliminary injunction is an "extraordinary remedy that should not be granted as a routine matter." *Patton v. Dole,* 806 F.2d 24, 28 (2d Cir.1986). In most cases, to warrant the issuance of a preliminary injunction, a movant must show (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits, and a balance of hardships tipping decidedly in favor of the moving party. *D.D. ex rel. V.D. v. New York City Bd. of Educ.,* 465 F.3d 503, 510 (2d Cir.2006) (quotation omitted). "The purpose of issuing a preliminary injunction is to 'preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the ... merits.' " *Candelaria v. Baker,* 00–CV–912, 2006 WL 618576, at *3 (W.D.N.Y. Mar.10, 2006) (quoting *Devose v. Herrington,* 42 F.3d 470, 471 [8th Cir.1994] ). Preliminary injunctive relief " 'should not be granted

Case 5:17-cv-01302-BKS-TWD   Document 4   Filed 01/18/18   Page 46 of 91

unless the movant, by a clear showing, carries the burden of persuasion.' " *Moore v. Consolidated Edison Co. of New York, Inc.,* 409 F.3d 506, 510 (2d Cir.2005) (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972 [1997] ). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore,* 409 F.3d at 510 (citing *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 381, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). The same standards govern consideration of an application for a temporary restraining order. *Perri v. Bloomberg,* 06–CV–0403, 2008 WL 2944642, at *2 (E.D.N.Y. Jul.31, 2008) [citation omitted]. The district court has broad discretion in determining whether to grant a preliminary injunction. *Moore,* 409 F.3d at 511.

"The Second Circuit has defined 'irreparable harm' as 'certain and imminent harm for which a monetary award does not adequately compensate,' noting that 'only harm shown to be non-compensable in terms of money damages provides the basis for awarding injunctive relief.' " *Perri,* 2008 WL 2944642, at *2 (citing *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.,* 339 F.3d 101, 113–14 [2d Cir.2003] ); *see also Kamerling v. Massanari,* 295 F.3d 206, 214 (2d Cir.2002) ("To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.") (internal quotation omitted). Speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons,* 461 U.S. 95, 111–12, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *see also Hooks v. Howard,* 07–CV–0724, 2008 WL 2705371, at *2 (N.D.N.Y. Jul.3, 2008) (citation omitted) ("Irreparable harm must be shown to be imminent, not remote or speculative, and the injury must be such that it cannot be fully remedied by monetary damages.").

**\*8** Plaintiff has submitted a document entitled "Order to Show Cause for Preliminary Injunction and Tempor[ary] Restraining Order." (Dkt. No. 3.) Construed liberally, Plaintiff's submission seeks a temporary restraining order and injunctive relief enjoining Defendants from "submitting and filing false and untrue statements and reports" regarding the August 11, 2011 incident, and to "stop all retaliatory actions against the plaintiff ...." (*Id.* at 1.) Plaintiff also seeks an "Order of Seperation [sic]" directing that Defendants Davis, Sill, Nicolette, Bill,

Carver and DeBroize be "restrained from being within 100 feet from the plaintiff in any form or matter." (*Id.* at 2.)

The Court has reviewed Plaintiff's motion papers thoroughly and considered the claims asserted therein in the light most favorable to Plaintiff, as a *pro se* litigant. Based upon that review, the Court finds that the harm Plaintiff alleges is purely speculative and, therefore, not "irreparable." Plaintiff's motion is supported only by a recitation of the alleged assault in August, 2011. (*Id.* at 1–4.) Plaintiff has not supported the claims of ongoing misconduct set forth in his motion papers with any factual allegations, such as the dates on which the misconduct occurred, the nature of the injuries he claims to have suffered, the identities of the persons responsible for the conduct he seeks to enjoin, or the relationship between those actions and the claims asserted in his Complaint. Simply stated, Plaintiff's alleged fear of future wrongdoing by the Defendants is not sufficient to warrant the extraordinary remedy of preliminary injunctive relief.

The Court further notes that the requested injunctive relief cannot be granted unless there is also proof that Plaintiff has a likelihood of succeeding on the merits of his claim, or evidence that establishes sufficiently serious questions going to the merits of his claim and a balance of hardships tipping decidedly toward him. *See Covino v. Patrissi,* 967 F.2d 73, 77 (2d Cir.1992). Plaintiff has failed to submit *proof or evidence* that meets this standard. Plaintiff's allegations, standing alone, are not sufficient to entitle him to preliminary injunctive relief. *See Ivy Mar Co. v. C.R. Seasons Ltd.,* 907 F.Supp. 547, 561 (E.D.N.Y.1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Resources, Inc.,* 792 F.Supp. 924, 928 (S.D.N.Y.1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals."). Without evidence to support his claims that he is in danger from the actions of anyone at CNYPC, the Court will not credit Plaintiff's conclusory allegations that he will be retaliated against or harmed in the future.

Plaintiff has failed to establish either of the two requisite elements discussed above. As a result, Plaintiff's request for a temporary restraining order and/or injunctive relief is denied.

**V. MOTION FOR APPOINTMENT OF COUNSEL**

**\*9** Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin,* 114 F.3d 390, 392–93 (2d Cir.1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [T]he district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994) (quoting *Hodge v. Police Officers,* 802 F.2d 58, 61 [2d Cir.1986] ). This is not to say that all, or indeed any, of these factors are controlling in a particular case. [14] Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe,* 899 F.Supp. 972, 974 (N.D.N.Y.1995) (McAvoy, C.J.) (citing *Hodge,* 802 F.2d at 61).

[14]  For example, a plaintiff's motion for counsel must always be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector, and such a motion may be denied solely on the failure of the plaintiff to provide such documentation. *See Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994); *Cooper v. Sargenti Co., Inc.,* 877 F.2d 170, 172, 174 (2d Cir.1989) [citation omitted].

Upon due consideration, the Court finds that the relevant factors weigh decidedly against granting Plaintiff's motion at this time. For example, the Court finds as follows: (1) the case does not present novel or complex issues; (2) it appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action; (3) while it is possible that there will be conflicting evidence implicating

the need for cross-examination at the time of the trial, as is the case in many actions brought under 42 U.S.C. § 1983 by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel," *Velasquez,* 899 F.Supp. at 974; (4) if this case survives any dispositive motions filed by Defendants, *it is highly probable that this Court will appoint trial counsel at the final pretrial conference;* (5) this Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation; and (6) Plaintiff's motion for counsel is not accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

For these reasons, Plaintiff's motion for the appointment of counsel is denied without prejudice. After the Defendants have responded to the allegations in the Complaint which survive *sua sponte* review, and the parties have undertaken discovery, Plaintiff may file a second motion for the appointment of counsel, at which time the Court may be better able to determine whether such appointment is warranted in this case. Plaintiff is advised that any second motion for appointment of counsel must be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

**\*10**  **ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED;** [15] and it is further

[15]  Plaintiff should note that he will still be required to pay fees that he may incur in this action, including but not limited to copying and/or witness fees.

**ORDERED** that Plaintiff's motion for injunctive relief (Dkt. No. 3) is **DENIED;** and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 4) is **DENIED without prejudice;** and it is further

**ORDERED** that Plaintiff's claims of deliberate indifference against Defendants Bill, Carver and DeBroize are *sua sponte* **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2) (B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

2012 WL 651919

**ORDERED** that Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from their alleged personal involvement in the August 8, 2011 incident are *sua sponte* **DISMISSED without prejudice and with leave to amend** in this action in accordance with Fed.R.Civ.P. 15 (as described above in Part III.B.3. of this Decision and Order), pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Defendant Sweet is *sua sponte DISMISSED* **without prejudice and with leave to be reinstated** as a Defendant in this action in accordance with Fed.R.Civ.P. 15, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is otherwise accepted for filing (i.e., as to the claims against Defendants Davis, Sill, and Nicolette arising from the August 8, 2011 incident); and it is further

**ORDERED** that Plaintiff provide a summons, USM–285 form and a copy of the complaint for Defendant Davis, Sill and Nicollette for service, and upon receipt from Plaintiff of the documents required for service of process, the Clerk shall (1) issue summonses and forward them, along with copies of the Complaint to the United States Marshal for service upon the remaining Defendants, and (2) forward a copy of the summons and Complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that, after service of process on Defendants, a response to the Complaint shall be filed by the Defendants or their counsel as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261–7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a certificate of service showing that a copy was served upon all opposing parties or their attorneys will be stricken from the docket .** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in Plaintiff's address; his failure to so may result in the dismissal of this action.** All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 651919

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 145297
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
N.D. New York.

Maureen E. SCOTT, Plaintiff,

v.

Heather DJECK; Doug Campbell; Desiree Golden; Town of Forestport Judge Mark Ritter; Town of Forestport Court Clerk; Brian Miga, Town of Forestport Supervisor; Kathy Schmelzle, Forestport Town Clerk '07; Mr. Smith, Forestport Town Codes Officer; Ms. Paschke, Forestport Town Receiver of Taxes; Scott McNamara, Dist. Atty., Oneida County; Grant Garramone, Assist. Dist. Atty., Oneida County; Oneida County Psychiatric Ctr.; Dr. Krishnappa, Oneida County Psychiatric Ctr.; Dr. Mallick, Oneida County Psychiatric Ctr.; Dr. Thesee, Oneida County Psychiatric Ctr.; Dr. Mendolez, Oneida County Psychiatric Ctr.; Cathy Totaro, Nurse Pract., Oneida County Psychiatric Ctr.; York St. Clinic; Ms. Lemon, Social Worker, York St. Clinic; Mr. Mills, R.N., York Street Clinic; Dr. Smith, York St. Clinic; Samuel Giacona, Atty.; William Stevens, Atty.; Bernabei & Wachtel, PLLC; Kati Daffan, Bernabei & Wachtel; Patricia Branch, Office Manager, Bernabei & Wachtel; Smith, Sovik, Kendrick & Sugnet, P.C.; Christopher S. Ciaccio, Atty.; Olinsky & Shurtliff, LLC; Silberstein, Awad & Miklos, P.C.; Carroll & Carroll Lawyers, P.C.; Kenny & Kenny, PLLC; U.S. Comm'n of Civ. Rights; Green & Foushee; Richard N. Bach; the Nbhd. Ctr., c/o Linda Parker; Kehoe and Nesbuth, Pub. Def. Office, Utica, N.Y.; Judge James Tormey, Supreme Ct., Oneida County; Judge Hester, Supreme Ct., Oneida County; Trace, Assis. N.Y.S. Atty. Gen.; M.H.L.S. Michael McCormick, Atty., Oneida County Psychiatric Ctr.; Oneida County Health Dept.; Daniel W. Gilmore, Dir. of Envtl. Health, Oneida County; Town of Booneville Judge Escziac; N.Y.S. Police; Oneida County Sheriff's Dept.; Sheriff, Oneida County; N.Y.S. Atty. Gen.; N.Y.S. Court Sys.; U.S.Ct. Sys.; N.Y.S. Health Dept.; and N.Y.S. Governor's Office, Defendants.

No. 5:09–CV–1122 (GTS/GHL).
|
Jan. 11, 2010.

**Attorneys and Law Firms**

Maureen E. Scott, Auburn, NY, pro se.

***DECISION and ORDER***

HON. GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court in this *pro se* civil rights action is a Report–Recommendation, filed by United States Magistrate Judge George H. Lowe on November 5, 2009, recommending, *inter alia,* that a number of Defendants be dismissed from this action, and that the Court dismiss Plaintiff's entire Complaint if she fails to file an Amended Complaint within thirty (30) days of the filing date of this Decision and Order. (Dkt.Nos.2, 5.) Plaintiff has not filed an Objection to the Report–Recommendation. For the reasons set forth below, Magistrate Judge Lowe's Report–Recommendation is accepted and adopted in its entirety; forty-four (44) Defendants are dismissed from this action; and the remainder of Plaintiff's Complaint is conditionally dismissed, unless within thirty (30) days of the filing date of this Decision and Order, Plaintiff files an Amended Complaint that states a claim upon which relief can be granted (with respect to her remaining causes of action).

**I. STANDARD OF REVIEW**

When specific objections are made to a magistrate judge's report-recommendation, the Court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1)(C). [1] When only general objections are made to a magistrate judge's report-recommendation (or the objecting party merely repeats the allegations of his pleading), the Court reviews for clear error or manifest injustice. *See Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at *2–3 (N.D.N.Y. Sept.22, 1997)* (Pooler, J.) [collecting cases], *aff'd without opinion,* 175 F.3d 1007 (2d Cir.1999). [2] Similarly, when

a party makes no objection to a portion of a report-recommendation, the Court reviews that portion for clear error or manifest injustice. *See Batista v. Walker,* 94–CV2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) [citations omitted]; Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition [citations omitted]. After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

1    On *de novo* review, a district court will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137–38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40, n. 3 (2d Cir.1990) (district court did not abuse discretion in denying plaintiff's request to present additional testimony where he "offered no justification for not offering the testimony at the hearing before the magistrate").

2    *See also Vargas v. Keane,* 93–CV–7852, 1994 WL 693885, at *1 (S.D.N.Y. Dec.12, 1994) (Mukasey, J.) ("[Petitioner's] general objection [that a] Report ... [did not] redress the constitutional violations [experienced by petitioner] ... is a general plea that the Report not be adopted ... [and] cannot be treated as an objection within the meaning of 28 U.S.C. § 636."), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (1996).

## II. DISCUSSION

After carefully reviewing all of the papers in this action, including Magistrate Judge Lowe's thorough Report–Recommendation, the Court can find no error in the Report–Recommendation, clear or otherwise. As a result, the Report–Recommendation is accepted and adopted in its entirety.

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Lowe's Report–Recommendation (Dkt. No. 5) is ***ACCEPTED*** and ***ADOPTED*** in its entirety; and it is further

**ORDERED** that the Clerk of the Court remove the words "and children" after Plaintiff's name on the docket sheet; and it is further

**ORDERED** that the Clerk of the Court add the following entities as named Defendants to the docket: "Sheriff, Oneida County"; "New York State Attorney General"; "New York State Court System"; "United States Court System"; "New York State Health Department"; and "New York State Governor's Office"; and it is further

**\*2 ORDERED** that the Clerk of the Court further amend the docket so as to (1) delete the words "Oneida Co. Psychiatric Dietary" and replace them with the words "Oneida County Psychiatric Center", (2) delete the words "Bernabei and (Katz) Wachtel, PLLC," and replace them with the words "Bernabei & Wachtel, PLLC", and (3) delete the words "N.Y.S. Atty Gen. RE. Asst. Atty Gen. Trace" and replace them with the words "Trace, Assistant New York State Attorney General"; and it is further

**ORDERED** that Plaintiff's claims against the following forty-four (44) named Defendants are ***DISMISSED*** from this action: (1) Heather Djeck; (2) Doug Campbell; (3) Desiree Golden; (4) Michael McCormick; (5) Judge Hester; (6) Judge Mark Ritter; (7) Judge James Tormey; (8) Judge Escziac; (9) Grant Garramone; (10) New York State Attorney General; (11) Assistant New York State Attorney General Trace; (12) U.S. Commission of Civil Rights; (13) "U.S. Court System"; (14) New York State Police; (15) "New York State Court System"; (16) New York State Health Department; (17) Scott McNamara; (18) Brian Miga; (19) Mr. Smith, Town Codes Officer; (20) Kathy Schmelzle; (21) Town of Forestport Court Clerk; (22) Ms. Paschke, Town Receiver of Taxes; (23) Oneida County Psychiatric Center; (24) Dr. Mendolez, Oneida County Psychiatric Center; (25) Cathy Totaro; (26) Mr. Mills, R.N., Oneida County Psychiatric Center; (27) Dr. Smith, Oneida County Psychiatric Center; (28) Samuel Giacona, Esq.; (29) William Stevens, Esq.; (30) Bernabei & Wachtel, PLLC; (31) Kati Daffan; (32) Patricia Branch; (33) Smith, Sovik, Kendrick & Sugnet, P.C.; (34) Christopher S. Ciaccio, Esq.; (35) Olinsky and Shurtliff, LLC; (36) Silberstein, Awad & Miklos, P.C.; (37) Carroll & Carroll Lawyers, P.C.; (38) Kenny &

Kenny, PLLC; (39) Green & Foushee; (40) Richard N. Bach; (41) Public Defender Kehoe; (42) Public Defender Nesbuth; (43) Oneida County Health Department; and (44) Daniel W. Gilmore; and it is further

**ORDERED** that, to the extent that Plaintiff claims that the Sheriff of Oneida County "molested" her, that claim is *DISMISSED;* and it is further

**ORDERED** that the remainder of the claims in Plaintiff's Complaint (Dkt. No. 1) will be *sua sponte* **DISMISSED** in their entirety, without prejudice, and without further Order of this Court, unless, within **THIRTY (30) DAYS** of the filing date of this Decision and Order, Plaintiff files an Amended Complaint that states a claim upon which relief may be granted (with regard to the causes of action not dismissed above in this Decision and Order).

*REPORT–RECOMMENDATION AND ORDER*

GEORGE H. LOWE, United States Magistrate Judge.

The Clerk has sent to the Court a *pro se* civil rights complaint submitted by Maureen E. Scott [1] ("Plaintiff"). Dkt. No. 1. Plaintiff also submitted an application to proceed *in forma pauperis.* Dkt. No. 2. Based on the following, I recommend that Plaintiff file an amended complaint should Plaintiff wish to avoid dismissal of this action.

[1]    Plaintiff previously filed two actions in this District: *Scott v. U.S. Supreme Court, et al.,* 5:98–CV–1142 (TJM/GJD) (transferred to W.D.N.Y.) and *Scott v. Eden Park Nursing,* 5:98–CV–1143 (TJM/GJD) (dismissed).

**I. The Complaint**

**A. Plaintiff and Children**

**\*3** Plaintiff seeks to bring the complaint on behalf of herself and her children. Dkt. No. 1, at p. 1. [2] The complaint indicates that the children are now adults. *Id.* However, Plaintiff, who is a non-attorney, may not represent the claims of any other person, including her adult offspring. *Chase v. Czajka,* No. 1:05–CV–0779, 2007 WL 680741, at \*1, n. 2 (N.D.N.Y. Feb. 28, 2007) (citing *Tindall v. Poultney High Sch. Dist.,* 414 F.3d 281 (2d Cir.2005)). Moreover, the complaint does not identify the

children by name and is signed only by Plaintiff. [3] Dkt. No. 1. Therefore, Plaintiff may not represent her children. Accordingly, the Clerk should be directed to remove the party text "and children" from Plaintiff's name on the docket.

[2]    Page numbers refer to those assigned by the Court's electronic filing system.

[3]    In addition, it appears that Plaintiff is unaware of the location and well-being of her children. Dkt. No. 2, at p.

**B. Additional Defendants**

A review of the complaint and the docket reveals that six entities that were named as defendants in the complaint are not included as defendants on the docket. *See* Dkt. No. 1, at p. 1 (caption). Accordingly, the Clerk should be directed to add the following as defendants: Sheriff of Oneida County; "N.Y.S. Atty Gen.;" "N.Y.S. Court System;" U.S. Court System; "N.Y.S. Health Dept.;" and "N.Y.S. Gov. Office." *See id.*

**C. 28 U.S.C. § 1915(e)(2)(B)**

Section 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis,* "(2) ... the court shall dismiss the case at any time if the court determines that—... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, the court has a responsibility to determine whether a complaint may be properly maintained in this district before it may permit a plaintiff to proceed with an action *in forma pauperis. See id.* The court also has the duty to show liberality towards *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond. *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983).

Generally, Plaintiff alleges that she was wrongfully arrested and detained, and that her property and life were endangered. [4] Dkt. No. 1 at pp. 2, 9. Plaintiff was detained at Oneida County Correctional Facility and later at Oneida County Psychiatric Center. *Id.* at pp. 11–12. Plaintiff named over fifty defendants, which will discussed

in more detail as follows. Plaintiff seeks monetary and injunctive relief.

4    The Court notes that the allegations in the complaint are rambling and disjointed in contravention of Fed.R.Civ.P. 8(a) (2), which requires that the complaint contain a short and plain statement of the claim.

### 1. Defendants Campbell, Golden, and Djeck

Plaintiff alleges that her neighbors, Defendants Doug Campbell, Desiree Golden, and Heather Djeck, violated her civil rights by, *inter alia,* providing false information to the New York State Police, physically assaulting her, trespassing on her property, committing vandalism and arson, and impeding her ability to file complaints. Dkt. No. 1 at pp. 9–10, 25–26. Plaintiff also summarily claims that these defendants "molested" her. *Id.* at p. 28.

**\*4** First, a plaintiff cannot hold a defendant liable under § 1983 unless he or she can establish that the defendant acted under color of state law. *See* 42 U.S.C. § 1983; *see also Rounseville v. Zahl,* 13 F.3d 625, 628 (2d Cir.1994) (noting state action requirement under § 1983). It is the plaintiff's duty to allege that the defendant acted under color of state law, and if a plaintiff fails to plead that element of his claim, a court may dismiss an action under 28 U.S.C. § 1915(e). *See, e.g., Carollo–Gardner v. Diners Club,* 628 F.Supp. 1253, 1256 (E.D.N.Y.1986) (dismissing as frivolous *pro se* complaint in which the plaintiff failed to allege state action by defendants) (citations omitted).

Here, Plaintiff has not alleged any state action by Doug Campbell, Desiree Golden, and Heather Djeck. The complaint indicates that these defendants are private individuals, who are Plaintiff's neighbors. Therefore, the complaint fails to state a claim upon which relief may be granted against these defendants.

Second, regarding the conclusory allegation that she was "molested" by these defendants, "[t]he Second Circuit has held that 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Jemzura v. Public Serv. Com'n,* 961 F.Supp. 406, 413 (N.D.N.Y.1997) (quoting *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987)).

Here, Plaintiff has provided a one-sentence conclusory allegation that she was "molested." Plaintiff provides absolutely no specific allegations of fact to support this allegation. Therefore, Plaintiff has failed to state a claim upon which relief may be granted. Accordingly, I recommend that Defendants Campbell, Golden, and Djeck be dismissed as defendants.

### 2. Defendant McCormick

Plaintiff claims that she provided a "Notice of Claim" to Defendant Michael McCormick, an attorney for Mental Hygiene Legal Services ("M.H.L.S."). Dkt. No. 1 at p. 15.

An attorney employed by M.H.L.S. is not a state actor for purposes of § 1983. *Pecou v. Hirschfeld,* Case No. 07–cv–5449, 2008 WL 957919, at \*2 (E.D.N.Y. Apr.3, 2008) (dismissing all claims against M.H.L.S. attorneys) (citing *Fisk v. Letterman,* 401 F.Supp.2d 362, 378 (S.D.N.Y.2005) (holding that a court-appointed attorney is not a state actor, even if employed by the M.H.L.S., a state-funded legal services agency under the direction of the New York State Office of Court Administration)).

Here, the complaint indicates that Defendant McCormick is an attorney for M.H.L.S. Therefore, he is not a state actor for purposes of § 1983. Accordingly, I recommend that Defendant McCormick be dismissed because the complaint fails to state a claim upon which relief may be granted against this defendant.

### 3. Defendant Kehoe

Plaintiff claims that she was represented by Defendant Kehoe, a public defender, during a court proceeding on October 7, 2008. Dkt. No. 1 at pp. 14–15. Plaintiff summarily claims that this attorney lied during the proceeding. *Id.* at p. 23.

**\*5** As noted, section 1983 creates a cause of action only against persons acting under color of state law. *See, e.g., Rodriguez v. Phillips,* 66 F.3d 470, 473 (2d Cir.1995). A "public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *accord Rodriguez v. Weprin,* 116 F.3d 62, 65–66 (2d Cir.1997).

Here, Plaintiff's conclusory allegation is insufficient to establish that this defendant was acting under color of state law. Accordingly, I recommend that Defendant Kehoe be dismissed because the complaint fails to state a claim upon which relief may be granted against this defendant.

### 4. Defendant Hester

Plaintiff claims that Judge Hester of the Oneida County Supreme Court ordered that Plaintiff be returned to the psychiatric facility. Dkt. No. 1 at p. 16.

Judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireles v. Waco,* 502 U.S. 9, 9–10, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). Judicial immunity has been created for the public interest in having judges who are " 'at liberty to exercise their functions with independence and without fear of consequences.' " *Huminski v. Corsones,* 396 F.3d 53, 74 (2d Cir.2004) (quoting *Pierson v. Ray,* 386 U.S. 547, 554, R 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)). Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Imbler v. Pachtman,* 424 U.S. 409, 419 n. 12, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (citing *Pierson,* 386 U.S. at 554). Judicial immunity is immunity from suit, not just immunity from the assessment of damages. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). However, there are two circumstances in which judicial immunity does not apply: when he or she takes action "outside" his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles,* 502 U.S. at 11–12.

Here, Plaintiff claims that Judge Hester ordered that Plaintiff be returned to the psychiatric facility. Plaintiff is clearly referring to a judicial act. However, Plaintiff does not claim that Judge Hester somehow acted "outside" of his judicial capacity, or that Judge Hester acted in the absence of jurisdiction. Therefore, judicial immunity should apply. Accordingly, Judge Hester should be dismissed as a defendant.

### 5. Defendant Ritter

Plaintiff alleges that Judge Mark Ritter, Town Judge of Forestport, New York, failed to render a decision regarding her claim that her neighbors vandalized her property even though Judge Ritter stated that he mailed

a decision to her. Dkt. No. 1 at p. 12. Plaintiff also summarily claims that Judge Ritter violated her civil rights and that Judge Ritter "molested" her. *Id.* at pp. 24, 28. Plaintiff seeks the "dismis[sal]" of Judge Ritter and an award from his malpractice insurance carrier. *Id.* at p. 29.

**\*6** First, Plaintiff's allegation regarding the rendering of a decision clearly refers to a judicial act. However, Plaintiff does not claim that Judge Ritter somehow acted "outside" of his judicial capacity, or that Judge Ritter acted in the absence of jurisdiction. Therefore, judicial immunity should apply.

Second, Plaintiff's allegations that Judge Ritter violated her civil rights and that he "molested" her are conclusory and insufficient to state a claim. Accordingly, Judge Ritter should be dismissed as a defendant.

### 6. Defendant Tormey

Plaintiff alleges that Judge James Tormey, a Supreme Court Justice, "refused" numerous "Notices of Complaints" that Plaintiff sent to him. Dkt. No. 1, at p. 3. She also summarily alleges that Judge Tormey violated her civil rights and that Judge Tormey "molested" her. *Id.* at pp. 24, 28.

First, Plaintiff's allegation regarding Judge Tormey's handling of her complaints refers to a judicial act. However, Plaintiff does not claim that Judge Tormey somehow acted "outside" of his judicial capacity, or that Judge Tormey acted in the absence of jurisdiction. Therefore, judicial immunity should apply.

Second, Plaintiff's allegations that Judge Tormey violated her civil rights and "molested" her are conclusory and insufficient to state a claim. Accordingly, Judge Tormey should be dismissed as a defendant.

### 7. Defendant Escziac

Plaintiff alleges that she "never saw charges" from Judge Escziac, Town Judge of Booneville, New York. Dkt. No. 1, at p. 20. She also appears to claim that she never received "a hearing" and was never sentenced by Judge Escziac. *Id.* She further summarily alleges that Judge Escziac violated her civil rights, and that Judge Escziac "molested" her. *Id.* at pp. 24, 28. Plaintiff seeks the "dismis[sal]" of Judge Escziac and an award from his malpractice insurance carrier. *Id.* at p. 29.

First, Plaintiff's allegations regarding Judge Escziac's handling of a criminal matter refer to judicial acts. However, Plaintiff does not claim that Judge Escziac somehow acted "outside" of his judicial capacity, or that Judge Escziac acted in the absence of jurisdiction. Therefore, judicial immunity should apply.

Second, Plaintiff's allegations that Judge Escziac violated her civil rights and molested her are conclusory and insufficient to state a claim. Accordingly, Judge Escziac should be dismissed as a defendant.

### 8. Defendant Garramone

Plaintiff alleges that she "refiled" numerous "Notice of Complaints" with Defendant Grant Garramone, an Assistant District Attorney in Oneida County. Dkt. No. 1 at p. 3. Plaintiff appears to allege that this defendant failed to take action. *Id.* at p. 11. Plaintiff also summarily asserts that this defendant "molested" her. *Id.* at p. 28.

First, " '[p]rosecutors are absolutely immune from liability under § 1983 for their conduct in initiating a prosecution and in presenting the State's case.' " *Lindsey v. DeAngelis,* No. 1:07–CV–0753, 2007 WL 2261587, at *2 (N.D.N.Y. Aug. 2, 2007) (quoting *Pinaud v. County of Suffolk,* 52 F.3d 1139, 1147 (2d Cir.1995) (internal quotations and citations omitted); *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir.1994) (prosecutorial immunity covers virtually all acts, regardless of motivation, associated with the prosecutor's function, including conspiracies to present false evidence)). "This immunity applies to individual district attorneys for claims arising out of acts 'within the scope of their duties in initiating and pursuing criminal prosecution.' " *Lindsey,* 2007 WL 2261587, at *2 (citing *Pinaud,* 52 F.3d at 1147 (internal quotations and citations omitted)).

*7 The allegations in the complaint relate to Defendant Garramone's handling of Plaintiff's complaints. Accordingly, he should be held absolutely immune. Therefore, the complaint fails to state a claim upon which relief may be granted against this defendant.

Second, Plaintiff's allegation that Defendant Garramone "molested" her is conclusory and insufficient to state a claim. Accordingly, Grant Garramone should be dismissed as a defendant.

### 9. Defendants New York State Attorney General and Assistant Attorney General Trace [5]

[5]   Plaintiff named the latter defendant as "N.Y.S. Atty Gen. RE [:] Asst. Atty Gen. Trace." Dkt. No. 1, at p. 8.

Plaintiff claims that she sent notices of claims to the New York State Attorney General's Office in "as early as May [of] 2008." Dkt. No. 1 at p. 16. She also asserts that in late February of 2009, a hearing was held at which Defendant Trace, an Assistant Attorney General, "entered" a brief that he knew was based on hearsay. *Id.* at p. 15.

A prosecutor may not be held liable under § 1983 in his or her individual capacity for acts in performance of official duties. *Imbler v. Paachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The doctrine of *Imbler* has been extended to government attorneys handling administrative proceedings, *Butz v. Econoou,* 438 U.S. 478, 512–17, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), and to their initiation of civil litigation in federal and state courts, *Barrett v. United States,* 798 F.2d 565, 572 (2d Cir.1986); *see also Barr v. Abrams,* 810 F.2d 358, 361 (2d Cir.1987) (holding assistant attorney generals immune from suit based on their actions in filing a criminal information and procuring arrest warrant); *see also Cohen v. Bane,* 853 F.Supp. 620, 627 (E.D.N.Y.1994) (noting that "absolute immunity has been extended to government attorneys handling administrative proceedings and to the initiation of civil litigation").

Accordingly, the New York State Attorney General should be held absolutely immune with regard to the handling of Plaintiff's notices; and Assistant Attorney General Trace should be held immune with regard to the alleged brief. Accordingly, I recommend that Defendants New York State Attorney General and Assistant Attorney General Trace be dismissed.

### 10. Defendant U.S. Commission of Civil Rights

Plaintiff named the U.S. Commission of Civil Rights as a defendant. She claims that she sent a "Notice of Claim" to the U.S. Commission of Civil Rights. Dkt. No. 1, at p. 15.

Plaintiff is advised that because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are barred under the doctrine of sovereign immunity, unless

such immunity is waived. *Federal Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 484–86, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir.1994) ("Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived.") (citations omitted).

**\*8** Plaintiff has not established that sovereign immunity has been waived for this defendant. Accordingly, I recommend that the U.S. Commission of Civil Rights be dismissed as a defendant.

### 11. Defendant U.S. Court System

Plaintiff named the "U.S. Court System" as a defendant. Dkt. No. 1, at p. 1. However, Plaintiff has not established that sovereign immunity has been waived for this defendant. Accordingly, I recommend that the U.S. Court System be dismissed as a defendant.

### 12. Defendant New York State Police

Plaintiff named the New York State Police as a defendant. Dkt. No. 1, at p. 1. However, the New York State Police is a division of the State of New York, which is entitled to Eleventh Amendment immunity from suits brought pursuant to 42 U.S.C. § 1983. *Pollock v. Daniels,* No. 3:07–CV–0637, 2007 WL 4232700, at \*1 (N.D.N.Y. Nov.28, 2007) (citing, *inter alia, Dunn v. Carrier,* 137 Fed. Appx. 387 (2d Cir.2005)). Accordingly, I recommend that the New York State Police be dismissed as a defendant.

### 13. Defendant New York State Court System

Plaintiff named the "N.Y. S. Court System" as a defendant. Dkt. No. 2. It appears that Plaintiff is referring to the New York State Unified Court System. However, the New York State Unified Court System "is unquestionably an 'arm of the State' and is entitled to Eleventh Amendment sovereign immunity." *Gollomb v. Spitzer,* 568 F.3d 355, 368 (2d Cir.2009) (citation omitted). Accordingly, I recommend that the "N.Y.S. Court System" be dismissed as a defendant.

### 14. Defendant New York State Health Department

Plaintiff named the "N.Y.S. Health Dept." as a defendant. Dkt. No. 1, at p. 1. However, any claim against the New York Department of Health is barred by the State's sovereign immunity. *Six Nations of Iroquois (Confederacy) of North America v. Niagara Mohawk Power Corp.,* No. 98–CV0112, 1999 WL 528822, at \*3 (W.D.N.Y. July 22, 1999) (citing *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)). Accordingly, I recommend that the "N.Y.S. Health Dept." be dismissed as a defendant.

### 15. Defendants McNamara, Miga, Smith, Schmelzle, and the Town of Forestport Court Clerk

Plaintiff alleges in one sentence that she was "molested" by the following defendants: Scott McNamara (District Attorney of Oneida County); Brian Miga (Supervisor of Forestport Town Hall); Mr. Smith (Codes Officer of Forestport Town Hall); Kathy Schmelzle (Clerk of Forestport Town Hall in 2007); and the Town of Forestport Court Clerk. Dkt. No. 1 at p. 28.

Plaintiff's conclusory allegation is completely unsupported by specific allegations of fact and is insufficient to state a claim. Accordingly, Defendants McNamara, Miga, Smith, Schmelzle, and the Town of Forestport Court Clerk should be dismissed as defendants.

### 16. Defendants Paschke; Oneida County Psychiatric Dietary; Mendolez; Totaro; Mills; Dr. Smith; Giacona; Stevens; "Bernabi and (Katz) Wachtel, PLLC;" Daffan; Branch; Smith, Sovik, Kendrick and Sugnet; Ciaccio; Olinsky and Shurtliff; Silberstein, Awad and Miklos; Carroll and Carroll; Kenny and Kenny; Green and Foushee; Bach; Nesbuth; Oneida County Health Department; and Gilmore

**\*9** The complaint fails to allege any act or omission by Defendants Paschke (Receiver of Taxes); Oneida County Psychiatric Dietary; Dr. Mendolez; Nurse Practitioner Cathy Totaro; Mills, R.N.; Dr. Smith; Samuel Giacona (Previously Retained Attorney); William Stevens (Previously Retained Attorney); "Bernabi and (Katz) Wachtel, PLLC;" Katti Daffan; Patricia Branch (Officer Manager); Smith, Sovik, Kendrick and Sugnet, Attorneys; Christopher S. Ciaccio, Attorney; Olinsky and Shurtliff, Attorneys; Silberstein, Awad and Miklos, Attorneys; Carroll and Carroll, Attorneys; Kenny and Kenny, Attorneys; Green and Foushee, Attorneys; Richard N. Bach; Nesbuth (Public Defender); Oneida

County Health Department; and Daniel W. Gilmore (Director of Environmental Health), or any involvement by these Defendants in the violation of Plaintiff's rights. Where a defendant is listed in the caption but the body of the complaint fails to indicate what the defendant did to the plaintiff, dismissal is appropriate. *Gonzalez v. City of N. Y.,* No. 97 CIV. 2246, 1998 WL 382055, at *2 (S.D.N.Y. July 9, 1998) (citing *Crown v. Wagenstein,* No. 96 CIV. 3895, 1998 WL 118169, at *1 (S.D.N.Y. Mar.16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); *Taylor v. City of New York,* 953 F.Supp. 95, 99 (S.D.N.Y.1997) (same)).

Plaintiff has failed to allege any personal involvement on the part of these defendants. Therefore, they should be dismissed from this action.

### 17. Defendant Sheriff of Oneida County

First, Plaintiff vaguely claims that the Oneida County Sheriff never showed her charges that were brought against her, and never showed her arrest or search warrants. Dkt. No. 1 at p. 20. It is unclear what Plaintiff is alleging. Accordingly, Plaintiff's complaint, as drafted, fails to state a claim upon which relief may be granted against this defendant. If Plaintiff wishes to avoid dismissal of this defendant, she must set forth a sufficient claim in her amended complaint.

Second, Plaintiff summarily asserts that the Sheriff "molested" her. Dkt. No. 1 at p. 28. Plaintiff's conclusory allegation is completely unsupported by specific allegations of fact and is insufficient to state a claim. Accordingly, to the extent that Plaintiff alleges that the Sheriff molested her, this claim should be dismissed.

### 18. Defendant Oneida County Sheriff's Department

Plaintiff named the Oneida County Sheriff's Department as a defendant. Dkt. No. 1. To the extent that Plaintiff named this entity as a defendant because she asserts allegations involving the Oneida County Sheriff, "[a] municipality or municipal entity cannot be held liable under Section 1983 on a respondeat superior theory." *Bliven v. Hunt,* 478 F.Supp.2d 332, 336 (E.D.N.Y.2007) (citing *Monell v. Department of Soc. Servs. of City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). "Rather, to establish municipal liability under § 1983 for unconstitutional acts by a municipality's employees, a plaintiff must show that the

violation of [his or] her constitutional rights resulted from a municipal custom or policy." [6] "Thus, to hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to ... prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." [7]

[6]     *Powell,* 2005 WL 3244193, at *5; *Monell,* 436 U.S. at 690–691 ("[L]ocal governments ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."); *Batista,* 702 F.2d at 397 ("[M]unicipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to a governmental custom, policy, ordinance, regulation, or decision."); *Smith v. City of New York,* 290 F.Supp.2d 317, 321 (S.D.N.Y.2003) ("In order to establish the liability of [municipal] defendants in an action under § 1983 for unconstitutional acts by [its] employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy.").

[7]     *Batista,* 702 F.2d at 397, *accord, Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995), *McKeon v. Daley,* 101 F.Supp.2d 79, 92 (N.D.N.Y.2000) (Hurd, J.), *Merriman v. Town of Colonie, NY,* 934 F.Supp. 501, 508 (N.D.N.Y.1996) (Homer, M.J.); *Douglas v. County of Tompkins,* 90–CV–0841, 1995 WL 105993, at *12 (N.D.N.Y. March 2, 1995) (McCurn, J.), *Keyes v. County of Albany,* 594 F.Supp. 1147, 1156 (N.D.N.Y.1984) (Miner, J.).

**\*10** Plaintiff fails to set forth allegations of municipal custom or policy sufficient to state a claim. Accordingly, if Plaintiff wishes to avoid dismissal of this defendant, she must set forth a sufficient claim in her amended complaint.

### 19. Defendants Krishnappa, Mallick, and Thesee

Plaintiff appears to complain of the treatment provided by Drs. Krishnappa, Mallick, and Thesee while she was at Oneida County Psychiatric Center. Dkt. No. 1 at pp. 18–19. Plaintiff seeks awards from their malpractice insurance carriers. *Id.* at p. 29.

Claims of malpractice or disagreement with treatment are not actionable under section 1983. *Murphy v. Grabo,* No. 94–CV–1684, 1998 WL 166840, at *4 (N.D.N.Y.

Apr. 9, 1998) (internal citation omitted). Rather, to establish an Eighth Amendment claim arising out of inadequate medical care, a plaintiff must prove "deliberate indifference to [her] serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The standard of deliberate indifference includes both subjective and objective components. "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.' " *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) (quotation and other citation omitted). Second, the defendant "must act with a sufficiently culpable state of mind." *Id.* (citation omitted). An official acts with the requisite deliberate indifference when that official " 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " *Id.* (quotation omitted).

Here, Plaintiff's allegations are vague, confusing, and disjointed. She asserts, *inter alia,* that no doctor at the Psychiatric Center "took their own [blood pressure];" Dr. Krishnappa prescribed several medications, but she was never prescribed Cogentin while at the center, but "doubt[s] it would had done any good;" and "Dr. Mallick had been an acting psychiatrist yet Dr. Thesee encouraged injections but he claimed [Plaintiff] had a left sided mastectomy." Dkt. No. 1 at p. 19. She then states, "They are all ridiculous and criminal." *Id.* It is unclear what Plaintiff is alleging regarding Defendants Krishnappa, Mallick, and Thesee. Accordingly, Plaintiff's complaint, as drafted, fails to state a claim upon which relief may be granted against these defendants. If Plaintiff wishes to avoid dismissal of these defendants, she must set forth a sufficient claim in her amended complaint.

**20. Defendant New York State Governor's Office**

Plaintiff named the New York State Governor's Office as a defendant. Dkt. No. 1, at p. 1. Plaintiff alleges that she sent notices of claims to this defendant. *Id.* at p. 16. Plaintiff also summarily claims that this defendant breached her civil rights. *Id.* at p. 24. Regarding the former allegation, it is unclear what Plaintiff is alleging, since she failed to include relevant information such as descriptions of the notices and when she sent the notices. Regarding the latter allegation, this allegation is conclusory and insufficient to state a claim. Therefore, the complaint, as drafted, fails to state a claim upon which relief may be granted against this defendant. Accordingly, if Plaintiff wishes to avoid

dismissal of this defendant, she must set forth a sufficient claim in her amended complaint.

**21. Defendants Lemon, York St. Clinic, and Neighborhood Center**

 **\*11**  Plaintiff alleges she reported to Defendant Lemon, a social worker, and to Defendant York St. Clinic that she had no electricity, food, or functioning vehicle. Dkt. No. 1 at p. 17. Plaintiff also states that she was "harassed" by Defendant York St. Clinic and Defendant Neighborhood Center. *Id.* at pp. 16–17. It appears that Plaintiff is seeking the termination of Defendant Lemon, and an award from her malpractice insurance carrier. *Id.* at pp. 29–30.

The complaint fails to clearly indicate how or when these defendants violated Plaintiff's rights. Accordingly, the complaint fails to state a claim on which relief may be granted against these defendants. If Plaintiff wishes to avoid dismissal of these defendants, she must set forth a sufficient claim in her amended complaint.

 **D. Amended Complaint**

In light of the special solicitude afforded to *pro se* litigants in the Second Circuit, I recommend that Plaintiff may file an amended complaint *within thirty (30) days of the filing date of any Order adopting this Report and Recommendation* should she wish to avoid dismissal of the action. Any amended complaint, which shall supersede and replace in its entirety Plaintiff's original complaint (Docket No. 1), **must contain a** *short and plain statement* of the claim showing that she is entitled to relief with all averments of claim set forth in numbered paragraphs. *See* Fed.R.Civ.P. 8(a)(2) & Fed.R.Civ.P. 10(b). The amended complaint must also allege claims of misconduct or wrongdoing against defendants which Plaintiff has a legal right to pursue, and over which this Court may properly exercise jurisdiction. ***Plaintiff is advised that all claims must be set forth in the amended complaint. Claims may not be set forth solely in exhibits.***

 **II. Application to proceed *in forma pauperis***

Plaintiff submitted an application to proceed *in forma pauperis.* Dkt. No. 2. A review of the application indicates that Plaintiff may proceed *in forma pauperis.*

**WHEREFORE,** it is hereby

**RECOMMENDED,** that the Clerk remove the party text "and children" from Plaintiff Maureen E. Scott's name on the docket; and it is further

**RECOMMENDED,** that the Clerk add the following entities as defendants to the docket: Sheriff of Oneida County; "N.Y.S. Atty Gen.;" "N.Y.S. Court System;" U.S. Court System; "N.Y.S. Health Dept.;" and "N.Y.S. Gov. Office;" and it is further

**RECOMMENDED,** that the following defendants be dismissed: Doug Campbell; Desiree Golden; Heather Djeck; Kehoe; Michael McCormick; Judge Hester; Judge Mark Ritter; Judge James Tormey; Judge Escziac; Grant Garramone; "N.Y.S. Atty Gen.;" "N.Y.S. Atty Gen. RE[:] Asst. Atty Gen. Trace;" U.S. Commission of Civil Rights; U.S. Court System; New York State Police; "N.Y.S. Court System;" "N.Y.S. Health Dept.;" Scott McNamara; Brian Miga; Mr. Smith; Kathy Schmelzle; Town of Forestport Court Clerk; Paschke; Oneida County Psychiatric Dietary; Dr. Mendolez; Cathy Totaro; Mills, R.N.; Dr. Smith; Samuel Giacona; William Stevens; "Bernabi and (Katz) Wachtel, PLLC;" Katti Daffan; Patricia Branch; Smith, Sovik, Kendrick and Sugnet; Christopher S. Ciaccio; Olinsky and Shurtliff; Silberstein, Awad and Miklos; Carroll and Carroll; Kenny and Kenny; Green and Foushee; Richard N. Bach; Nesbuth; Oneida County Health Department; and Daniel W. Gilmore; and it is further

***12 RECOMMENDED,** that to the extent that Plaintiff summarily alleges that the Sheriff of Oneida County molested her, this claim be dismissed; and it is further

**RECOMMENDED,** that Plaintiff may file an amended complaint ***within thirty (30) days*** of the filing date of any Order adopting this Report and Recommendation; and it is further

**RECOMMENDED,** that if Plaintiff fails to timely file an amended complaint, the Clerk shall enter judgment dismissing this case **without prejudice** without further Order of the Court due to Plaintiff's failure to comply with the terms of any Order adopting this Report and Recommendation; and it is further

**RECOMMENDED,** that upon the filing of an amended complaint, the file be returned to the Court for further review; and it is further

**ORDERED,** that the *in forma pauperis* application (Dkt. No. 2) is **GRANTED;** and it is further

**ORDERED,** that the Clerk serve copies of this Report–Recommendation and Order on Plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Sec 'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 145297

2016 WL 10570930
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Michael CLARK, et al., Plaintiffs,

v.

UNITED STATES of America, et al., Defendants.

No. 1:16-CV-740
|
Signed 08/29/2016

**Attorneys and Law Firms**

Michael Clark, 671 Sacandaga Road, Fort Johnson, New York 12070, Plaintiff pro se

Kathleen Clark, 110 Brookline Road, Apt. G-9, Ballston Spa, New York 12020, Plaintiff pro se

Ian Clark, 110 Brookline Road, Apt. G-9, Ballston Spa, New York 12020, Plaintiff pro se

Noah Clark, 110 Brookline Road, Apt. G-9, Ballston Spa, New York 12020, Plaintiff pro se

**REPORT-RECOMMENDATION AND ORDER**

Christian F. Hummel, U.S. Magistrate Judge

**\*1** Plaintiffs pro se Michael Clark, Kathleen Clark, Ian Clark, and Noah Clark (collectively "plaintiffs," where appropriate) [1] commenced this action on June 23, 2016 with the filing of a complaint and a motion to proceed in forma pauperis ("IFP"). Dkt. Nos. 1, 2. Upon review of plaintiff's IFP application, the undersigned concludes that plaintiffs may properly proceed IFP. [2] See Dkt. No. 2.

1    Michael Clark indicates that Noah and Ian Clark are his children and that Kathleen Clark is his ex-wife. It us unclear if his children are minors or adults. Further, Kathleen Clark has not signed the complaint. A handwritten note next to Kathleen Clark's name at the end of the complaint, apparently written by Michael Clark, states that she could not sign "at this time due to medical disability." In a prior action, this Court dismissed claims on behalf of Kathleen, Ian, and Noah Clark, indicating that

"[p]laintiff is not an attorney, and thus may not represent the claims of any other person—including any children" and that "[p]laintiff may not bring claims in this action on behalf of any minor children." Clark v. Cuomo, et al., 6:13-CV-799, Dkt. No. 55 at 1 n.1. In the caption to this complaint, plaintiff Michael Clark indicates that all plaintiffs are "all as a family filing individually." See 1:16-CV-740 (BKS/FH), Compl. at 1.

2    Plaintiff is advised that, although her IFP application has been granted, she will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**A. Initial Review**

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action. As plaintiff is representing himself, the court is to consider his claims "liberally" and "interpret them 'to raise the strongest arguments that they suggest.' " Cold Stone Creamery, Inc. v. Gorman, 361 Fed.Appx. 282, 286 (quoting Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006)).

**B. Procedural Background**

Plaintiff Michael Clark has filed two related cases arising out of the factual allegations currently pending in this complaint, Clark v. New York State Unified Court System, 4th Judicial District et al., 6:12-CV-745 ("Clark I") and Clark, et al. v. Cuomo, et al., 6:13-CV-779 (DNH/TWD) ("Clark II"). [3] In "Clark I," plaintiff Michael Clark named as defendants the New York State Unified Court System, 4th Judicial District; the New York State Court of Appeals; the Appellate Division, Third Department; Fulton County Supreme Court; Schenectady County Family Court; New York State Office of Temporary and Disability Assistance; Schenectady County; and Fulton County. See 6:12-

CV-745 at Dkt. No. 1. In an Order and Report-Recommendation by Magistrate Judge Dancks, adopted in full by District Judge Hurd, the Court, after granting plaintiff's IFP application, determined that (1) plaintiff's claims against the New York State Unified Court System, New York State Court of Appeals, New York State Office of Temporary Disability Assistance, Fulton County Supreme Court, and Schenectady County Family Court failed to state a claim under section 1983 as "Courts and state agencies are not 'persons' for the purposes of § 1983' " and because these courts and agencies were "immune from suit pursuant to the Eleventh Amendment"; (2) plaintiff failed to state a claim against Schenectady and Fulton counties because " 'a [municipality] may not be held for the actions of its employees or agents under a theory of respondeat superior' " and plaintiff "does not allege any facts plausibly suggesting that either Schnectady [sic] or Fulton County had an official policy or custom that caused Plaintiff to be subjected to the denial of any constitutional right."; (3) "even if Plaintiff had not named any individuals in this action or stated a Monell claim, the complaint would still be subject to sua sponte dismissal under the Rooker-Feldman doctrine." See Dkt. No. 10. The Magistrate recommended dismissal without leave to amend. Id. at 6. Judge Hurd adopted the Order and Report-Recommendation and dismissed plaintiff's complaint in its entirety without leave to amend. Dkt. No. 15. Plaintiff appealed Judge Hurd's Decision and Order. Dkt. No. 20. The Second Circuit dismissed plaintiff's appeal. Dkt. No. 23.

3    Copies of the Report-Recommendation and Order or Decision and Order in Clark I and Clark II are provided to plaintiffs with their copy of this Report-Recommendation and Order. Further, any unpublished decisions cited herein are also provided to plaintiffs.

**\*2** In Clark II, commenced in July 2013, plaintiff Michael Clark named as defendants: New York State Governor Andrew Cuomo; New York State Attorney General Eric Schneiderman; the Unified Court System of the State of New York, Fourth Judicial District; the New York State Court of Appeals; the Appellate Division, Third Department; the Fulton County Supreme Court; Schenectady County Family Court; the New York State Office of Temporary Disabilities and Assistance [4]; Fulton County; Schenectady County; National Grid Power Corporation; Gloversville Police Department; New York State; Assistant Attorney General William

J. McCarthy; Allyson Levine; Judge Vito Caruso; New York State Court of Appeals Chief Judge Jonathan Lippman; New York State Court of Appeals Associate Justice Victoria Graffeo; New York State Court of Appeals Associate Justice Susan Phillips Read; New York State Court of Appeals Associate Justice Robert Smith; New York State Court of Appeals Associate Justice Eugene F. Pigott, Jr.; Thomas Mercure, Appellate Division, Third Department Justice; Bernard Malone, Appellate Division, Third Department Justice; William McCarthy, Appellate Division, Third Department Justice; Kavanaugh, Appellate Division, Third Department Justice; Karen Peters, Appellate Division, Third Department Justice; Stein, Appellate Division, Third Department Justice; Edward Spain, Appellate Division, Third Department Justice; John Egan, Jr., Appellate Division, Third Department Justice; Garry, Appellate Division, Third Department Justice; John Lathinen, Appellate Division, Third Department Justice; James Ranous, Clerk; Jeff Weyant, Clerk; Ed Ryan, Attorney; Judge Richard Aulisi, Fulton County Supreme Court; Judge Richard Giardino, Fulton County Supreme Court; Judge Felix Carena, Fulton County Supreme Court; Judge Mark Powers, Schenectady County Family Court; Judge Joanne Assini, Schenectady County Family Court; Support Magistrate Colleen Quirion; Support Magistrate John Ellis, Schenectady County Family Court; Support Magistrate James Densmore, Schenectady County Family Court; Support Magistrate Richard Diamatteo, Schenectady County Family Court; Clerk Melissa Mills, Schenectady County Family Court; Clerk Denise Riggi, Schenectady County Family Court; Clerk Lisa Tricozzi, Schenectady County Family Court; Clerk Beth Kelly, Schenectady County Family Court; Maria Vidal, New York State Office of Temporary and Disability Assistance; Mark Lahey, New York State Office of Temporary and Disability Assistance and Office of Administrative Hearing; Gregg Harrington, New York State Office of Temporary and Disability Assistance and Office of Administrative Hearing; Kelly Vilgante, New York State Office of Temporary and Disability Assistance and Office of Administrative Hearing; David Hansell, New York State Office of Temporary and Disability Assistance and Office of Administrative Hearing; Scott E. Cade, New York State Office of Temporary and Disability Assistance and Office of Administrative Hearing; Alice Callahan, New York State Office of Temporary and Disability Assistance

and Office of Administrative Hearing; Orrie Eihacker, New York State Office of Temporary and Disability Assistance and Office of Administrative Hearing; John Bush; William Eschiler, Fulton County; John Rodgers, Fulton County; Ann Solar, Fulton County; Sherda Cooper, Fulton County; Sheriff Scott McCoy, Fulton County; Shannon Smith, Fulton County; Dennis Packer, Fulton County; Mary Carol Hart, Schenectady County; William Zilberman, Schenectady County; Chris Gardner, Schenectady County; Fred Goldman, Schenectady County; Michael Godlewski, Schenectady County; Mark Caruso, Schenectady County; Jean Carney, Schenectady County; James Martin, Schenectady County; Sheriff Varum, Schenectady County; Sheriff Johnson, Schenectady County; Kevin Burke, Schenectady County; Shannon Rinders, National Grid Power Corp.; and C. Enders, Gloversville Police Department. See Dkt. Nos. 1, 4.

4       The undersigned provides the named parties exactly as they are listed on the docket.

Senior District Judge McAvoy, in Clark II, granted plaintiff's IFP application, and dismissed plaintiff's amended complaint sua sponte, for lack of subject matter jurisdiction, frivolousness, and failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B). See Clark II, 6:13-CV-799, Dkt. No. 55. The Court noted that plaintiff's complaint appeared to be based on allegedly fraudulent orders relating to child support matters that arose in Schenectady Family Court, his eventual incarceration and wage garnishment due to his failure to pay such child support, and the termination of his utility services at his residence due to failure to pay his bill. Id. at Dkt. No. 55 at 2. Plaintiff alleged "that every state court and agency that issued decisions regarding the challenges to his order is corrupt" and that there are "widespread conspiracies among a variety of government and private actors in the State of New York to deprive him of his rights." Id. Plaintiff sought " 'expunge[ment] ... of decisions made in the Third Appellate (sic), Fulton County Supreme Court and Schenectady County Family Court' " and "$200 million in damages for '54 years of Civil Rights violations.' " Id.

The Court in Clark II determined that (1) under Rooker-Feldman, the Northern District of New York lacked jurisdiction to review the validity of state court judgments; (2) the Amended Complaint failed to state a claim upon which relief could be granted because (a)

claims against the New York State Court of Appeals, Appellate Division Third Department, Fulton County Supreme Court, Schenectady County Supreme Court, Vito Caruso, Lippman, Mecure, Malone, McCarthy, Cavanaugh, Peters, Rose, Stein, Spain, Egan Jr., Garry, Lathinen, Aulisi, Giardino, Catena, Powes, Assini, Quiron, Ellis, Densmore, and DiMatteo were barred by the doctrine of judicial immunity and plaintiff had not "plead enough facts in his Amended Complaint to plausibly suggest that any of the named judges acted outside the scope of his or her judicial capacity," (b) claims against the named judges insofar as plaintiff "alleges a general conspiracy between state court judges" were also insufficient because, under 42 U.S.C. § 1985, plaintiff failed to demonstrate "how, when, or why these judges colluded and formed these alleged schemes," rendering his claims of conspiracy insufficient; (c) claims against the Appellate Division Third Department Clerks, Ranous and Weyant; Schenectady County Family Court Clerks, Mills and Riggi; Fulton County Family Court Clerk Tricozzi; and Fulton County Family Court Attorney Kelly for "fail[ure] to respond to requests for documents and 'conceal[ed] evidence' failed to state a claim," and, further, the court clerks had quasi-judicial immunity as the tasks they performed "were undertaken either at the direction of the judge or in accordance with the court's rules" and "all of the acts were performed in furtherance of the judicial process"; (d) claims against New York State were barred by the Eleventh Amendment; (e) claims against the Unified Court System, New York State Court of Appeals, Appellate Division, Third Department, Fulton County Supreme Court, Schenectady County Family Court, New York State Office of Temporary and Disability Assistance, and Office of Administrative Hearings were also barred by the Eleventh Amendment; (f) claims against Fulton County, Schenectady County, and the City of Gloversville were insufficient because plaintiff's amended complaint was "[d]evoid of sufficient factual allegations suggesting that his constitutional rights were violated by customs or official policies adopted in Fulton County, Schenectady County, or the City of Gloversville"; (g) claims against defendant Bush, a hearing officer at OTDA, were barred by the doctrine of judicial immunity; (h) claims against Cuomo and Schneiderman for failure to intervene were barred by the doctrine of sovereign immunity and the Eleventh Amendment, and, insofar as plaintiff sought to set forth supervisory liability claims against these defendants, plaintiff failed to allege the personal involvement of either Cuomo and

Schneiderman; (i) claims against William McCarthy, an Assistant Attorney General, were barred by prosecutorial immunity; (j) claims against law enforcement officers Johnson, Varum, and McCoy for what appeared to be false arrest and imprisonment failed to state a claim because "[p]laintiff does not allege that his conviction, related to defaulted payment of child support, has been overturned"; (k) claims against defendant Enders, a patrolman in the Gloversville Police Department did not allege a constitutional violation; (l) claims against defendants National Grid and Rinders, an employee, were barred because neither National Grid or Rinders were state actors under Section 1983, and plaintiff failed to demonstrate that either National Grid or Rinders were parties to a conspiracy in order to proceed with such claim against private individuals under section 1983; (m) claims against defendants Vidal, Harrington, Rodgers, Hart, Zilberman, Gardner, Goldman, Godlewski, Mark Caruso, Carney, and Martin did not plead enough facts to demonstrate the personal involvement of any of these defendants in violating his constitutional rights; and (n) claims against defendants Levine, Graffeo, Read, Robert Smith, Pigott Jr., Curry, Mills, Lahey, Vilgante, Hansell, Cade, Callahan, Eihacker, Eschler, Solar, Cooper, Shannon Smith, Packer, and Burke fail as plaintiff did not allege any of these defendants' personal involvement in the violation of plaintiff's constitutional rights. See generally Clark II, 6:13-CV-799 at Dkt. No. 55. Thus, the Court dismissed plaintiff's action and warned plaintiff that continued pursuit of frivolous actions in this Court could result in "future filing restrictions." Id. at 19 (citing Hong Mai Sai v. Doe, 406 F.3d 155, 158 (2d Cir. 2005)). In light of plaintiff's pro se status, the complaint in Clark II was dismissed without prejudice. Id.

*3 Plaintiff appealed the Court's determination in Clark II. Clark II, 6:13-CV-799 at Dkt. No. 58. The Second Circuit dismissed plaintiff's appeal. Dkt. No. 67. Plaintiff filed a Rule 60(b) motion for relief from Judgment or Order. Dkt. No. 71. The Court denied plaintiff's Rule 60(b) motion. Dkt. No. 73. Plaintiff appealed the denial of his Rule 60(b) motion. Dkt. No. 74. The Second Circuit denied plaintiff's motion to appeal and other requests for relief. Dkt. No. 80.

**C. Current Complaint**

**1. General Overview**

Newly named as in the complaint in this action are the United States of America, the Department of Justice; the Administration of Children and Families; U.S. Magistrate Judge Therese Wiley Dancks; U.S. Magistrate Judge David Peebles; U.S. Bankruptcy Judge Robert E. Littlefield; U.S. District Judge David Hurd; U.S. District Judge Thomas McAvoy; Second Circuit Judges Denny Chin, Reena Raggi, Robert D. Sack, Robert A. Katzman, Jose A. Cabranes, Christopher F. Droney; U.S. Attorney Richard Hartunian and Assistant U.S. Attorney Richard Bellis; Vicki Turetsky, Commissioner, Federal OCSE; Samuel D. Roberts, Commissioner of the Office of Temporary and Disability Assistance; Department of Health and Human Services [5]; Jonathan Hitsous; Kirsten Powers; Kathleen Whelan; Ed Jasecwic; and J. Reppahagan. See Dkt. No. 1 ("Compl.").

[5]    Although plaintiff does not name the Department of Health and Human Services in the caption of his complaint, he sets forth a claim against them. See Compl. at 7 ("Violation of Title 42 Chapter 7, Part D by the Department of Health and Human Services"). Giving plaintiff due solicitude, the undersigned concludes that plaintiff intends to name the Department of Health and Human Services as a defendant in this action.

Plaintiff also names as defendants many of the defendants who were terminated in his prior actions. See Clark I and Clark II. These defendants are Governor Andrew Cuomo, Attorney General Eric Schneiderman; Chief Judge of the New York State Court of Appeals Jonathan Lippman; Court of Appeals Judges Victoria Graffeo, Susan Phillips Read, Robert Smith, and Eugene Pigott, Jr.; Appellate Division, Third Department Justices Thomas Mercure, Bernard Malone, William McCarthy, Michael Kavanaugh, Karen Peters, Robert Rose, Leslie Stein, Edward Spain, John Egan Jr., Garry, John Latinen; New York State Unified Court System [6]; Fulton County Supreme Court Judge Richard Aulisi; Fulton County Supreme Court Judge Richard Giardino; Schenectady County Family Court Judge Mark Powers; Schenectady County Family Court Judge Joanne Assini; Schenectady County Family Court Support Magistrate John Ellis; Schenectady County Support Magistrate James Densmore; Schenectady County Support Magistrate Richard Dimatteo; New York State

Office of Temporary and Disability Assistance and Office of Administration Hearings [7]; Maria Vidal, New York State Office of Temporary and Disability Assistance and Office of Administrative Hearing; Mark Lahey, New York State Office of Temporary and Disability Assistance and Office of Administrative Hearings; Maria Vidal, New York State Office of Temporary and Disability Assistance and Office of Administrative Hearings; Greg Harrington, [8] New York State Office of Temporary and Disability Assistance and Office of Administrative Hearings; Kelley Viligante, [9] New York State Office of Temporary and Disability Assistance and Office of Administrative Hearings; David Hansel, [10] New York State Office of Temporary and Disability Assistance and Office of Administrative Hearings; Scott Cade, [11] New York State Office of Temporary and Disability Assistance and Office of Administrative Hearings; Alice Callahan, New York State Office of Temporary and Disability Assistance and Office of Administrative Hearings; Orrie Eihacker, New York State Office of Temporary and Disability Assistance and Office of Administrative Hearings; John Bush, [12] New York State Office of Temporary and Disability Assistance and Office of Administrative Hearings; Court clerks James Ranous, Jeff Weyant, Melissa Mills, Denise Riggi, Lisa Tricozzi, and Beth Kelley [13]; Schenectady County employees Dennis Packer, Mary Carol Hart, William Zilberman, Chris Gardner, Fred Goldman, Michael Godlewski, Mark Caruso, Jean Carney, James Martin; Corrections Officers Varnum and Johnson; Fulton County employees William Eschlear, [14] John Rodgers, Ann Solar, Sherdya Cooper [15], and Shannon Smith; Fulton County Sheriff Scott McCoy; National Grid employee Shannon Rhydners [16]; Schenectady County; Fulton County; Gloversville Police Department; and C. Enders.

6    Although not named in the caption of his complaint, plaintiff mentions the New York State Unified Court System within the body of his complaint. Giving plaintiff due solicitude, the undersigned will assume plaintiff intended to name the New York State Unified Court System as a defendant in this action, as he has done in both Clark I and Clark II. Compl. at 8, 10

7    Plaintiff attempted to sue this agency in Clark II under the title NYS Office of Temporary Disabilities and Assistance. In Clark II action, he did not individually sue the "Office of Administration Hearings," instead grouping it with the NYS Office of Temporary Disabilities and Assistance; however, the Court acknowledged that the two were separate agencies. Clark II, Dkt. No. 55 at 11 n.6.

8    In Clark II, plaintiff spelled this defendant's name as Gregg Harrington. However, it is clear that this is the same individual. See Clark II, 6:13-CV-799.

9    In Clark II, plaintiff spelled this defendant's name as Kelly Vilgante. However, it is clear that this is the same individual. See Clark II, 6:13-CV-799.

10    In Clark II, plaintiff spelled this defendant's name as David Hansell. However, it is clear that this is the same individual. See Clark II, 6:13-CV-799.

11    In Clark II, plaintiff sued this defendant under the name Scott E. Cade. It is clear that this is the same individual. See Clark II, 6:13-CV-799.

12    In Clark II, plaintiff sued this defendant as H.O. Bush, a hearing officer. It is clear that this is the same individual as that sued in the 2013 action. See Clark II, 6:13-CV-779.

13    In Clark II, plaintiff spelled this defendant's name as Beth Kelley. It is clear that this is the same individual. See Clark II, 6:13-CV-779.

14    In Clark II, plaintiff spelled this defendant's name as William Eschiler. It is clear that this is the same individual. See Clark II, 6:13-CV-779.

15    In Clark II, plaintiff spelled this defendant's name as Sherda Cooper. It is clear that this is the same individual. See Clark II, 6:13-CV-779.

16    In Clark II, plaintiff spelled this defendant's name as Shannon Rinders. It is clear that this is the same individual. See Clark II, 6:13-CV-779.

*4    Plaintiff contends that he sets forth the following causes of action (1) "[v]iolations of the first, fourth, fifth, sixth, eighth and fourteenth amendment" [sic]; (2) "[f]raud and fabricated evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963)"; (3) "[c]onspiracy under First Amendment and 42 U.S.C. 1985 (2 &3)"; (4) "[a]buse of process"; (5) "Federal Tort Claims and Bivens v. Six Unknown Named Fed. Narcotics Agents, 403 U.S. 388 (1971)"; (6) "[f]alse imprisonment and

Malicious Prosecution"; (7) "[d]enial of phone call from jail"; (8) "[b]reach of fiduciary duty"; (9) "[v]iolation of notice"; (10) "[v]iolation of the First Amendment right to read Court Orders"; (11) "[v]iolations of Freedom of Information"; (12) "[i]ntentional infliction of emotional distress"; (13) "Fourth Amendment Right to Illegal Seizure"; (14) "[v]iolation of State Judicial procedures (Denial of trial transcript to Appellate Attorney)"; (15) "[v]iolation of due process Clause and Substantive Due Process"; (16) "[v]iolation of Discretionary Functions"; (17) "[d]enial of leave to amend"; (18) "[d]enial of in forma pauperis status"; (19) "[d]enial of right to a Writ of Mandamus"; (20) "[v]iolation of Federal Rules and Procedures (Rule 2072)"; (21) "[v]iolation of Administrative Functions (Docket Practice) Forrester v. White 484 U.S. 219 (1988)"; (22) "[v]iolation of Injunctive Relief, Pulliam v. Allen 466 U.S. 522 (1984)"; (23) "[v]iolation of administrative and judicial review under 42 U.S.C. 666"; (24) "[v]iolation of separation of powers between state and federal courts"; (25) "[v]iolation of the Supremacy Clause concerning state courts"; (26) "[v]iolation of Judicial Immunity, Absolute Immunity, and Qualified Immunity (ruling in favor of a county that was terminated) Monell v. Dep't of Social Service, 436 U.S. 658 (1978)"; (27) "[d]efamation of Character"; (28) "[d]estruction of credit and credibility"; (29) "[v]iolation of Rule of Law"; (30) "[v]iolation of freedom of speech and the opportunity to be heard, Grannis v. Odean, 234 U.S. 385 (1914)"; (31) "[i]ntentional oppression 18 U.S. 21"; (32) "[v]iolation of Benefits(Food stamps and Public Assistance) Goldberg v. Kelly 397 U.S. 254 (1970)"; (33) "[v]iolation of Right to Passport and 'Tax Refunds' "; (34) "[v]iolation of Right to Travel (Illegal Drivers Right Suspenstion [sic] )"; (35) "[v]iolation of Physical Freedom"; (36) "[o]bstruction of Justice"; (37) "[i]ntentional Conscious Avoidance of Issues"; (38) "[l]ack of subject matter jurisdiction and personal jurisdiction and refusal to address taking notice and the opportunity to be heard under Rule of Evidence Rule 201"; (39) "[r]efusal to serve papers forcing the plaintiff to do serve his own papers"; (40) "[i]neffective Counsel"; (41) "[d]enial of Right to a Public Trial"; (42) "[v]iolation of Title 42 Chapter 7, Part D by the Department of Health and Human Services"; (43) "[d]enial of the Right to Recusal by the State and the Neutrality Requirement Marshal v. Jericho 446 U.S. 238 (1980)"; (44) "[i]llegal use of the Rooker-Feldman Doctrine"; (45) "[c]onspiracy to Defraud the United States 18 U.S.C. 371"; (46) "[t]heft of

money." Compl. at 5-7. Plaintiff demands $230 million in damages. Id. at 16.

Plaintiffs' complaint in this action, much like those in Michael Clark's prior two actions, is very difficult to comprehend and parse out. See Compl. As in his 2012 and 2013 actions, plaintiffs contend that a fraudulent order was entered against Michael Clark, apparently for child support, in 2006. Very liberally read, plaintiffs seek to recover damages arising out of a series of civil rights violations resulting from various judges, judicial staff, and agencies' various conspiracies. Plaintiffs contend that this entire action arises out of a "non-existent court order of 8/26/05" of which he has never received or read. Compl. at 3. Plaintiffs also refer to a bankruptcy action which they allege violated a "property settlement agreement" apparently related to an agreement that Michael Clark would make certain payments "in lieu of child support." Id. Plaintiffs argue that there exists a conspiracy, apparently within the New York State Unified Court system and federal courts, relating to a 2008 investigation, and various court dates in 2006 and 2007 in. Id. at 10.

Although plaintiff sets forth forty-six causes of action, they does not identify against which defendants he intends to bring each claim against. Many claims set forth as causes of action are not addressed anywhere in the complaint. See Compl. at 6-7.

### 2. Subject Matter Jurisdiction

In Clark II, this Court provided that the Rooker-Feldman doctrine "recognizes that, with the exception of the United States Supreme Court, federal courts are not authorized to exercise appellate jurisdiction over state-court judgments." Clark II, 6:13-CV-779, Dkt. No. 55 at 5 (citing McKithen v. Brown, 481 F.3d 89, 96 (2d Cir. 2007)). For the reasons stated in Judge McAvoy's January 17, 2014 Decision and Order, the undersigned concludes that this Court lacks subject matter jurisdiction to the extent plaintiff seeks the Court to review various state court orders. See Clark II, Dkt. No. 55 at 5-7 (holding that plaintiff's complaint, insofar as it sought to have the Court review state court orders, is barred by the Rooker-Feldman doctrine).

### 3. Claims against United States of America

Plaintiff names the United States of America as a defendant, though it is not clear which claims he seeks to pursue against the United States. However, the United States is protected from suit unless Congress has expressly articulated an exception to their immunity, which it has not done. See United States v. Sherwood, 312 U.S. 584 (1941) (holding that the United States has sovereign immunity from suit and can only be sued with its consent and pursuant to the terms Congress may impose).

**\*5** Accordingly, it is recommended that all claims against the United States of America be dismissed with prejudice and without opportunity to amend.

### 4. Claims against New York State Governor Andrew Cuomo and New York State Attorney General Eric Schneiderman

Plaintiffs' only allegations against the Governor and the Attorney General are that they refused plaintiffs the opportunity to see or read certain court orders apparently associated with child support matters. Compl. at 10. However, plaintiffs fail to demonstrate how the Attorney General or Governor would be personally involved in a denial of a request for a state court order or transcript.

Giving plaintiffs due solicitude, it is possible that plaintiffs are seeking to raise similar arguments to those raised in Clark II. Insofar as plaintiffs seek to set forth claims against these elected officials, for "failing to intervene in his case" as he attempted to do in Clark II, such claims are dismissed for failure to state a claim upon which relief can be granted as set forth in Judge McAvoy's January 2014 Decision and Order. See 6:13-CV-799 at 13-14.

Accordingly, it is recommended that all claims against New York State Governor Andrew Cuomo and New York State Attorney General Eric Schneiderman be dismissed with prejudice.

### 5. Claims against U.S. Attorney Richard Hartunian and Assistant U.S. Attorney Richard Bellis

Plaintiffs seek to sue U.S. Attorney Richard Hartunian and Assistant U.S. Attorney Richard Bellis pursuant to Bivens v. Six Unknown Named Fed. Narcotics Agents, 403 U.S. 388 (1971). First, "it is well established that prosecutors have absolute immunity from suits premised upon actions they took within the scope of their prosecutorial duties." Hill v. Donoghue, 815 F. Supp. 2d 583, 586 (E.D.N.Y. Sept. 2, 2011) (citing Cleaveger v. Saxner, 474 U.S. 193, 2000 (1985)). Furthermore, U.S. Attorney Hartunian and A.U.S.A. Richard Bellis' names appear only in the caption of the complaint. They are not mentioned anywhere in the body of the complaint. "Under Bivens, as under § 1983, a defendant's 'personal involvement' in an alleged deprivation of constitutional rights is a prerequisite to an award of damages." Marsden v. Fed. Bureau of Prisons, 856 F. Supp. 832, 835 (2d Cir. 1994) (citing Gill v. Monney, 824 F.2d 192, 196 (2d Cir. 1987)).

Accordingly, it is recommended that all claims against U.S. Attorney Richard Hartunian and A.U.S.A. Richard Bellis be dismissed with prejudice.

### 6. Claims against New York State Court of Appeals Judges and Appellate Division, Third Department Justices: Chief Judge Jonathan Lippman; Judge Victoria Graffeo; Judge Susan Phillips Read; Judge Robert Smith; Judge Eugene Pigott, Jr.; Justice Thomas Mercure; Justice Bernard Malone; Justice William McCarthy; Justice Michael Kavanaugh; Justice Karen Peters; Justice Robert Rose; Justice Leslie Stein; Justice Edward Spain; Justice John Egan, Jr., Justice Garry; Justice John Lathienen; Judge Richard Aulisi; Judge John Ellis; Judge James Denmore [17] ; Judge Mark Powers, Judge Felix Catena, Judge Richard Giardino, Judge Joanne Assini, Judge Richard Dimatteo, and Judge Colleen Quirion

[17]     The caption does not include a comma between John Ellis and James Denmore; thus, the docket reflects John Ellis and James Denmore as one defendant. The Clerk of the Court is directed to correct the docket to indicate that plaintiff seeks to sue both John Ellis and James Denmore.

**\*6** All claims against these defendants were dismissed in Clark II due to judicial immunity. Plaintiffs have failed to set forth any claims against these named judges to demonstrate that any of these judges have "take[n] action 'outside' his or her 'judicial capacity' " or "take[n]

an action that, although judicial in nature, is taken 'in absence of jurisdiction.' " Mireles v. Waco, 502 U.S. 9, 9-10 (1991); Clark II, Dkt. No. 55 at 7. Plaintiffs argue that the judges in this action are not entitled to judicial immunity apparently because the various judges have declined to grant him the relief sought and because the judges are engaged in a conspiracy to "cover-up" the "truth," which plaintiffs say is the fact that "decisions made against the plaintiff's [sic] are based on a court order that doesn't exist and another order, never seen or read by the plaintiff's [sic]." 16-CV-740, Compl. at 8-9.

Plaintiffs contend that this case is governed by O'Shea v. Littleton, 414 U.S. 488 (1974) which they contend stands for the proposition that judges are not entitled to judicial immunity "for criminal acts in his judicial capacity, as FRCPS 18 & 241, and 245, are related to the docket practice and oppression of my declaratory divorce decree." Compl. at 8. In O'Shea, various individuals brought a class action against a county magistrate judge and associate judge of a count circuit court, contending that the judges violated their constitutional rights and civil rights under the color of state law relating to their practices of bond setting, sentencing, and jury fee practices. Id. The Supreme Court concluded that the plaintiff failed to allege a case or controversy as "none of the named plaintiffs is identified as himself having suffered any injury in the manner specified, the claim alleging injury is in only the most general terms, and there are no allegations that any relevant state criminal statute is unconstitutional on its face or as applied or that plaintiffs have been or will be improperly charged with violating criminal law." Id. at 488.

To the extent plaintiffs may have cited to Littleton because the underlying Appellate Court, the Seventh Circuit, had remanded to the District Court under the holding that "issuance of injunctions against judicial officers was not forbidden if their conduct was intentionally racially discriminatory against a cognizable class of persons," the undersigned here notes that even if O'Shea stands for this proposition, even under the most liberal reading of the complaint, plaintiffs have failed to demonstrate that any of the judges sued herein engaged in criminal conduct. However, to the extent plaintiffs suggest that the judges were involved in some kind of conspiracy to violate his rights, judicial immunity would still apply. See Marino v. Jonke, 11-CV-430 (VB), 2011 WL 3251585, at *2 (S.D.N.Y. June 30, 2011) (citing Dorman v. Higgins,

821 F.2d 133, 139 (2d Cir. 1997)) ("[S]ince absolute immunity spares the official any scrutiny of his motives, an allegation that an act was done pursuant to a conspiracy has no greater effect than an allegation that it was done in bad faith or with malice, neither of which defeats a claim of absolute immunity.").

As stated in Judge McAvoy's Memorandum-Decision and Order in Clark II, because plaintiffs have not proven that defendants acted outside of their judicial capacity or in absence of jurisdiction, plaintiffs' claims against these defendants are barred by judicial immunity. Accordingly, it is recommended that all claims against Chief Judge Jonathan Lippman, Judge Victoria Graffeo, Judge Susan Phillips Read, Judge Robert Smith, Judge Eugene Pigott, Jr., Justice Thomas Mercure, Justice Bernard Malone, Justice William McCarthy, Justice Michael Kavanaugh, Justice Karen Peters, Justice Robert Rose; Justice Leslie Stein; Justice Edward Spain; Justice John Egan, Jr., Justice Garry; Justice John Lathienen; Judge Richard Aulisi; Judge John Ellis; Judge James Denmore; Judge Mark Powers, Judge Felix Catena, Judge Richard Giardino, Judge Joanne Assini, Judge Richard Dimatteo, and Judge Colleen Quirion be dismissed with prejudice and without opportunity to amend.

**7. Claims against U.S. Magistrate Judge Thérèse Wiley Dancks, U.S. Magistrate Judge David Peebles; U.S. Bankruptcy Judge Robert E. Littlefield; U.S. District Judge David Hurd, U.S. District Judge Thomas McAvoy; Second Circuit Judges Judge Denny Chin, Judge Reena Raggi, Judge Robert D. Sack, Chief Judge Robert A. Katzman, Judge José A. Cabranes, and Judge Christopher F. Droney**

**\*7** Plaintiff Michael Clark did not name these judges as defendants in his prior two federal actions. Plaintiffs contend that Judge McAvoy, apparently referring to Clark II, "committed fraud on the docket, consciously avoiding the truth and refused to properly place representation on parties that were to be represented by the Attorney General's Office" and also "violated the neutrality requirement in his decision, ruled against my ex-wife and children in total disregard for their rights." Compl. at 13-14. Plaintiffs further indicate that the federal judges misapplied the Rooker-Feldman doctrine.

Insofar as plaintiffs believe that the judges of the Northern District of New York have misapplied the Rooker-Feldman doctrine, the proper remedy for that alleged error is an appeal to the Second Circuit. Plaintiff Michael Clark appealed Judge McAvoy's January 2014 Decision and Order concluding that plaintiff Michael Clark's claims seeking review of state court orders was barred by the Rooker-Feldman doctrine, an that appeal was dismissed by the Second Circuit. See Clark II, Dkt. No. 67. Plaintiffs only remedy insofar as they allege misapplication of the Rooker-Feldman Doctrine in Clark II is to seek review by the Supreme Court of the United States. Regarding any other aspect of law, or denial of mandamus, in forma pauperis status, or leave to amend, the proper remedy for that alleged error is to seek review in either the Second Circuit or Court of Appeals.

Furthermore, as indicated above in the undersigned's discussion of the claims against the state court judges, the judges of the United States District Court for the Northern District of New York and for the United States Court of Appeals for the Second Circuit are immune from suit. Plaintiffs have failed to set forth any claims against these named judges to demonstrate that any of these judges have "take[n] action 'outside' his or her 'judicial capacity' " or "take[n] an action that, although judicial in nature, is taken 'in absence of jurisdiction.' " Mireles v. Waco, 502 U.S. 9, 9-10 (1991). Accordingly, it is recommended that all claims against U.S. Magistrate Judge Thérèse Wiley Dancks, U.S. Magistrate Judge David Peebles; U.S. Bankruptcy Judge Robert E. Littlefield; U.S. District Judge David Hurd, U.S. District Judge Thomas McAvoy; Second Circuit Judges Judge Denny Chin, Judge Reena Raggi, Judge Robert D. Sack, Chief Judge Robert A. Katzman, Judge José A. Cabranes, and Judge Christopher F. Droney be dismissed with prejudice and without opportunity to amend.

### 8. Claims against Department of Justice, Administration of Children and Families,[18] Federal OCSE[19], and Department of Health and Human Services

[18]    It appears plaintiff is referring to the federal agency, Administration for Children and Families. See www.acl.gov (last visited Aug. 24, 2016).

[19]    It appears plaintiff is referring to the Office of Child Support Enforcement. See http://www.acf.hhs.gov/css (last visited Aug. 24, 2016).

Plaintiffs, for the first time, name the United States Department of Justice, Administration for Children and Families, the Federal Office of Child Support Enforcement, and the Department of Health and Human Services, which are all federal agencies. Plaintiffs do not allege any specific claims against the Department of Justice, Administration for Children and Families, or the Federal Office of Child Support Enforcement. Plaintiffs provide that the Department of Health and Human Services: (1) denied him access to certain court orders that he has requested, and (2) violated "Title 42 Chapter 7, Part D." Compl. at 7, 10. However, plaintiff provides no factual support for these claims. Plaintiffs' citation appears to be to 42 U.S.C. 651, et al., which sets forth child support obligations. The statute provides that the Secretary of the Department of Health and Human Services is to establish a unit that would, among other things, set the standards for child support programs, paternity, wage garnishment, collection of arrears from federal tax refunds, obtaining child support. See id. Liberally read, it appears that, in contending that the Department of Health and Human Services have "violated" this statute, plaintiff Michael Clark believes he has been forced to pay child support he does not owe, and have his wages garnished and be subject to incarceration because of failure to pay, which he suggests violates the statute.

**\*8** The Supreme Court of the United States has made clear that a Bivens action cannot be brought against a federal agency. F.D.I.C. v. Meyer, 510 U.S. 471, 472 (1994). Plaintiffs have not named any officials from these federal agencies. However, even if plaintiffs had named the secretary of the Department of Health and Human Services as a defendant, such claim would fail as the secretary "is also entitled to statutory immunity to the extent plaintiff seeks to hold her liable for the enforcement of Title IV-D provisions. See 42 U.S.C. 652(k)(3)(2006) ('The Secretary shall not be liable to an individual for any action with respect to a certification by a State agency under this section.')." Parent v. New York, 786 F. Supp. 2d 516, 542 (N.D.N.Y. 2011).

Accordingly, as plaintiffs cannot proceed in a Bivens action against these federal agencies, it is recommended

that all claims against these federal agencies be dismissed, with prejudice and without opportunity to amend.

### 9. **Vicki Turetsky, Commissioner, Federal OCSE**

Plaintiffs' complaint, beyond listing her name in the caption, makes no mention of Vicki Turetsky. First, the Eleventh Amendment bars suits against agencies and officials sued in their official capacities. Graham, 473 U.S. at 166. Insofar as plaintiffs seek to sue Turetsky in her official capacity, such claims are barred. Id. Plaintiffs indicate that they also intend to sue Turetsky in her individual capacity. Compl. at 1. However, plaintiffs have failed to set forth any allegations against Turetsky in his complaint. Her name is mentioned in the caption and nowhere else. As plaintiffs have failed to establish Turetsky's personal involvement in the violation of any of his constitutional rights, plaintiff has failed to demonstrate Turetsky's personal involvement in the violation of his constitutional rights.

Accordingly, it is recommended that all claims against Vicki Turetsky be dismissed with prejudice.

### 10. **Claims against New York State Office of Temporary and Disability Assistance** [20] **and Office of Administration Hearings** [21]

[20]  Plaintiff sought to sue this agency in his Clark II under the name NYS Office of Temporary Disabilities and Assistance. See 6:13-CV-799, Dkt. No. 1.

[21]  In Clark II, Judge McAvoy noted that plaintiff, who sued the Office of Administrative Hearings as a defendant in that case, appeared to be referring to the New York Department of State, Office of Administrative Hearings, which appears to be a separate entity from the NYS Office of Temporary Disability Assistance. Clark II, Dkt. No. 55, at 11 n.6.

The only mention of the Office of Temporary and Disability Assistance is that the agency "has refused to allow me to see or read those court orders, when requested." Compl. at 10. However, plaintiffs fail to allege how the New York State Office of Temporary and Disability Assistance would have access to any Court orders or the authority to compel an agency or court with such access to provide them to plaintiffs. Plaintiffs' complaint sets forth no claims against the Office of Administration Hearing. See generally Compl. For the reasons set forth in Judge McAvoy's January 2014 Decision and Order, it is recommended that all claims against these defendants be dismissed as they are barred by the Eleventh Amendment. See Clark II, Dkt. No. 55 at 11-12 ("[T]he Eleventh Amendment bar extends to agencies and officials sued in their official capacities.") (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985)).

### 11. **Claims against the New York State Unified Court System**

In Clark I, Judge Hurd dismissed plaintiff Michael Clark's claims against the New York State Unified Court System —which the Court determined failed to state a claim under section 1983 because "[c]ourts and state agencies are not 'persons' for he purposes of § 1983"—with without leave to amend. Clark I, Dkt. No. 10 at 6. It is unclear whether Judge Hurd intended for this dismissal to be with prejudice. See id. However, plaintiff raised claims against the New York State Unified Court system again in Clark II. See Clark II, Dkt. No. 1. In Clark II, Judge McAvoy concluded that, as an "arm of the state," the New York State Unified Court system is entitled to sovereign immunity. Clark II, Dkt. No. 55 at 11. Thus, Judge McAvoy dismissed plaintiff Michael Clark's claims against the New York State Unified Court System as barred by the Eleventh Amendment. Id. at 12. For the reasons stated in Clark I and Clark II, it is recommended that plaintiffs' claims against the New York State Unified Court system be dismissed with prejudice as such entity is entitled to immunity from suit.

### 12. **Claims against Maria Vidal, Mark Lahey, Greg Harrington, Kelley Viligante, David Hansel, Scott Cade, Alice Callahan, Orrie Eihacker**

**\*9**  It appears all of these defendants are employees at the New York State Office of Temporary Disability Assistance and/or the Office of Administrative Hearings. Plaintiff has failed to name any of these defendants within the body of the complaint or explain how they were personally involved in any constitutional deprivations. None of these defendants are named anywhere in the complaint other than the caption. "It is well settled that,

in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional violation." Grullion v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013) (citing Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004) (additional citations omitted)).

As plaintiffs have not alleged the personal involvement of any of these defendants, it is recommended that all claims against them be dismissed with prejudice and without opportunity to amend.

### 13. Claims against Court Clerks James Ranous, Jeff Weyant, Melissa Mills, Denise Riggi, Lisa Tricozzi, and Beth Kelley

First, plaintiffs fail to set forth any specific factual allegations against these defendants in his complaint. However, as noted in Judge McAvoy's January 2014 Decision in Clark II, "in certain circumstances clerks enjoy absolute quasi-judicial immunity." Clark II, Dkt. No. 55 at 9. Judge McAvoy set forth the law for assessing whether court clerks are entitled to immunity as follows:

[s]uch immunity attaches when the clerk is performing tasks that are judicial in nature and an integral part of the judicial process, as well as to administrative functions, "if the task was undertaken pursuant to the explicit direction of a judicial officer or pursuant to the established practice of the court." Humphry v. Court Clerk for the Second Circuit, 2008 WL 1945308, at *2 (N.D.N.Y. May 1, 2008) (citing Rodriguez, 116 F.3d at 66-67).

Id. at 10. As plaintiffs have set forth no allegations against these court clerks, and, thus, has failed to demonstrate that they violated his constitutional rights in a manner outside of the confines of their judicial tasks or as part of an established practice of the Court, plaintiffs have failed to demonstrate that these defendants are not entitled to judicial immunity. As plaintiffs failed to cure the defects in his allegations against these defendants from Clark II, Id., the undersigned recommends that all claims against these defendants be dismissed with prejudice.

### 14. Claims against John Bush

Plaintiffs' complaint in this action sets forth no factual allegations against defendant John Bush. [22] His name does not appear anywhere within the body of the complaint and there is no explanation of what claims are brought against him or how he allegedly violated plaintiff's constitutional rights. Accordingly, it is recommended that all claims against John Bush be dismissed for lack of personal involvement.

[22]    Bush's first name and title appears nowhere within the complaint in this action. However, there is a hearing officer Bush who was sued in Clark II. It is unclear if John Bush is the same person as Hearing Officer Bush, who plaintiff sought to sue in Clark II. Although the undersigned recommends dismissal against John Bush due to plaintiff's failure to demonstrate his personal involvement, the undersigned notes that if John Bush is, in fact, the hearing officer plaintiff attempted to sue in Clark II, such claims would be barred by the doctrine of "absolute judicial immunity," as set forth in Judge McAvoy's January 17, 2014 Decision and Order. Clark II, Dkt. No. 55, at 13.

### 15. Jonathan Hitsous, Kirsten Powers, Kathleen Whelan; and Samuel D. Roberts

**\*10** Plaintiffs' only mention of Jonathan Hitsous is that he is an attorney who "filed papers acknowledging that he was working with the Federal System against my ex-wife, children, and me." Compl. at 14. Plaintiffs then indicate that, apparently in relation to his Rule 60(b) motion filed in Clark II, Hitsous "again attempted to work with the federal court against me, a clear violation of the separation of powers." Id. First, the undersigned does not see any notice of appearance by an attorney named Jonathan Hitsous in connection with Clark II. Further, plaintiffs' disjointed statements fail to explain how Jonathan Hitsous was at all personally involved in a violation of plaintiffs' constitutional rights. First, factually, the court is unable to discern who Hitsous is or how he was involved in the case. Insofar as plaintiffs seek to allege a conspiracy theory between Hitsous and the judges of the Second Circuit or the Northern District of New York by alleging that he "work[ed]" with "the federal court against me," such claims fail to state a claim for relief

under section 1985(3). See United Bhd. of Carpenters and Joiners of Am., Local 610 v. Scott, 463 U.S. 825, 828-29 (1983).

Plaintiffs' complaint is entirely void of any factual allegations or claims against Kathleen Whelan, Kirsten Powers, and Samuel D. Roberts. See generally Compl. Plaintiffs do not even provide these individuals' titles or set forth allegations of how these individuals violated his constitutional rights. Grullion, 720 F.3d at 138 (2d Cir. 2013). Accordingly, plaintiffs have not demonstrated the personal involvement of Kathleen Whelan or Kirsten Powers. Accordingly, it is recommended that all claims against Jonathan Hitsous, Kirsten Powers, Kathleen Wahlen, and Samuel D. Roberts be dismissed with prejudice and without opportunity to amend.

### 16. Claims against National Grid and Shannon Rhydners, Ed Jasecwizc, and Dave Murphy

Plaintiffs seek to bring claims against defendant National Grid and Shannon Rhydners, Ed Jasecwizc, and Ed Murphy, apparently employees of National Grid. Plaintiff makes no mention of their National Grid or Shannon Rhydners, Ed Jasecwizc, or Dave Murphy in his complaint beyond mentioning their name in the caption. It is unclear which claims he seeks to set forth against them. In Clark II, plaintiff Michael Clark sought to sue these same defendants alleging that "National Grid and one of its employees, Shannon Rinders, deprived him of his property without due process of law by terminating his utility service [,]" Clark II, apparently in connection with National Grid's termination of his utility service for nonpayment. Clark II, Dkt. No. 55 at 16. There, the Court dismissed plaintiff Michael Clark's claims against National Grid and Rhydners/Rinders because these defendants were not state actors as required by Section 1983 and because plaintiff Michael Clark failed to prove their involvement in a conspiracy. Id. at 16-17.

Although Judge McAvoy dismissed these claims without prejudice, plaintiffs have failed to cure the defects in his allegations against National Grid and Rhydners insofar as he has not even mentioned them within the body of the complaint. As plaintiffs have failed to set forth any allegations against National Grid, Rhydners, Jasecwizc, and Murphy, and has not demonstrated their personal involvement in any constitutional violation, it is

recommended that all claims against these defendants be dismissed with prejudice. See Grullion, 720 F.3d at 138.

### 17. C. Enders, J. Reppahagen, Gloversville Police Department, Schenectady County, and Fulton County

Plaintiffs' complaint does not set forth any allegations against defendant C. Enders or J. Reppahagen, who apparently are employed by the Gloversville Police Department. Thus, plaintiffs' claims are recommended to be dismissed insofar as plaintiff has failed to allege Enders' or Reppahagen's personal involvement. In Clark II, plaintiff Michael Clark solely alleged that Enders " 'bullied' him into allowing a National Grid employee to terminate his 'utility service' " which the court concluded did not state a constitutional violation. See Clark II at Dkt. No. 55 at 16. Plaintiffs have set forth no factual allegations or claims against Enders, and, thus, they have not cured the defect that resulted in dismissal against Enders in Clark II. As plaintiffs have failed to allege the personal involvement of Enders or Reppahagen in the violation of any constitutional right, it is recommended that such claims be dismissed with prejudice.

**\*11** In Clark II, Judge McAvoy dismissed plaintiff Michael Clark's claims against the Gloversville Police Department, Schenectady County, or Fulton County, after concluding that plaintiff failed to demonstrate that any constitutional deprivation caused by the Gloversville Police Department or the counties was due to a "government custom, policy, or usage of the municipality." Clark II, Dkt. No. 55, at 12 (quoting Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012)) (citing Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978)). Judge McAvoy noted that plaintiff's complaint, insofar as it sought to bring claims against the Gloversville Police Department, Schenectady County, or Fulton County "is devoid of sufficient factual allegations suggesting that his constitutional rights were violated by the customs or official policies adopted in Fulton County, Schenectady County, or Fulton County." Id. at 13. Plaintiffs' sporadic and general reference to Monell at various points in the complaint does not render a different determination. Compl. at 4 ¶ 2, 6. Plaintiffs' general citations to Monell, without any factual support setting forth a claim that any of these defendants acted pursuant to an official policy or custom, are conclusory and fails to state a claim under section 1983.

As plaintiffs have failed to cure the defects in his claims against these defendants to sufficiently set forth a <u>Monell</u> claim against them, it is recommended that all claims against this defendant be dismissed, with prejudice, because plaintiffs have failed to cure the defect in the claims against these same defendants from <u>Clark II</u>.

**18. Fulton and Schenectady County Employees Dennis Packer, Mary Carol Hart, William Zilberman, Chris Gardner, Fred Goldman, Michael Godlewski, Mark Caruso, Jean Carney, James Martin, William Eschlear, John Rodger, Ann Solar, Sherdya Cooper, Scott McCoy, and Shannon Smith**

Plaintiffs' complaint, beyond mentioning these individuals' names within the caption, fails to set forth any factual allegations against them in the complaint. Where a plaintiff fails to set forth any allegations in the complaint explaining how the defendant deprived a plaintiff of his constitutional rights, personal involvement has not been demonstrated and dismissal is proper. <u>See</u> <u>Grullion, 720 F.3d at 138</u>. Accordingly, it is recommended that all claims against Dennis Packer, Mary Carol Hart, William Zilberman, Chris Gardner, Fred Goldman, Michael Godlewski, Mark Caruso, Jean Carney, James Martin, William Eschlear, John Rodger, Ann Solar, Sherdya Cooper, Scott McCoy, and Shannon Smith be dismissed with prejudice and without opportunity amend.

**19. Corrections Officers Varnum and Johnson**

Plaintiffs name Corrections Officers Varnum and Johnson in the caption, but mentions them nowhere else in the complaint. <u>See</u> <u>generally</u> Compl. In <u>Clark II</u>, Judge McAvoy dismissed plaintiff Michael Clark's claims against these defendants for false arrest and imprisonment under section 1983. Although plaintiffs plead no factual allegations against these defendants and it is unclear if they attempts to re-plead claims of false arrest and imprisonment against these defendants, to the extent plaintiffs have not cured the defects clearly noted in Judge McAvoy's January 2014 decision, such claims are dismissed for the reasons set forth in <u>Clark II</u>. See Clark II, Dkt. No. 55, at 15 ("Plaintiff does not allege that his conviction, related to defaulted payment of child support, has been overturned."). Thus, it is recommended that

plaintiffs' claims against Varnum and Smith be dismissed as plaintiffs have failed to cure the defects in <u>Clark II</u> as plaintiffs has failed to demonstrate that Michael Clark's conviction has been overturned. <u>See</u> <u>id.</u> Alternatively, insofar as plaintiffs may seek to bring any other claims against Varnum and Johnson, it is recommended that such claims be dismissed with prejudice for lack of personal involvement as plaintiff has not pleaded any facts to show how defendants Varnum and Johnson otherwise violated his constitutional rights.

**D. Conclusion**

**WHEREFORE**, for the reasons stated herein, it is

**ORDERED**, that plaintiffs' motion to proceed <u>in forma pauperis</u> is **GRANTED**; and it is

**\*12 RECOMMENDED**, that the entirety of plaintiffs' complaint, dkt. no. 1, be **DISMISSED with prejudice and without leave to amend**; and it is further

**RECOMMENDED**, that, as plaintiff Michael Clark has have demonstrated a pattern of filing multiple frivolous actions arising out of the same underlying facts, the District Judge institute a bar order requiring plaintiff Michael Clark to seek permission of the Court <u>prior to</u> filing any new actions in the U.S. District Court for the Northern District of New York; and it is further

**RECOMMENDED**, that plaintiffs' motion to compel discovery, dkt. no. 5, be **DISMISSED as moot**; and it is

**ORDERED** that the Clerk of the Court serve a copy of this Report-Recommendation and Order on plaintiff in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the ... recommendation." N.Y.N.D. L.R. 72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). <u>FAILURE TO OBJECT TO THIS REPORT WITHIN</u> **FOURTEEN DAYS** <u>WILL PRECLUDE APPELLATE REVIEW</u>. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

**IT IS SO ORDERED**.

**All Citations**

Slip Copy, 2016 WL 10570930

---

                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 5:17-cv-01302-BKS-TWD    Document 4    Filed 01/18/18    Page 73 of 91

Moore v. Samuel S. Stratten Veterans Administration Hospital, Not Reported in...

2016 WL 3647180

2016 WL 3647180
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

David Allen Moore, Plaintiff,
v.
Samuel S. Stratten Veterans
Administration Hospital, Defendant.

1:16-CV-475 (LEK/CFH)
|
Signed 06/03/2016

**Attorneys and Law Firms**

DAVID ALLEN MOORE, 400 Livingston Avenue, Albany, New York 12206, Capital District Rescue Mission, 250 South Pearl Street, Albany, New York 12202, Plaintiff pro se [1].

[1]    Plaintiff was incarcerated at Attica Correctional Facility for a conviction of Criminal Possession of Stolen Property in the Fourth Degree until June 1, 2016. On May 12, 2016, plaintiff informed the Court that he has a conditional release date of June 1, 2016, and his post-release address will be either 400 Livingston Avenue, Albany, New York 12206 *or* Capital District Rescue Mission, 250 South Pearl Street, Albany, New York 12202. According to the New York State Department of Corrections and Community Supervision Website, plaintiff was released from custody on his conditional release date, June 1, 2016. See http://nysdoccslookup.ny.gov (last visited June 2, 2016).

**REPORT-RECOMMENDATION AND ORDER**

CHRISTIAN F. HUMMEL, U.S. Magistrate Judge

**\*1** Presently before this Court for review are an application to proceed in forma pauperis ("IFP") and a complaint filed by pro se plaintiff David Allen Moore. Dkt. No. 1 ("Compl."), 2, 7, 10. [2] Plaintiff has not paid any fee relating to this action. Id.

[2]    On May 12, 2016, plaintiff filed a second application to proceed IFP. Dkt. No. 10. The second

IFP application essentially mirrors the original application. Id.

**I. In Forma Pauperis**

After reviewing plaintiff's In Forma Pauperis Application ("IFP"), Dkt. Nos. 7, 10, the undersigned has concluded that the Court finds that plaintiff's financial status qualifies him to file this action without prepaying in full the $350.00 filing fee. Thus, plaintiff may properly proceed in this matter IFP.

**II. Review of Complaint [3]**

[3]    Any unpublished decisions cited within this Report-Recommendation and Order are attached hereto.

**A. Procedural Background**

Plaintiff originally filed a petition for writ of habeas corpus relating to this action. See Moore v. Stratten Veterans Memorial Hospital, 9:15-CV-1448 (MAD). On February 25, 2016, District Judge Mae D'Agostino dismissed plaintiff's habeas petition, concluding that plaintiff's claims did not sound in habeas corpus because they would not impact the length of his confinement. Id. at 5. Judge D'Agostino determined that "remedy is more appropriately sought, if at all, in a civil rights action brought pursuant to 42 U.S.C. § 1983 or Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971)." Therefore, the Court entered a judgment dismissing the action. Dkt. No. 9.

**B. Factual Allegations**

In the complaint herein, plaintiff contends that on June 1, 2014, he visited Samuel S. Stratten [4] Veterans Administration Hospital in order to ascertain the date and time of the Alcoholics or Narcotics Anonymous meetings held at the Hospital. Compl. at 4, 7. When plaintiff entered the Hospital, he passed the security desk located in the basement. Id. There was no security guard at the desk, but plaintiff figured that he would "run into security personnal [sic]." Id. Upon entering the Hospital, plaintiff met some Hospital residents who purchased breakfast for

Moore v. Samuel S. Stratten Veterans Administration Hospital, Not Reported in...

Case 5:17-cv-01302-BKS-TWD    Document 4    Filed 01/18/18    Page 74 of 91

2016 WL 3647180

him and "gave the Plaintiff a few[ ]dollars to purchase an all day bus pass." Id. at 4.

Plaintiff spells the name of the Hospital as Samuel S. Stratten Veterans Administration Hospital. The Hospital's website refers to it as the Albany Stratton VA Medical Center. See http:// www.albany.va.gov/ (last visited June 2, 2016). However, the caption of the case will reflect plaintiff's spelling and naming conventions.

**\*2** After finishing breakfast, plaintiff exited the Hospital. Compl. at 4. While he was on "an access ramp leading outside to street level[,]" he was stopped by security personnel. Id. The "security guard" "began to aggressively physically restrain the plaintiff without telling plaintiff what the restrain [sic] was for." Id. The guard then searched plaintiff's body and pockets. Id. Plaintiff asked the guard if he was being arrested, and the guard told him that a woman said he took a soda. Id. Plaintiff denied the accusation. Id. The guard then searched plaintiff's bag. Id. at 5. The guard took plaintiff into the Hospital security office and demanded that he produce his wallet. Id. The guard searched the wallet, and a second guard scanned plaintiff's bag through a metal detector. Id. The guard demanded that plaintiff provide identification "so that the officer could serve the plaintiff at his address with the violation papers for the charges stated above." Id. [5] The guard "gave plaintiff the violation charges of" (1) "trespassing in a federal dwelling," (2) "shoplifting," and (3) "hustling the elderly." [6] Id. at 5.

Although plaintiff does not specify in his complaint whether he was ever "served" with the charges, the undersigned notes that in the amended petition before District Judge D'Agostino, plaintiff indicated that he was charged with trespassing and shoplifting and received notice of the charges by United States Mail. No. 9:15-CV-1448 (MAD), Dkt. No. 8 at 4.

At varying points in the complaint, plaintiff describes this final charge as "? to the elderly," "to the elderly," and "hustling the elderly." Compl. at 3, 10.

Plaintiff contends that he was not read his Miranda rights, and argues that his "Constitutional Rights were violated by the charges not being substantiated in Court. Constituting a false arrest and Illegal Detainer." Compl. at 5. Plaintiff argues that the security guard abused his discretion by relying on hearsay, "rather than factual observation." Id. Plaintiff also contends that the guard

was negligent because plaintiff was never arraigned on the charges, insofar as twenty-two months have passed, and appears to suggest this passage of time is in excess of the "stature [sic] of limitations" and his right "to be arraigned on charges in a reasonable amount of time in order to obtain representation and provide an adequate defence [sic] for himself." Id. Finally, plaintiff contends that defendants failed to prove "guilt beyond a reasonable doubt" and their actions amounted to "defamation of character." Id. Plaintiff argues that, as a result of defendants' conduct, he suffered "stress and anguish for the duration of nearly 2 years" in addition to the fear and stress he faced during the allegedly unlawful search, seizure, and arrest. Compl. at 6. He seeks to dismiss or vacate the underlying charges, asks the Court to "grant" a "civil rights/class action suit," [7] as well as "judgment $150,000.00 U.S. Currancy [sic]." Id. at 10.

The undersigned interprets this demand for relief as request that the Court allow this Bivens action to proceed.

### C. Plaintiff's Claims

Liberally read, it appears that plaintiff is setting forth the following Bivens claims, federal statutory claims, and state law claims: (1) unreasonable search and seizure in violation of the Fourth Amendment; (2) false arrest and imprisonment in violation of the Fourth Amendment; (3) right to a speedy trial under the Sixth Amendment and/or Speedy Trial Act; (4) Fifth Amendment right to due process; and (5) state tort law claims of slander, defamation, and negligent infliction of emotional distress.

### 1. Legal Standard

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see N.D.N.Y. L.R. 5.4. Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Case 5:17-cv-01302-BKS-TWD    Document 4    Filed 01/18/18    Page 75 of 91

Moore v. Samuel S. Stratten Veterans Administration Hospital, Not Reported in...

2016 WL 3647180

**\*3** Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted). Thus, a court is to exercise extreme caution before ordering a sua sponte dismissal of a pro se complaint before the adverse party has been served and had an opportunity to respond. Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir. 1983). However, dismissal of frivolous actions pursuant to 29 U.S.C. § 1915(d) is appropriate to prevent abuses of the process of the court and discourage waste of judicial resources. Neitzke v. Williams, 490 U.S. 319, 327 (1989).

## 2. Analysis

### a. Threshold Issues

It appears plaintiff intends to bring this action under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 389 (1971). [8] The intention of Bivens is "the deterrence of *individual* officers who commit unconstitutional acts." Rodriguez v. New York Downtown Hosp., 14-Civ-5958 (PAC)(SN), 2015 WL 5244680 (S.D.N.Y. Sept. 8, 2015); Platsky v. C.I.A., 953 F.2d 26, 28 (2d Cir. 1991). First, it appears plaintiff is attempting to sue both the guard who performed the stop, frisk, and arrest, as well as the Hospital. See generally Compl. Bivens permits claims against individuals, and does not permit vicarious liability. Ashcroft, 556 U.S. at 676 ("[R]ecovery is permitted only from individual federal officials."); see also Malesko, 534 U.S. at 68) (noting that Bivens purpose is to deter the individual officers, not the agency). Thus, it is recommended that plaintiff's claims against the Hospital be dismissed with prejudice.

[8]     Cases for violation of one's constitutional rights may be brought under 42 U.S.C. § 1983 against defendants acting under the color of state law; however, in cases where a plaintiff is contending that federal actors or those acting under the color of federal law violated his constitutional rights, a Bivens claim is the proper approach. Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 66-67 (2001).

Further, parties can only be sued under Bivens if they are officers of the United States. See, e.g., Feldman v. Lyons, 852 F. Supp. 2d 274, 279 (N.D.N.Y. 2012) (citing Chin v. Bown, 833 F.2d 21, 24 (2d Cir. 1987)). However, plaintiff does not allege the guard was a federal law enforcement officer or a federal employee. See 28 C.F.R. § 0.111(f) ("The director of the United States Marshals Service shall direct and supervise all activities of the U.S. Marshals Service including: ... (f) Provision of assistance in the protection of Federal property and buildings."). If it is the case that the guard was a federal officer or employee, this claim may be brought under Bivens. [9] 403 U.S. at 389. If the officer was employed by a private company that contracted with the federal government to provide security services, plaintiff may not maintain a claim under Bivens. Malesko, 534 U.S. at 69; Minneci v. Pollard, ___ U.S.___, 132 S.Ct 617, 620 (2012) (declining to extend Bivens to permit claim for damages against employees of privately-operated Federal prison); Bender v. Gen. Services Admin., 539 F. Supp. 2d 702 (S.D.N.Y. 2008) (dismissing Bivens claim against private security company under contract with the federal government). At this early stage, given the special solicitude due to plaintiff as a pro se litigant, plaintiff has sufficiently pleaded enough facts to suggest that the guard was a federal officer or employee subject to Bivens.

[9]     The undersigned stresses that the claims may be brought under Bivens to highlight that the United States Supreme Court has carefully limited the application of Bivens. See D'Alessandro v. Chertoff, 10-CV-927A, 2011 WL 6148756, at \*2 (W.D.N.Y. Dec. 12, 2011). For the purposes of deciding this motion only, the undersigned will assume that Bivens provides an avenue by which to bring a suit for violations of the Sixth Amendment right to a speedy trial, Fourth Amendment false arrest and imprisonment and unreasonable search and seizure, and Fifth Amendment due process claims.

**\*4** Although it is not clear from the complaint whether plaintiff intends to sue the guard in his individual or official capacity, because Bivens permits suits only against federal officers in their individual capacities, it is recommended that, insofar as plaintiff's complaint may be read as seeking to bring claims against the guard in his official capacity, such claims be dismissed with prejudice. See Carlson v. Green, 446 U.S. 14, 18 (1980) (holding that Bivens claims may be brought against federal officers in their individual capacities; Platsky, 953 F.2d at 28

("[E]ven in Bivens actions jurisdictional limitations permit a plaintiff to sue only the federal government officials responsible for violating the plaintiff's constitutional rights; a plaintiff cannot sue the agency for which the officials work.") (citation omitted).

Plaintiff seeks monetary damages of $150,000.00 as well as injunctive relief –the dismissal of the apparently pending criminal charges arising out of this incident. Compl. at 10. Under Bivens, however, a plaintiff may not seek injunctive relief. See Kurzberg v. Ashcroft, 619 F.3d 176, 179 n.2 (2d Cir. 2010); Higazy v. Templeton, 505 F.3d 161, 129 (2d Cir. 2007) ("The only remedy available in a Bivens action is an award for monetary damages from defendants in their individual capacities."). Accordingly, it is recommended that plaintiff's claim for injunctive relief be dismissed with prejudice. [10]

[10]  It does not appear that plaintiff's claims would be barred under Heck v. Humphries. Heck holds that a plaintiff may not bring a civil action if it would call into question the validity of the plaintiff's conviction unless the conviction was terminated in favor of the plaintiff. 512 U.S. 477, 486-87 (1994). Plaintiff contends that he was never arraigned on the charges, and certainly never pleaded guilty nor was convicted. However, although plaintiff cannot say that the charges were terminated in his favor, it does not appear that Heck precludes these claim as there has been no judgment of conviction. See Stegemann v. Rensselaer County Sheriff's Office, ___ Fed.Appx. ____, 2016 WL 1743598 (2d Cir. 2016) (summary order) ("Heck bars a § 1983 claim based on an extant conviction, but it has no application to an anticipated future conviction .... [A]t the time of the District Court's decision below, no conviction had been entered against [the plaintiff] – in fact, his trial was still ongoing.") (internal citations omitted); see also Tavarez v. Reno, 54 F.3d 109, 110 (2d Cir. 1995) (stating that Heck applies to Bivens claims). Thus, at this time, it does not appear that Heck would bar plaintiff's suit here. Further, insofar as plaintiff alleges false arrest, " '[t]he Heck doctrine barring a Section 1983 claim does not extend to [a] plaintiff's false arrest suit.' " Glasgow v. Beary, 2 F. Supp. 3d 419, 427 (E.D.N.Y. 2014).

Finally, although plaintiff's complaint indicates that he seeks to sue one guard/officer – the individual who initially stopped him and performed the search/frisk of his person and his wallet – plaintiff's complaint refers to a second

guard/officer who searched his bag. Compl. at 4 (" ... another Afro-American officer 6'4' searched my bag a second time and scanned it on a converayer [sic] machine that detects metal for weapons."). Insofar as plaintiff's complaint may be read as attempting to bring any claims against this second guard, keeping in mind the special solicitude due to plaintiff pro se, it is recommended that he be given an opportunity to amend in order to plead with specificity any facts and claims he may wish to bring against this second guard. Id.

### a. Speedy Trial

Liberally read, plaintiff's complaint suggests that his right to a speedy trial was violated insofar as he was never arraigned or prosecuted on the charges. See generally Compl. The right to a speedy trial arises, constitutionally, under the Sixth Amendment; however, there are statutory also protections through the Speedy Trial Act, 18 U.S.C. § 3161. It is not clear whether plaintiff seeks to allege constitutional or statutory violations.

**\*5** Plaintiff contends that he had contacted the "United States District Court[,]" "his case was scheduled to be heard on June 11, 2014," and he w as "escorted into" a Magistrate Judge's office. Compl. at 9. He was then "incarcerated on a different case on June 4, 2014." Id. Plaintiff informed "intake & classification" that he had an appearance on 6/4/14 (State). Id. He contends that he contacted the Northern District and informed someone that he "would like to be transported from jail to be heard on the violation charges as it would affect his parole in the form of a violation." Id. Plaintiff contends that a year and a half passed and he was never appeared before this Court on the violation charges. Id. Plaintiff states he thereafter brought a habeas corpus petition. Id.

A search of the Court's records revealed that plaintiff was scheduled for an appearance before the Court on June 14, 2014. T hat appearance related to three violations arising out of plaintiff's alleged conduct at the Hospital. See attachments. [11] The first violation was alleged to have occurred on April 19, 2014. See id. T he notice of violation charges plaintiff with violating 18 U.S.C. § 641(1), Theft of Public Money, Property, or Records (Shoplifting) relating to his alleged theft of a bottle of soda from the Hospital's canteen store. [12] See id. The notice of violation, also dated April 19, 2014, charges plaintiff with a violation of

38 C.F.R. 1.218 (b)(11), Disorderly Conduct, arising out of his alleged refusal to comply with an officer's verbal commands, as well as yelling and resisting arrest in the Hospital's pharmacy waiting area.[13] See id. The third notice of violation, dated April 19, 2014, charged plaintiff with trespass in violation of 38 C.F.R. 1.218 (b)(8).[14] See id. The violation notice provides that the canteen store clerk activated the store's duress alarm, and informed the guard that an individual had stolen a bottle of soda from the canteen store. Id. The violation notice also provides that plaintiff matched the store clerk's description of the individual who stole the soda, and that plaintiff was known to the guard, because the guard had issued plaintiff a verbal warning for solicitation and trespass three days earlier. Id.

[11]  The notices of violation are attached to this Report-Recommendation and Order.

[12]  One who violates 18 U.S.C. § 641 "shall be fined under this title or imprisoned not more than ten years, or both; but if the value of such property in the aggregate, combining amounts from all the courts for which the defendant is convicted in a single case, does not exceed the sum of $1,000, he shall be fined under this title or imprisoned not more than one year, or both."

[13]  Violation of this statute is subject to a term of imprisonment of not more than six months and a $250 fine. 38 C.F.R. § 1.218(b)(11), Security and Law Enforcement at VA Facilities.

[14]  Violation of 38 C.F.R. § 1.218(b)(6), "Failure to comply with signs of a directive and restrictive nature posted for safety purposes [,]" can result in a term of imprisonment of not more than six months and a fine of $50.

As noted, it appears that plaintiff is contending that he appeared before a Magistrate Judge at some point on the charges arising out of the June 2014 Hospital incident as he refers to being "escorted into the Magis office." Compl. at He further contends that he had a June 11, 2014 appearance scheduled, but that he w as incarcerated "on a diffrent [sic] case on 6/4/14." Compl. at 9. Thus, it is unclear if plaintiff ever had an initial appearance on these charges, though, taking all statements in his complaint as true – wherein plaintiff contends he was never arraigned on the charges – it does not appear that any appearance he had when he was "escorted into the Magis office" was an appearance on the violations. Id.

*6  Insofar as plaintiff raises speedy trial claims against the unnamed defendant guard/officer, plaintiff fails to show how the unnamed defendant officer was personally involved or had any authority over any delays or alleged failures to arraign, prosecute, or dismiss the charges. Thus, it appears that plaintiff has not named a proper defendant for his speedy trial claims. Accordingly, insofar as plaintiff wishes to proceed with any speedy trial claims in this action but has not named a proper defendant for such claims, it is recommended that the complaint be dismissed, without prejudice, to afford plaintiff the opportunity to amend his complaint either to attempt to allege how the unnamed defendant guard is responsible for the alleged speedy trial violation or set forth a proper defendant an supporting facts as to how such defendant violated his right to a speedy trial.[15]

[15]  The undersigned notes that it appears undecided within this Circuit and District whether violation notices are equated with a complaint to begin the Speedy Trial Act's clock. See generally U.S. v. Caruso, 11-CR-269 (DLI), 2012 WL 3288654, at *5 (E.D.N.Y. Aug. 8, 2012) (quoting Dean v. United States, 436 F. Supp. 2d 485, 491 (E.D.N.Y. 2006); United States v. Boyd, 214 F.3d 1052, 1056-57 (9th Cir. 2000) ("[A] violation notice is completed by a law enforcement officer alone, without the oversight of a magistrate and therefore it will not be equated with a complaint to begin the Speedy Trial Act's clock.").

### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby **RECOMMENDED**, that plaintiff's applications to proceed in forma pauperis (Dkt. Nos. 7, 10) be **GRANTED**; and it is further

**RECOMMENDED**, that the following claims in plaintiff's complaint (Dkt. No. 1) be **DISMISSED with prejudice and without opportunity to amend**:

(1) Plaintiff's <u>Bivens</u> claims against the defendant Hospital;

(2) <u>Bivens</u> claims against the unnamed guard/officer in his official capacity;

(3) Plaintiff's claim for injunctive relief; and it is further

**RECOMMENDED,** that, insofar as plaintiff's complaint may be read as attempting to set forth speedy trial claims, such claims be dismissed, without prejudice and with opportunity to amend to permit plaintiff an opportunity to (a) explain how the unnamed defendant Hospital guard was involved in the alleged speedy trial violations, and/or (b) name any other defendants who may be involved and provide sufficient detail of such involvement; and it is further

**RECOMMENDED,** that plaintiff's remaining claims survive initial review, but that no summonses be issued and no defendant be served until after the District Judge reviews the Report-Recommendation and Order and issues appropriate direction regarding summonses and service to the Clerk of the Court, and it is

**ORDERED** that the Clerk of the Court serve a copy of this Report-Recommendation and Order on plaintiff in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the ... recommendation." N.Y.N.D. L.R. 72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

**IT IS SO ORDERED**.

**All Citations**

Not Reported in F.Supp.3d, 2016 WL 3647180

---

End of Document            © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:17-cv-01302-BKS-TWD    Document 4    Filed 01/18/18    Page 79 of 91

Moore v. Samuel S. Stratten Veterans Administration Hospital, Not Reported in...

2016 WL 3659909

2016 WL 3659909
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

David Allen Moore, Plaintiff,
v.
Samuel S. Stratten Veterans
Administration Hospital, Defendant.

1:16-cv-0475 (LEK/CFH)
|
Signed 06/30/2016

**Attorneys and Law Firms**

David Allen Moore, Johnstown, NY, pro se.

## ORDER

Lawrence E. Kahn, U.S. District Judge

**\*1** This matter comes before the Court following a Report-Recommendation filed on June 3, 2016, by the Honorable Christian F. Hummel, U.S. Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3. Dkt. No. 11 ("Report-Recommendation").

Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." FED. R. CIV. P. 72(b); L.R. 72.1(c). If no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review that aspect of a report-recommendation only for clear error. Barnes v. Prack, No. 11-CV-0857, 2013 WL 1121353, at \*1 (N.D.N.Y. Mar. 18, 2013); Farid v. Bouey, 554 F. Supp. 2d 301, 306-07 & 306 n.2 (N.D.N.Y. 2008); see also Machicote v. Ercole, No. 06 Civ. 13320, 2011 WL 3809920, at \*2 (S.D.N.Y. Aug. 25, 2011) ("[E]ven a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply

relitigating a prior argument."). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b).

No objections were filed in the allotted time period. See Docket. The Court has reviewed the Report-Recommendation for clear error and has found none.

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 11) is **APPROVED and ADOPTED in its entirety**; and it is further

**ORDERED**, that Plaintiff's Applications (Dkt. Nos. 7, 10) to proceed *in forma pauperis* are **GRANTED**; and it is further

**ORDERED**, that the following claims are **DISMISSED with prejudice**: (1) Plaintiff's <u>Bivens</u> claims against Defendant Hospital; (2) Plaintiff's <u>Bivens</u> claims against the unnamed guard/officer in his official capacity; and (3) Plaintiff's claims for injunctive relief; and it is further

**ORDERED**, that Plaintiff's speedy trial claims be **DISMISSED without prejudice** and with leave to amend to permit Plaintiff the opportunity to (a) explain how the unnamed hospital guard was involved in the alleged speedy trial violations and/or (b) name any other defendants who may have been involved and provide sufficient detail of such involvement; and it is further

**ORDERED**, that Plaintiff's remaining claims survive initial review and require a response; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2016 WL 3659909

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 1268199
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Johnathan JOHNSON, Plaintiff,

v.

Brian GAGNON, Daniel Dumas, Brian Grant,
Brian Clark, Francis Jarvis, Wendy Seymour,
Richard Liebfred, John Tatro, Jerry Laramay,
Reginal Bishop, Donald Uhler, David Rock,
Joseph Bellnier, Gayle Haponik, Anthony
Annucci, Maureen Boll, Carl Koenigsmann,
Jeff McKoy, and Aaron Beane, Defendants.

No. 9:14–CV–916 (MAD/DEP).
|
Signed March 19, 2015.

**Attorneys and Law Firms**

Johnathan Johnson, Malone, NY, pro se.

Hon. Eric T. Schneiderman, New York State Attorney
General, David J. Sleight, Esq., Assistant Attorney
General, Buffalo, NY, for Defendants.

**MEMORANDUM–DECISION AND ORDER**

MAE A. D'AGOSTINO, District Judge.

**I. INTRODUCTION**

 *1 Plaintiff *pro se* Johnathan Johnson, an inmate in
the custody of the New York State Department of
Corrections and Community Supervision ("DOCCS"),
brought this action in New York state court pursuant to 42
U.S.C. § 1983 alleging that Defendants, nineteen DOCCS
employees, violated his constitutional rights under the
First and Eighth Amendments. *See* Dkt. No. 4. Plaintiff
alleges that Defendants deprived him of his constitutional
rights by, *inter alia,* interfering with his doctor-ordered
meals, conducting cell searches, destroying legal court
documents, and physically assaulting him in retaliation
for his filing of grievance complaints, as well as failing
to take corrective action to prevent further retaliatory

conduct. *See id.* [1] On July 24, 2014, Defendants removed
the action to this court. *See* Dkt. No. 1.

Defendants have moved to dismiss Plaintiff's claims
against Defendants Rock, Bishop, Uhler, Laramay,
Bellnier, Haponik, Annucci, Boll, Koenigsmann, McKoy,
Clark, and Grant pursuant to Federal Rule of Civil
Procedure 12(b)(6). *See* Dkt. No. 2. Defendants argue
that dismissal is warranted because Plaintiff has failed to
allege that the above-named defendants were personally
involved in a violation of Plaintiff's constitutional rights.
*See id.* Plaintiff opposes the motion. *See* Dkt. No. 6.
Plaintiff has also moved to remand the action to state
court. *See* Dkt. No. 7. Defendants oppose remand. *See*
Dkt. No. 10.

In a Report and Recommendation dated February 26,
2015, Magistrate Judge Peebles recommended that the
Court deny Plaintiff's motion to remand. Dkt. No. 12 at 3.
Magistrate Judge Peebles first concluded that Defendants'
removal was timely under 28 U.S.C. § 1446(b) because
Defendants Leibfred, Koenigsmann, and McKoy filed
the notice of removal within thirty days of being served
the summons and complaint. *See id.* at 9–12. Magistrate
Judge Peebles further determined that removal was proper
because all of the Defendants consented to removal except
for Defendant Grant, who has not yet been properly
served. *See id.* at 11–12, 12 n. 6. Magistrate Judge Peebles
also found that remand is not mandated by the fact that
Plaintiff is barred from proceeding in federal court *in
forma pauperis. Id.* at 12 n. 6.

In addition, Magistrate Judge Peebles recommended that
the Court grant Defendants' partial motion to dismiss. *Id.*
at 3. Magistrate Judge Peebles determined that Plaintiff's
complaint failed to allege facts plausibly suggesting that
Defendants Clark and Grant violated Plaintiff's rights. *Id.*
at 17. Magistrate Judge Peebles additionally determined
that Plaintiff failed to allege facts plausibly suggesting
that Defendants Rock, Bishop, Uhler, Laramay, Bellnier,
Haponik, Annucci, Boll, Keonigsmann, and McKoy were
personally involved in the alleged violations of Plaintiff's
constitutional rights. *See id.* at 17–21. Magistrate Judge
Peebles recommended that Plaintiff be granted leave to
amend his complaint to address the deficiencies identified
in the Report and Recommendation. *Id.* at 23.

 *2 Plaintiff timely submitted objections to the Report
and Recommendation on March 6, 2015. *See* Dkt. No.

Johnson v. Gagnon, Not Reported in F.Supp.3d (2015)
2015 WL 1268199
Case 5:17-cv-01302-BKS-TWD   Document 4   Filed 01/18/18   Page 81 of 91

13. Plaintiff's primary objection is that Magistrate Judge Peebles erred in concluding that Defendant Grant has not been properly served and that his consent was therefore not required for proper removal. *See id.* at 3–7. Plaintiff also contends that the allegations in his original complaint sufficiently state constitutional violations by each defendant and that amendment is thus unnecessary. *See id.* at 8.

## II. DISCUSSION

### A. Standard of Review
When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a *"de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (2006). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir,* No. 9:08–CV–322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011)* (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1) (2006).

### B. Motion To Remand
Plaintiff argues that Magistrate Judge Peebles incorrectly determined that Defendant Grant was not properly served. *See* Dkt. No. 13 at 3–7. Plaintiff filed a summons and complaint with the Franklin County Clerk's Office on October 18, 2013. *See* Dkt. No. 1–1. On December 6, 2013, Plaintiff filed a motion for default judgment against thirteen of the defendants. *See* Dkt. No. 1–7. On December 13, 2013, Defendants Grant, Liebfred, Koenigsmann, and McKoy opposed Plaintiff's motion for default judgment, asserting that they had not been properly served. *See* Dkt. No. 1–8. [2]

In a Decision and Order dated April 21, 2014, Franklin County Supreme Court Justice John T. Ellis denied Plaintiff's motion for default judgment. *See* Dkt. No. 1–11. Justice Ellis determined that Plaintiff's method of service—mailing the summons and complaint to Defendants at their actual place of business—was

defective, and therefore Plaintiff was not entitled to default judgment. *See id.* at 6–9. Justice Ellis then granted Plaintiff an extension of time to serve the defendants who had not yet filed answers. *Id.* at 8. Justice Ellis appears to have mistakenly omitted reference to Defendant Grant from the Decision and Order. *See id.* at 6. ("Plaintiff moves for a default judgment, arguing that named defendant[s] Carl Koenigsman[n], Jeff McKoy, and Richard Liebfred have failed to timely file an Answer to the Complaint.").

In a Decision and Order dated June 17, 2014, Justice Ellis authorized Plaintiff to use an alternate method of service. *See* Dkt. No. 1–13. Specifically, Justice Ellis authorized Plaintiff to serve the remaining defendants by mailing the summons and complaint via first class mail to each defendant individually at his place of employment and to the Office of the Attorney General. *See id.* at 2.

**\*3** According to Defendants, Plaintiff served Defendants Liebfred, Koenigsmann, and McKoy by mail on June 24, 2014. Dkt. No. 1 at 4. Counsel for the defendants except for Defendant Grant "attempted to determine whether Plaintiff attempted to serve Defendant Grant by mail at Upstate Correctional Facility. A DOCCS official stated that there is no record of service." *Id.* at 4 n. 1. Defendant Grant has not appeared in this action. [3]

In his motion to remand, Plaintiff asserted that he served Defendant Grant on November 4, 2013. Dkt. No. 7 at 5. Plaintiff's motion for default judgment indicated that Plaintiff served Defendant Grant on November 4, 2013 by mailing the summons and complaint to Defendant Grant's place of business. *See* Dkt. No. 1–7 at 4–5. As Justice Ellis explained in his April 21, 2014 Decision and Order, this form of service does not satisfy any of New York's statutory methods for obtaining personal jurisdiction over individuals. *See* Dkt. No. 1–11 at 7. Plaintiff argues that Justice Ellis did not hold that Plaintiff failed to properly serve Defendant Grant. *See* Dkt. No. 7 at 5. However, Justice Ellis's apparent inadvertent omission of Defendant Grant from the text of the Decision and Order does not change the fact that Plaintiff's November 4, 2013 method of service on Defendant Grant was defective.

Plaintiff argues for the first time in his objections to Magistrate Judge Peebles' Report and Recommendation that he "re[-]served" Defendant Grant on June 24, 2014. *See* Dkt. No. 13 at 4–5. The Court has no basis for

concluding that Defendant Grant was properly served on this date. The summons and complaint to which Plaintiff refers the Court as proof of service on Defendant Grant is addressed generally to all named defendants. *See* Dkt. No. 1–14. As the Court discussed above, Defendants assert that Defendant Grant was not served on this date and that the summons and complaint Plaintiff refers to were served only on Defendants Liebfred, Koenigsmann, and McKoy. *See* Dkt. No. 1 at 4 n. 1; Dkt. No. 12 at 12 n. 6. The Court also notes that Plaintiff's position in his motion to remand was that Plaintiff properly served Defendant Grant on November 4, 2013, with no mention of service on June 24, 2014. *See* Dkt. No. 7 at 5.

Plaintiff's confusion as to whether his initial service on Defendant Grant was effective is understandable in light of the omission of Defendant Grant from the April 21, 2014 Decision and Order. Nonetheless, because Defendant Grant has not yet been properly served, his consent was not required for removal. *See* 28 U.S.C. § 1446(b)(2)(A) ("When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."). Furthermore, the Court finds that Magistrate Judge Peebles correctly determined that Defendants properly filed a notice of removal within thirty days of service upon Defendants Leibfred, Koenigsmann, and McKoy. Additionally, Magistrate Judge Peebles also correctly determined that Plaintiff's status in regards to proceeding *in forma pauperis* in federal court does not mandate remand. Therefore, the Court denies Plaintiff's motion to remand this action to state court.

## C. Motion To Dismiss

**\*4** Plaintiff contends that Magistrate Judge Peebles' Report and Recommendation "failed to address the personal involvement issues raised therewith [Plaintiff's] opposition [to Defendants' motion to dismiss]." Dkt. No. 13 at 3. Plaintiff asserts that his objection is directed to Magistrate Judge Peebles' finding of fact. *See id.* In ruling on a Rule 12(b)(6) dismissal motion, the court must "accept all factual allegations as true and draw every reasonable inference from those facts in the plaintiff's favor." *Mayor & City Council of Baltimore v. Citigroup, Inc.,* 709 F.3d 129, 135 (2d Cir.2013). "To survive dismissal, a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Importantly, the 'plausibility' standard applies only to

a complaint's factual allegations. We give no effect at all to 'legal conclusions couched as factual allegations.' " *Id.* (quoting *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.,* 507 F.3d 117, 121 (2d Cir.2007)). "[W]hen the plaintiff proceeds *pro se,* ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations." *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004).

Upon review, the Court finds that Magistrate Judge Peebles correctly applied the Rule 12(b)(6) standards and found that the allegations in Plaintiff's complaint, if true, did not plausibly allege that Defendants Clark, Grant, Rock, Bishop, Uhler, Laramay, Bellnier, Haponik, Annucci, Boll, Koenigsmann, and McKoy were personally involved in a deprivation of Plaintiff's constitutional rights. Plaintiff fails to identify any specific issues or factual allegations he asserted that Magistrate Judge Peebles overlooked in his analysis of Plaintiff's claims. Moreover, having closely reviewed Plaintiff's complaint and opposition to Defendant's motion to dismiss, the Court concludes that Magistrate Judge Peebles' Report and Recommendation contains a thorough analysis of all of Plaintiff's factual allegations and arguments in support of his claims.

Based on the foregoing, the Court finds that Magistrate Judge Peebles correctly determined that the factual allegations in Plaintiff's complaint do not state a plausible claim for relief against the twelve above-named defendants for the reasons stated in the Report and Recommendation. The Court also finds that Magistrate Judge Peebles correctly concluded that Plaintiff should be granted leave to amend his complaint to remedy its factual deficiencies. *See Shomo v. City of New York,* 579 F.3d 176, 184 (2d Cir.2009) (remanding on the basis that a plaintiff should have been permitted to replead his claims where the plaintiff had failed to sufficiently allege personal involvement). As such, the Court grants Defendants' motion to dismiss Plaintiff's claims against Defendants Rock, Bishop, Uhler, Laramay, Bellnier, Haponik, Annucci, Boll, Koenigsmann, McKoy, Clark, and Grant with leave to replead.

## III. CONCLUSION

2015 WL 1268199

**\*5**  After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Peebles' February 26, 2015 Report and Recommendation (Dkt. No. 12) is **ADOPTED** in its entirety for the reasons set forth therein; and the Court further

**ORDERS** that Plaintiff's motion to remand this action to state court (Dkt. No. 7) is **DENIED;** and the Court further

**ORDERS** that Defendants' motion for partial dismissal of Plaintiff's complaint (Dkt. No. 2) is **GRANTED;** and the Court further

**ORDERS** that Plaintiff's claims against Defendants Rock, Bishop, Uhler, Laramay, Bellnier, Haponik, Annucci, Boll, Koenigsmann, McKoy, Clark, and Grant are **DISMISSED with leave to replead;** [4] and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum–Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

Pro se plaintiff Johnathan Johnson, a New York State prison inmate who is ineligible for *in forma pauperis* ("IFP") status in this court pursuant to the three strikes provision of 28 U.S.C. § 1915(g), commenced this action in state court asserting civil rights claims under 42 U.S.C. § 1983 against various employees of the New York State Department of Corrections and Community Supervision ("DOCCS"). [1]  Generally speaking, plaintiff's complaint alleges that the defendants tampered with his food, searched his cell, destroyed legal papers, confiscated his prescription medications, and assaulted him in retaliation for having filed grievances concerning the conditions of his confinement.

Following a series of procedural interventions by the assigned state court judge, defendants removed the

action to this court. Defendants have since moved to dismiss plaintiff's claims against certain of the named defendants, arguing that plaintiff's complaint fails to allege the requisite personal involvement of those selected individuals in the constitutional violations asserted. Plaintiff opposes defendants' dismissal motion and has moved to remand the action to state court. For the reasons set forth below, I recommend that plaintiff's remand motion be denied and defendants' motion to dismiss be granted. [2]

## I. *BACKGROUND* [3]

Plaintiff is a prison inmate currently being held in the custody of the DOCCS at the Upstate Correctional Facility ("Upstate"), located in Malone, New York. *Dkt. No. 4 at 2.* In his complaint, plaintiff alleges that between January and April of 2013, while he was confined at Upstate, defendants Daniel Dumas, a corrections officer, and Brian Gagnon, a corrections sergeant, continuously retaliated against him for the filing of grievances by interfering with his doctor-ordered meals, conducting cell searches, and destroying legal court documents. *Id.* at 3. According to his complaint, the conduct continued with an incident on April 27, 2013, during which defendant Dumas removed plaintiff's meat serving from his dinner, an act allegedly condoned by defendant Gagnon. *Id.* The interference with plaintiff's meals continued on the following day when defendant Dumas, defendant Beane, also a corrections officer, and another unidentified prison guard again removed meat from plaintiff's lunch and dinner trays. *Id.* at 3–4. On April 29, 2013, plaintiff filed a grievance, designated as UST 51878–13, complaining of the food tampering and other retaliatory conduct by defendants Dumas, Gagnon, and Beane. *Id.* at 4. Because the grievance alleged misconduct on the part of corrections officials, it was forwarded to the office of defendant David Rock, the Upstate Superintendent, for investigation. *Id.* Plaintiff alleges that defendants Rock, Bellnier, Haponik, Annucci, Boll, Koenigsmann, and McKoy became aware of the grievance and "failed to act and take corrective action." *Id.* at 8–9.

**\*6**  On April 27, 2013, plaintiff's cell was searched by defendants Wendy Seymour and Francis Jarvis, both of whom are corrections officers. *Dkt. No. 4 at 6.* During the course of that search, defendants Seymour and Jarvis confiscated plaintiff's prescription medication and disrupted his court documents by removing them

from envelopes and discarding them on the floor of plaintiff's cell. *Id.* While the search was being conducted, plaintiff was placed in restraints and allegedly assaulted by defendants Dumas, Gagnon, Richard Liebfred, another corrections officer, and John Tatro, a corrections lieutenant. *Id.* at 5. Following the incident, plaintiff was taken to Upstate's hospital for evaluation, at which time it was determined that stitches were needed to close a wound to his face and that he had suffered a fractured jaw. *Id.* at 6.

On or about May 2, 2013, plaintiff was interviewed concerning the use-of-force incident by Corrections Lieutenant Jerry Laramay, another named defendant. *Dkt. No. 4 at 6–7.* Plaintiff was scheduled to be transported to an outside hospital facility that same day for repair of his fractured jaw. *Id.* at 7. Defendants Bryan Clark and Brian Grant, two corrections officers who, plaintiff contends, were involved in a prior assault upon him, were assigned to escort plaintiff to the outside medical facility. *Id.* at 7. Although all of the circumstances surrounding this particular allegation are not clear from plaintiff's complaint, plaintiff contends that, because defendants Clark and Grant were assigned to escort him to an outside medical facility by defendants Rock, Bishop, and Uhler, his "jaw remains fracture[d]." *Id.*

Following the incidents on April 27, 2013, prison guards continued to tamper with plaintiff's food. *Dkt. No. 4 at 8.* On May 2, 2013, defendants Dumas and Jarvis removed food from plaintiff's meal tray, and he was denied his lunch tray altogether by defendants Gagnon and Bishop. *Id.* at 8. Defendant Dumas again tampered with plaintiff's breakfast tray on May 8, 2013. *Id.* Defendant Gagnon was notified of this last incident, but failed to take any action. *Id.*

## II. *PROCEDURAL HISTORY*

Plaintiff commenced this action in New York State Supreme Court, Franklin County, on October 18, 2013. *Dkt. No. 1–1; Dkt. No. 4.* Named as defendants in plaintiff's complaint are Corrections Sergeant Brian Gagnon; Corrections Officers Daniel Dumas, Brian Grant, Bryan Clark, Francis Jarvis, Wendy Seymour, Richard Liebfred, and Aaron Beane; Corrections Lieutenants John Tatro and Jerry Laramay; Corrections Captain Reginald Bishop; Deputy Superintendent Donald Uhler; Superintendent David Rock; and Joseph Bellnier, Gayle Haponik, Anthony Annucci, Maureen Boll, Carl Koenigsmann, and Jeff McKoy, all of

whom are identified by plaintiff as "Deputy DOCCS Commissioners." *Dkt. No. 4.*

On October 24, 2013, the matter was assigned to Supreme Court Justice John T. Ellis. *Dkt. No. 1–2 at 2.* Following that assignment, Justice Ellis issued a decision, dated November 4, 2013, granting plaintiff leave to proceed as a poor person pursuant to New York Civil Practice Law and Rules ("CPLR") § 1101. *Dkt. No. 1–3 at 2.*

**\*7** Defendants Beane, Bishop, Clark, Gagnon, Jarvis, and Uhler interposed an answer to plaintiff's complaint on November 27, 2013. *Dkt. No. 1–4 at 2–6.* That was followed by the filing of an answer, on December 5, 2013, on behalf of defendants Dumas, Seymour, and Tatro, *Dkt. No. 1–5 at 2–5,* and another, on December 6, 2013, on behalf of defendants Annucci, Bellnier, Boll, Haponik, Laramay, and Rock. *Dkt. No. 1–6 at 2–5.* On December 23, 2013, prior to the removal of the action, plaintiff requested the entry of default judgment against certain defendants who, at that time, had yet to appear in the action. *Dkt. No. 1–7 at 2–6.*

On December 16, 2014, plaintiff served the defendants with written discovery demands, including interrogatories and requests for the production of documents. *Dkt. No. 1–9 at 38–43.* A subsequent motion brought by the defendants to stay discovery and for a protective order, *Dkt. No. 1–9,* was granted by decision and order issued by Justice Ellis on April 21, 2014. *Dkt. No. 1–12 .* On the same date, Justice Ellis issued a separate decision and order denying plaintiff's motion for the entry of default judgment against defendants Koenigsmann, McCoy, and Liebfred. *Dkt. No. 1–11.* In this second decision, Justice Ellis concluded that plaintiff had failed to present proper proof of service of the summons and complaint upon the three defendants named in his motion. *Id.* at 7. Justice Ellis also specifically advised plaintiff that, by simply mailing a summons and complaint to a defendant, he did not satisfy the service requirements of CPLR § 308(2). *Id.*

Following the issuance of the court's order denying his motion for default judgment, plaintiff applied, *ex parte,* for permission to serve the defendants in this action by mail. *Dkt. No. 1–13.* On June 17, 2014, Justice Ellis granted the motion, permitting plaintiff to serve the defendants in the action by mail at their places of employment, with a further directive that the summons and complaint, together with a copy of the court's

decision, also be mailed to the Office of the New York State Attorney General. *Id.* In accordance with that order, on June 24, 2014, plaintiff effectuated service of process on defendants Liebfred, Koenigsmann, and McCoy. *Dkt. No. 1 at 4; Dkt. No. 1–14.*

Following service, the action was removed to this court on July 24, 2014. *Dkt. No. 1.* All of the defendants, with the exception of Grant, who has neither been served nor otherwise appeared in the action, subsequently moved, on July 30, 2014, to dismiss plaintiff's claims asserted against twelve named defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Dkt. No. 2.* Defendants contend that plaintiff's complaint fails to adequately allege the requisite personal involvement of those certain individuals in the conduct giving rise to the constitutional violations asserted. *Id.* at 2. On or about August 6, 2014, plaintiff submitted papers in opposition to defendants' motion and cross-moved for an order remanding the case to state court. Dkt. Nos. 6, 7. Defendants since responded in opposition to plaintiff's motion, *Dkt. No. 10,* and have submitted a reply in further support of their motion to dismiss. *Dkt. No. 9.* The parties' cross-motions, which are now fully briefed, have been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed.R.Civ.P. 72(b).

III. *DISCUSSION*

    A. *Motion to Remand*
**\*8**  In his remand motion, plaintiff asserts that the action was improvidently removed to this court. *See generally Dkt. No. 7.* Plaintiff does not challenge this court's jurisdiction to entertain his constitutional claims, which are asserted pursuant to 42 U.S.C. § 1983.[4] *Id.* Instead, his argument centers upon the timing of the notice of removal relative to service upon the various named defendants. *Id.*

The statute that addresses the timing of removal notices provides, in relevant part, that

> [t]he notice of removal of the civil action or proceeding shall be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for

relief upon which such action or proceeding is based[.]

28 U.S.C. § 1446(b). Citing *Mermelstein v. Maki,* 830 F.Supp. 180 (S.D.N.Y.1993), plaintiff asserts that the thirty-day period for removal under section 1446(b) is properly measured from the date upon which the first defendant received the initial pleading. *Dkt. No. 7 at 7.*

Prior to an amendment in 2011 to section 1446, some courts held that, in a case involving multiple defendants, the removal period was properly measured from receipt of the initial pleading by the first defendant. See *Mermelstein,* 830 F.Supp. at 183. Others, however, rejected that position in favor of a rule that measured the removal period from the date of service upon the removing defendant. *See Piacente v. State Univ. of N.Y. at Buffalo,* 362 F.Supp.2d 383, 385–86 (W.D.N.Y.2004) (noting a split among the circuits regarding the rules governing removal). The 2011 amendment to section 1446 resolved any ambiguity by providing that "[e]ach defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons described in paragraph (1) to file the notice of removal." 28 U.S.C. § 1446(b)(2)(B); *Pietrangelo v. Alvas Corp.,* 686 F.3d 62, 63 (2d Cir.2012).

Plaintiff appears to argue that each defendant effectively "received" the summons and complaint when it was mailed to him or her, even though, as Justice Ellis advised, mere mailing did not satisfy the service requirements of the CPLR.[5] *Dkt. No. 1–11 at 7;* CPLR § 308(2). That argument, however, was laid to rest by the Supreme Court in its decision in *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344 (1999). In that case, the Court concluded that mere receipt of a complaint, without formal service, does not trigger the thirty-day removal period under section 1446. *Murphy Bros.,* 526 U.S. at 355–56; *accord, Pietrangelo,* 686 F.3d at 65.

In this instance, because defendants properly filed a notice of removal within thirty days of service upon defendants Leibfred, Koenigsmann, and McKoy of the summons and complaint pursuant to the state court's order, and all defendants previously served and appearing in the action consented to the removal, I recommend that plaintiff's motion to remand this action to state court be denied.[6] *Dkt. No. 1 at 4; Dkt. No. 1–15.*

Johnson v. Gagnon, Not Reported in F.Supp.3d (2015)
Case 5:17-cv-01302-BKS-TWD    Document 4    Filed 01/18/18    Page 86 of 91
2015 WL 1268199

### B. Defendants' Dismissal Motion

**\*9** In their motion, defendants seek dismissal of plaintiff's claims against defendants Rock, Bishop, Uhler, Laramay, Bellnier, Haponik, Annucci, Boll, Koenigsmann, McCoy, Clark, and Grant based upon the lack of any allegations in the plaintiff's complaint plausibly suggesting their personal involvement in any of the constitutional claims asserted. *Dkt. No. 2–1 at 2–5.*

### 1. Governing Standard

A motion to dismiss a complaint, brought pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading using a standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)* (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' " *Iqbal,* 556 U.S. 677–78 (quoting Fed.R.Civ.P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See id.* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citing *Twombly,* 550 U.S. at 555–56); *see also Cooper v. Pate,* 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 300 (2d Cir.2003); *Burke v. Gregory,* 356 F.Supp.2d 179, 182 (N.D.N.Y.2005) (Kahn, J.). The tenet that a court must accept as true all of the allegations contained in a complaint does not apply, however, to legal conclusions. *Iqbal,* 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570); *see also Ruotolo v. City of N.Y.,* 514 F.3d 184, 188 (2d Cir.2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims

across the line from conceivable to plausible.' " *In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007) (quoting *Twombly,* 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson,* 551 U.S. at 94 (" '[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)) (citation omitted)); *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008) ("[W]hen a plaintiff proceeds *pro se,* a court is obliged to construe his pleadings liberally." (quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.,* 804 F.Supp.2d 100, 104 (N.D.N.Y.2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

### 2. Analysis

**\*10** Defendants' dismissal motion is centered upon the sufficiency of the allegations contained in plaintiff's complaint with respect to the personal involvement of defendants Rock, Bishop, Uhler, Laramay, Bellnier, Haponik, Annucci, Boll, Koenigsmann, McKoy, Clark, and Grant. *Dkt. No. 2–1 at 2–5.* It is well-established that "[p]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977)). As the Supreme Court has noted, a defendant may only be held accountable for his actions under section 1983. *See Iqbal,* 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). To prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S. Attorney Gen.,* No. 91–CV–8135, 1994 WL 23069, at \*3 (S.D.N.Y. Jan. 24, 1994). [7]

Case 5:17-cv-01302-BKS-TWD   Document 4   Filed 01/18/18   Page 87 of 91

Although the rule is no different with regard to individuals sued based on their role as a supervisor, section 1983 does not provide for liability based on *respondeat superior.* *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *see also* *Wright,* 21 F .3d at 501. The Second Circuit has held that to establish responsibility on the part of a supervisory official for a civil rights violation, a plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); [8] *see also* *Richardson,* 347 F.3d at 435.

In this instance, turning first to defendants Clark and Grant, the allegations contained in plaintiff's complaint are limited. [9] It is alleged that, on May 2, 2013, those individuals were assigned to transport Johnson to an outside facility to have his jaw repaired. *Dkt. No. 4 at 7.* Although plaintiff further alleges that defendants Clark and Grant are responsible for the fact that his jaw is not currently repaired, there are no allegations in the complaint that explain how or why they are responsible. *Id.* Even liberally construed, plaintiff's complaint fails to allege facts plausibly suggesting that defendants Clark and Grant violated plaintiff's constitutional rights. Accordingly, I recommend dismissal of plaintiff's claims against them.

**\*11** Relatedly, plaintiff contends that defendants Rock, Bishop, and Uhler are responsible, based on their roles as supervisors, for acting with gross negligence in assigning defendants Clark and Grant to transport plaintiff on May 2, 2013. *Dkt. No. 4 at 7; Dkt. No. 6 at 5.* Because I have concluded that the complaint fails to plausibly allege the requisite personal involvement of defendants Clark and Grant, defendants Rock, Bishop, and Uhler cannot be held liable in their supervisory capacities for the absence of a constitutional violation committed by their subordinates. [10] *See, e.g., Jacoby v. Conway,* No. 10–CV–0920, 2013 WL 1559292, at *12 (W.D.N.Y. Apr. 10, 2013)* ("[S]upervisory defendants cannot be held liable for inadequate training or supervision when the officers involved in the incident do not violate

plaintiff's constitutional rights. Absent a violation, plaintiff's allegations against [the superintendent and deputy superintendent] also fails.").

Plaintiff also alleges that defendant Laramay is responsible for violating his constitutional rights, but the complaint fails to plausibly allege a basis for any claim against this defendant. Plaintiff alleges that on May 2, 2013, he was interviewed by defendant Laramay regarding the use-of-force incident that had occurred on April 27, 2013. *Dkt. No. 4 at 6.* In addition, plaintiff's complaint contains the following allegation involving defendant Laramay:

> On May 2, 2013 after prison guard (Dumas) had broken plaintiff's jaw by kicking him in his face, Sergeant (Gagnon) permitted this prison guard (Dumas) and the other prison guard (Rock) plaintiffs [sic] had allegedly spitted upon be the escorts to remove him from the interview room. As well as Lieutenant Jerry Laramay.

*Id.* at 7. Liberally construed, it appears plaintiff contends that defendant Laramay was partially responsible for permitting the same two corrections officers to escort plaintiff after an incident in which plaintiff allegedly spat on them. *Id.* Neither of the allegations involving defendant Laramay, however, plausibly suggest he violated any of plaintiff's constitutional rights. Plaintiff does not, for instance, (1) contend that defendant Laramay ignored plaintiff's complaints of the use-of-force incident on April 27, 2013, or (2) allege that he suffered a constitutional violation during the escort by defendant Dumas and another corrections officer. Absent such allegations, plaintiff's claims against defendant Laramay are also subject to dismissal for lack of personal involvement.

Finally, plaintiff's second cause of action, asserted against defendants Rock, Bellnier, Haponik, Annucci, Boll, Koenigsmann, and McKoy, is based on his allegation that they "are supervisors and are assigned pursuant to Directive 4040 (Inmate Grievance Programs), and are on the Central Office [R]eview Committee." *Dkt. No. 4 at 8.* Plaintiff further contends that all of those individuals were "informed of the allegations of wrong doing [sic] by the defendants at the Upstate Correctional Facility thr[ough] a[ ] grievance complaint

2015 WL 1268199

(UST 51878–13) and failed to act and take corrective action." *Id.* at 8–9. These allegations, however, are not sufficient to plausibly suggest the personal involvement of defendants Rock, Bellnier, Haponik, Annucci, Boll, Koenigsmann, or McKoy under *Colon.* The grievance of which the supervisory officials were allegedly aware, grievance number UST 51878–13, was submitted on April 29, 2013, and concerned alleged retaliatory conduct by defendants Dumas, Gagnon, and Beane. *Id.* at 4. Plaintiff fails to allege, however, how defendants Rock, Bellnier, Haponik, Annucci, Boll, Koenigsmann, and McKoy became aware of the grievance. Instead, plaintiff conclusorily alleges that, after becoming aware of the grievance, the individuals did not take any steps to remedy the issue. This is not sufficient to plausibly suggest the personal involvement of supervisory officials. [11]

**\*12** Similarly, plaintiff's claim fails to the extent he relies on the fourth *Colon* prong, which provides for supervisor liability in circumstances where a supervisor was grossly negligent in managing subordinates. *Dkt. No. 6 at 5; Colon,* 58 F.3d at 873. In an effort to satisfy this requirement, plaintiff maintains, in opposition to defendants' motion to dismiss, as follows:

> That the supervisory defendants [Rock, Bellnier, Haponik, Annucci, Boll, Koenigsmann, and McKoy] also falls under *Colon–v– Coughlin* (4) and (5) requirement, where through inmate grievance complaints filed by Johnson from January 2013 through April 2013, by 'grossly negligent' in supervising these Upstate subordinates whom committed the wrongful acts within the complaint.

*Dkt. No. 6 at 5.* Even liberally construed, this conclusory allegation does not plausibly suggest defendants Rock, Bellnier, Haponik, Annucci, Boll, Koenigsmann, and McKoy acted in a manner that would demonstrate gross negligence.

### C. *Whether to Permit Amendment*

If adopted by the assigned district judge, the recommendations set forth above would result in the dismissal of plaintiff's claims against twelve defendants based upon lack of personal involvement. The next issue to be addressed is whether the court should permit plaintiff to amend his complaint to cure the deficiencies identified in connection with the claims asserted against those individuals.

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark,* 927 F.2d 698, 704–05 (2d Cir.1991); *see also* Fed.R.Civ.P. 15(a) ( "The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). Here, given the procedural history of this action, the court must determine whether plaintiff is entitled to the benefit of this general rule.

Most of the deficiencies identified in plaintiff's complaint could feasibly be cured through the inclusion of greater factual detail. Accordingly, I recommend that plaintiff be permitted to amend his complaint, if desired, to address the deficiencies identified in this report.

In the event plaintiff chooses to file an amended complaint, he is advised that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd,* 895 F.Supp. 35, 38 (N.D.N.Y.1995) (McAvoy, J.) (quoting *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987)); *Pourzandvakil v. Humphry,* No. 94–CV–1594, 1995 WL 316935, at \*7 (N.D.N.Y. May 22, 1995) (Pooler, J .). Therefore, in his amended complaint, plaintiff must clearly set forth the facts that give rise to the claim, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of each of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass,* 790 F.2d at 263. Finally, plaintiff is informed that any such amended complaint will replace the existing original complaint, and must be a wholly integrated and complete

pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994) ('It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quotation marks omitted)).

## IV. *SUMMARY AND RECOMMENDATION*

**\*13** Addressing plaintiff's motion to remand, I conclude that this court possesses subject matter jurisdiction to entertain plaintiff's claims, and I discern no defect in the removal process warranting remand. Turning to defendants' dismissal motion, plaintiff's complaint contains allegations against various defendants who are alleged to have actively participated in the events giving rise to his claims. The allegations against some of those defendants are deficient in that they fail to allege their direct role in a constitutional deprivation. Certain other defendants are sued based on their roles as supervisors and plaintiff's contention that, through a grievance he filed on April 29, 2013, they became aware of the alleged constitutional deprivations but failed to remedy them. Plaintiff's allegations against the supervisor-defendants fail to establish their personal involvement in the violations alleged. Based upon the foregoing it is hereby respectfully

RECOMMENDED that plaintiff's motion to remand this action to state court (*Dkt. No. 7*) be DENIED; and it is further

RECOMMENDED that defendants' motion to dismiss the claims asserted against certain defendants in the action be GRANTED (*Dkt. No. 2*), and that all of plaintiff's claims against defendants Rock, Bishop, Uhler, Laramay, Bellnier, Haponik, Annucci, Boll, Koenigsmann, McKoy, Clark, and Grant be DISMISSED with leave to replead.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that, pending a final disposition of the two motions now before the court, and the court's issuance of the standard Rule 16 scheduling order, discovery in the action is hereby STAYED; and it is further

ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated: February 26, 2015.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 1268199

## Footnotes

1  For a complete summary of the relevant facts and procedural background, the Court refers to Magistrate Judge Peebles' February 26, 2015 Report and Recommendation. *See* Dkt. No. 12 at 3–9.

2  The other nine defendants named in Plaintiff's motion for default judgment filed answers to Plaintiff's complaint on December 5 and 6, 2014, before Plaintiff's motion was filed with the Court. *See* Dkt. Nos. 5, 6.

3  Defense counsel appeared for Defendant Grant in opposition to Plaintiff's motion for default judgment solely for the limited purpose of contesting the court's personal jurisdiction. *See* Dkt. No. 1–8 at 3.

4  As a result of this Order, should Plaintiff choose not to file an amended complaint, Plaintiff's remaining claims are those asserted against Defendants Gagnon, Dumas, Jarvis, Seymour, Liebfred, Tatro, and Beane.

1  On May 7, 2012, Senior District Judge Norman A. Mordue found that plaintiff had accumulated three strikes for purposes of section 1915(g) prior to filing his complaint in the matter. *Johnson v. Rock,* No. 12–CV–0019, *Dkt. No. 7 at 5–6* (N.D.N.Y. filed Jan. 5, 2012) (Mordue, J.).

2  In their motion, defendants also request that the court stay discovery in this action pending disposition of the motions. Given that this case is in its procedural infancy, and the fact that the court has not yet issued its standard Rule 16 scheduling order, the motion will be granted.

3  In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89,

94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56 (2007)); *see also Cooper v. Pate,* 378 U.S. 546, 546 (1964).

4   Plaintiff correctly notes that state courts have jurisdiction to adjudicate claims under 42 U.S.C. § 1983. *Dkt. No. 7 at 6; see Haywood v. Drown,* 556 U.S. 729, 731 (2009) ("In our federal system of government, state as well as federal courts have jurisdiction over suits brought pursuant to 42 U.S.C. § 1983[.]"). This concurrent jurisdiction, however, does not preclude removal because the removal provisions of 28 U.S.C. § 1441 *et seq.* give defendants the right to have plaintiff's section 1983 claims adjudicated in a federal district court. *See Dorsey v. City of Detroit,* 858 F.2d 338, 351 (6th Cir.1988) ("The weight of judicial authority supports the conclusion that a Congressional grant of concurrent jurisdiction in a statute does not imply that removal is prohibited." (quotation marks omitted)); *Pace v. Hunt,* 847 F.Supp. 508, 509–10 (S.D.Miss.1994) ("[T]he removal statute would be eviscerated if actions such as [those arising under section 1983] were remanded simply because such courts have concurrent jurisdiction.").

5   Ultimately, plaintiff's subsequent mailing of the summons and complaint to each defendant was deemed to be appropriate as an alternative method of service under CPLR § 308(5) by court order issued by Justice Ellis. *Dkt. No. 1–13.*

6   Because defendant Grant has not yet been served, his consent is not necessary for removal. *See* 28 U.S.C. 1446(b)(2)(A) (requiring only those "defendants who have been properly joined and served" to "join in or consent to the removal of the action"). In addition, the fact that plaintiff is barred from proceeding in federal court *in forma pauperis* pursuant to 28 U.S.C. § 1915(g) does not mandate removal. *Lloyd v. Benton,* 686 F.3d 1225, 1227–28 (11th Cir.2012); *Lisenby v. Lear,* 674 F.3d 259, 262–63 (4th Cir.2012); *see also Johnson v. Rock,* No. 14–CV–0815, 2014 WL 7410227, at *5 (N.D.N.Y. Dec. 31, 2014) (Hurd, J., *adopting report and recommendation by* Baxter, M.J.).

7   Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

8   Subsequent to issuance of the Second Circuit's decision in *Colon,* the Supreme Court addressed the question of supervisory liability in its decision in *Iqbal v. Hasty,* 490 F.3d 143, 152–53 (2d Cir.2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal,* 556 U.S. 554 (2009). Although the issue has been discussed in several relatively recent decisions, the Second Circuit has yet to squarely address the impact of *Iqbal* upon the categories of supervisory liability addressed in *Colon. See, e.g., Hogan v. Fischer,* 738 F.3d 509, 519 n. 3 (2d Cir.2013) ("We express no view on the extent to which [*Iqbal* ] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" (citation omitted)); *see also Reynolds v. Barrett,* 685 F.3d 193, 206 n. 14 (2d Cir.2012) ( *"Iqbal* has, of course, engendered conflict within our Circuit without the continuing vitality of the supervisory liability test set forth in [*Colon,*] ... but the fate of *Colon* is not properly before us[.]").

9   As was discussed above in Part III.A. of this report, defendant Grant has not yet been served or appeared in the action.

10  To the extent plaintiff has asserted a constitutional claim against defendant Bishop based on an allegation that he denied plaintiff a single meal on May 2, 2013, I recommend it be dismissed. *See Konovalchuk v. Cerminaro,* No. 11–CV–1344, 2014 WL 272428, at *21 (N.D.N.Y. Jan. 24, 2014) (D'Agostino, J., *adopting report and recommendation by* Hummel, M.J.) (dismissing the plaintiff's conditions of confinement claim where the plaintiff alleged he missed two consecutive meals during a transport); *McDonald v. Rivera,* No. 06–CV–0410, 2008 WL 268345, at *8 (N.D.N.Y. Jan. 30, 2008) (Kahn, J., *adopting report and recommendation by* Peebles, M.J.) (dismissing the plaintiff's conditions of confinement claim where he alleged he was denied one meal and participation in a single recreation period).

11  The court is mindful of the Second Circuit's decision in *Grullon v. New Haven,* 720 F.3d 133, 141 (2d Cir.2013), in which the court found error in the district court's decision to dismiss with prejudice the plaintiff's claim against the defendant-prison warden for lack of personal involvement where the plaintiff had alleged that he mailed a letter to the defendant-prison warden advising him of his conditions of confinement. *Grullon,* 720 F.3d at 141; *see also Grullon v. City of New Haven,* No. 10–CV–0776, Dkt. No. 25 at 58–6 (D. Conn. filed on May 18, 2010). The Second Circuit concluded that, "[a]t the pleading stage," inmate-plaintiffs are "entitled to have the court draw the reasonable inference" that the supervisory official received the "[l]etter, read it, and thereby became aware of the alleged conditions of which [the plaintiff] complain[s]" if the letter (or other correspondence) "contain[s] factual allegations indicating that the [it] was sent to the [supervisory official] at an appropriate address and by appropriate means[.]" *Grullon,* 720 F .3d at 141. In this case, however, plaintiff's complaint fails to allege any facts regarding the means by which defendants Rock, Bellnier, Haponik, Annucci, Boll, Koenigsmann, and McKoy became aware of grievance number UST 51878–13. The absence of this allegation renders it impossible to draw the "reasonable inference" that any of those individuals received the grievance and read it, as urged in *Grullon.*

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.